IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

EDWARD ALAN YEARTA,

    Plaintiff,

vs.

AMUSEMENTS OF AMERICA, INC.;
DELTA FAIR, INC.; UNIVERSAL FAIRS,
LLC; and BELLE CITY AMUSEMENTS,
INC.,

    Defendants;

AMUSEMENTS OF AMERICA, INC. and
DELTA FAIR, INC.,

    Cross-claim Plaintiffs,

vs.

BELLE CITY AMUSEMENTS, INC.

    Cross-claim Defendant.

Case No. 2:17-CV-02117-SHM-egb

JURY DEMANDED

---

**MEMORANDUM IN SUPPORT OF BELLE CITY AMUSEMENTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Belle City Amusements, Inc., by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.2, files this Memorandum of Law in support of its Motion for Summary Judgment as to the Cross-claims asserted against it by Amusements of America, Inc. and Delta Fair, Inc.

**INTRODUCTION AND FACTUAL BACKGROUND**

The present lawsuit originated as Plaintiff Edward Alan Yearta ("Plaintiff" or "Yearta")'s action for negligence against Amusements of America, Inc. ("AoA"); Delta Fair, Inc. ("DF");

Belle City Amusements, Inc. ("BCA"); and Universal Fairs, LLC. (*See* Statement of Undisputed Material Facts[1] (hereinafter "SUMF"), ¶ 1.) In his lawsuit, Mr. Yearta claimed injuries arising from an accident that occurred on August 30, 2016 at the 2016 Delta Fair and Music Festival ("2016 Delta Fair") in Memphis, Tennessee. (SUMF ¶ 2.) Mr. Yearta, an employee of Prime Time Amusements, was setting up a ride called the Alpine Bob, which had been plugged into a generator owned by BCA. (SUMF ¶ 3.) Another ride, the Ring of Fire, owned by AoA, was also being set up at the same time by an AoA employee and plugged into the same generator. (SUMF ¶ 4.) While an AoA employee was erecting the Ring of Fire, the Ring of Fire became energized by the power line above and electrocuted Mr. Yearta on the Alpine Bob. (SUMF ¶ 5.) As a result of this incident, the Tennessee Occupational Safety and Health Administration ("TOSHA") punished AoA for violating Tenn. Code Ann. § 50-3-1003(a), a state statute which prohibits erection of any machinery or equipment within 10 feet of voltage overhead lines. (SUMF ¶ 6.) The investigation by TOSHA revealed that "a section of the Ring of Fire contacted a 13.2 Kv overhead powerline while in the process of setting up the ride," violating Tenn. Code Ann. § 50-3-1003(a), and "requests for Accident Logs (OSHA 300 forms) for the last three years were made on September 1, 2016 and September 2, 2016," but not received, in violation of Tennessee Department of Labor and Workforce Development Rule 0800-01-03.05(2)(a). (SUMF ¶ 7.)

Initially, Mr. Yearta only brought suit against AoA and DF. (SUMF ¶ 8.) AoA designed certain aspects of the layout of the 2016 Delta Fair, while DF was responsible for the overall design layout. (SUMF ¶ 9.) AoA decided the location of the Ring of Fire at the 2016 Delta Fair,

---

[1] Pursuant to Local Rule 56.1, a separate and concise statement of undisputed material facts with citations to the record in support of this Motion for Summary Judgment is being filed contemporaneously.

and an employee of AoA, who was aware of the high-voltage overhead power lines to the north, marked the location where the Ring of Fire was to be placed. (SUMF ¶ 10.) In other words, AoA was the entity that placed the Ring of Fire ride in the position that violated Tennessee law.

Mr. Yearta's complaints against AoA claimed its employees and/or agents were negligent because they: failed to properly mark and place the Ring of Fire ride; failed to pay attention to what they were doing; failed to properly set up the Ring of Fire ride to avoid injury; and failed to use reasonable and due care to avoid the power line while setting up the Ring of Fire ride. (SUMF ¶ 11.) Mr. Yearta also asserted that AoA negligently caused his injuries when it: failed to safely map out and plan the carnival midway; failed to properly train its employees to safely set up its rides, including the Ring of Fire; failed to establish, implement, and enforce sufficient policies, procedures, and guidelines for employees regarding the safe set up and operation of rides, including the Ring of Fire; and failed to properly mark and place the Ring of Fire ride. (SUMF ¶ 12.) Mr. Yearta also alleged negligence *per se* against AoA due to its violation of Tenn. Code Ann. § 50-3-1003(a). (SUMF ¶ 13.)

DF hosts the Delta Fair & Music Festival annually and was the entity who contracted with AoA to provide rides and amusements for the 2016 Delta Fair. (SUMF ¶ 14.) Mr. Yearta's complaints against DF claimed DF was negligent because it: failed to safely map out and plan the carnival midway; failed to supervise the contractors setting up rides; failed to establish, implement, and enforce sufficient policies, procedures, and guidelines for the placement of rides and/or safety of patrons; and failed to prohibit the placement of rides in locations where they could come into contact with power lines. (SUMF ¶ 15.) Only after AoA asserted comparative fault against BCA, alleging that its negligence in failing to ground or to properly ground the generator involved in the incident caused or contributed to Mr. Yearta's

injuries, did Mr. Yearta amend his complaint to add BCA as a party. (SUMF ¶ 16.) Mr. Yearta, however, testified that the generator was grounded; in fact, he was certain that it was because he would not have plugged in his ride if it were not. (SUMF ¶ 17.)

Both AoA and DF filed Cross-claims for indemnification pursuant to a contract between AoA and BCA, the Independent Attraction Contract ("IAC"). (SUMF ¶ 18.) Both parties claim BCA is responsible for any injuries, claims, losses or liabilities in Mr. Yearta's lawsuit, including any settlement in connection, as well as costs and fees, including attorney's fees, incurred in the defense of the action, pursuant to the IAC. (*Id*.) The IAC is a contract drafted by AoA and used by AoA when it subcontracts amusements rides at fairs. (SUMF ¶ 19.) The IAC obligated BCA to provide eight specific rides at the 2016 Delta Fair, as identified in the contract. (SUMF ¶ 20.) The contract also contained the following language:

> SUBCONTRACTOR further agrees to indemnify and defend AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors harmless against, any and all injuries, claims, losses or liabilities which result from any acts or omissions of SUBCONTRACTOR or of any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

(SUMF ¶ 21.) Mr. Yearta's claims against AoA and DF, however, do not arise in connection with BCA's engagements under the IAC since the contract only speaks to BCA's commitment to provide eight specific amusements rides. In fact, AoA representatives testified unequivocally that the IAC does not address generators at all, let alone any obligation for BCA to provide a generator or any power source as part of the contractual agreement. (*See* SUMF ¶ 23.) Nothing within the four corners of the IAC speak to the provision of generators at the 2016 Delta Fair.

4

Rather, AoA representatives testified that the provision of a generator from BCA is an occasional and verbal arrangement where BCA allows AoA (and others) to use its equipment at fairs run by AoA– a service for which BCA receives no compensation. (SUMF ¶ 24.) In other words, the provision of a generator is outside the contemplation of any express contractual agreement between the parties. Moreover, a ride operators like BCA is not always asked to bring a generator every time it provides a ride to AoA, and the generator that is brought by a ride operator may not even be used at all. (SUMF ¶ 25.)

The parties mediated the matter on October 24, 2018, which resulted in the resolution of Mr. Yearta's claims against all Defendants. (SUMF ¶ 26.) Though BCA was present at the mediation, settlement negotiations had proceeded without BCA's participation, but BCA later learned that a settlement amount had been reached that did not include consideration of BCA's negligence. (SUMF ¶ 27.) In no uncertain terms, BCA was informed that the settlement "merely contemplates the liability of AoA and Delta Fair." (SUMF ¶ 28.) In other words, Mr. Yearta's settlement was based solely on the actions and alleged negligence of AoA and DF, but Mr. Yearta was still willing to dismiss his claim against BCA.

Based on the undisputed material facts in the record, BCA is entitled to summary judgment on AoA and DF's Cross-claims for contractual indemnification under the IAC. Under the mandate of applicable law for a strict construction against the drafter of the indemnification contract, the IAC does not cover Mr. Yearta's claims against AoA and DF because those claims do not arise and/or result from BCA's engagements under the IAC. Even assuming that the IAC applies, AoA and DF are not entitled to indemnification for their own negligence because nothing in the IAC explicitly provides for such an arrangement.

## **LEGAL STANDARD**

A party is entitled to summary judgment on any claim or defense if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This may be accomplished by pointing to the non-party's lack of evidence to support an essential element of his case. *Id.*; *see also Street v. J.C. Bradford & Co.*, 886 F. 2d 1472, 1479 (6th Cir. 1989).

To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *See Celotex Corp.*, 477 U.S. at 324. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

This Court's role is to determine whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *see also Nat'l Satellite Sports v. Eliadis*, 253 F.3d 900, 907 (6th Cir. 2001). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment.

*Anderson*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

A federal court sitting in diversity applies the law of the forum state, including the forum state's choice-of-law rules. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). Tennessee follows the rule of *lex loci contractus* which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent a contrary intent. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466-67 (Tenn. 1973). Additionally, when interpreting contracts in a diversity action, federal courts generally enforce the parties' contractual choice of governing law. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). Both AoA and DF allege that their claims for indemnification and defense arise out of contract. (ECF No. 42, ¶ 3; ECF No. 96, p. 13, ¶ 3, *see also* SUMF ¶ 18.) Specifically, both Cross-claims reference the IAC as the operative document for their demands for indemnification and defense. (*Id*.) Under the IAC, the "agreement shall be deemed made in the State of New Jersey and shall be construed in accordance with the laws of New Jersey." (ECF No. 42-2, p. 5; ECF No. 96-1, p. 5; *see also* SUMF ¶ 22.) Accordingly, it is clear that New Jersey law governs this dispute.

## LAW & ARGUMENT

### I. THE IAC DOES NOT APPLY TO MR. YEARTA'S CLAIMS AGAINST AOA AND DF.

The undisputed material facts demonstrate that Mr. Yearta's claims against AoA and DF neither arise out of nor result from BCA's negligence and/or engagements under the IAC to

provide specific amusement rides at the 2016 Delta Fair. Accordingly, BCA is entitled to summary judgment in its favor on AoA and DF's Cross-claims.

Under New Jersey law, "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1159 (N.J. 1986). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." *Id.* "[A]n indemnity provision is to be construed in accordance with the rules for the construction of contracts generally, and hence that the judicial task is to ascertain the intention of the parties from the language used, the surrounding circumstances and the objects sought to be attained by the parties under their agreement." *Mautz v. J.P. Patti Co.*, 688 A.2d 1088, 1092 (N.J. Super. Ct. App. Div. 1997). Additionally, New Jersey jurisprudence <u>requires</u> that any ambiguity concerning indemnification be construed against the drafter, since the drafter "can hardly complain when its words are strictly construed against it," since he is likely to provide more carefully for the protection of his own interests. *See Kieffer v. Best Buy*, 14 A.3d 737, 743 (N.J. 2011).

Where an indemnification clause sets forth a prerequisite that an indemnitee's liability result from an act or omission of the indemnitor that is related to engagements under an agreement between the parties, there can be no duty to indemnify without a finding that the indemnitor has been negligent or that the negligence is related to the work being performed under the contract. *McCabe v. Great Pacific Century Corp.*, 566 A.2d 234, 236 (N.J. Super. Ct. App. Div. 1989). Such condition predicating liability on the conduct of the indemnitor distinguishes and elevates the burden of an indemnitee establishing a duty to indemnify. *Leitao v. Damon G. Douglas Co.*, 693 A.2d 1209, 1212-13 (N.J. Super. Ct. App. Div. 1997). An indemnitee cannot rest on merely showing a substantial nexus between the claim and the subject

8

matter of the contract as is the case where an indemnity clause requires a claim arise out of or result from the performance of a service contract. *Id.* Rather, where an indemnitee's act or omission is a condition of indemnification, an indemnitee must show that the indemnitor was negligent and that the negligence is related to the work being performed under the contract. *McCabe*, 566 A.2d at 236.

Here, the indemnification language mirrors the indemnity clause in *McCabe*: in short, the duty to indemnify is triggered if a claim is asserted against AoA or DF "which result from any acts or omissions of [BCA] or of any [BCA's] employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with [BCA's] engagement hereunder." (SUMF ¶ 21.) Thus, like the indemnity language of *McCabe*, the duty to indemnify requires three conditions: 1) AoA or DF must be liable for a claim; 2) their liability must result from an "act or omission" of BCA or any of BCA's employees, agents, or subcontractors; and 3) the act or omission must be in connection or otherwise arise in connection with BCA's engagements under the IAC.

AoA and DF fail to show <u>their</u> liability for Mr. Yearta's personal injury claim resulted from any act or omission of BCA or BCA's employees, agents, or subcontractors. Simply put, AoA and DF have not met their burden of establishing any negligence on the part of BCA. Particularly fatal to AoA and DF's fulfillment of this prerequisite is their lack of expert proof on causation, having failed to disclose any experts they intend to use in this litigation. *See Downs v. Perstorp Components, Inc.*, 26 F. App'x 472, 477 (6th Cir. 2002); *see also Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001). Without sufficient evidence to connect any actions or inactions of BCA to Mr. Yearta's personal injury, AoA and DF cannot

9

establish an essential condition to trigger the duty to indemnify in this case. Accordingly, BCA is entitled to summary judgment on this basis alone.

Likewise, AoA and DF fail to demonstrate that any alleged negligence on the part of BCA is in connection to or otherwise arises in connection with BCA's engagements under the IAC to provide eight specific rides to the 2016 Delta Fair. The only allegation of negligence against BCA relates to the provision of the generator, which AoA representatives have unequivocally testified as outside the scope of the express contractual agreement. (SUMF ¶ 23.) As the drafter of the IAC, if AoA had intended for the contractual agreement engagement to extend to the provision of generators, it could have incorporated this requirement into the written agreement. AoA elected not to, even though it contends they regularly require certain ride operators to occasionally bring generators to fairs it runs. (SUMF ¶ 24.) Thus, short of wholly contradicting sworn testimony, AoA and DF cannot establish that any alleged negligence on the part of BCA is in connection with any engagements undertaken by BCA in the IAC.

Having failed to establish the prerequisites, AoA and DF cannot show that any duty to indemnify under the IAC has been triggered. Consequently, AoA and DF's Cross-claims for indemnification must fail as a matter of law.

## II. THE IAC DOES NOT PROVIDE INDEMNIFICATION FOR AOA AND/OR DF'S NEGLIGENCE.

"[A] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Kieffer*, 14 A.3d at 743. When the contract lacks express language requiring indemnification for losses resulting from the indemnitee's own actions, the contract may not be construed to require such indemnification. *Ramos*, 510 A.2d at 1159.

Here, the IAC does <u>not</u> contain any express language requiring indemnification for losses resulting from either AoA or DF's own actions. As the drafter of the IAC, AoA was free to include such a provision, but it did not. It is equally clear from Mr. Yearta's complaints that Mr. Yearta's claims against AoA and DF arise from AoA and DF's own actions, independent from any actions or inactions on the part of BCA. (*See* SUMF ¶¶ 8-15.) AoA designed certain aspects of the layout of the 2016 Delta Fair, while DF was responsible for the overall design layout. (SUMF ¶ 9.) It was AoA who decided the location of the Ring of Fire, marked the location where the ride was to be placed, and erected the Ring of Fire in a manner causing it to be energized by the power line above. (SUMF ¶ 5, 10.) It was AoA who was punished by TOSHA for plainly violating a state statute designed to protect those working around power lines. (SUMF ¶ 6.) Thus, the IAC cannot be construed to provide indemnification to AoA and DF for Mr. Yearta's claims which result from their own actions.

Moreover, to the extent AoA and DF demand indemnification for the settlement reached with Mr. Yearta, the IAC cannot be interpreted to offer indemnity for a settlement that only contemplates the "liability of AoA and Delta Fair." (SUMF ¶ 28.) Such a reading flies in the face of well-established law. AoA and DF cannot reap the benefit of an indemnification agreement they did not explicitly bargain for.

In the same vein, AoA and DF are not entitled to legal costs associated with defending against claims of their own negligence. Absent any contractual language expressly providing for indemnification relating to costs of defending AoA and DF's own negligence, it would be reversible error for the Court to allow it. *Mantilla v. NC Mall Associates*, 770 A.2d 1144, 1151 (N.J. 2001). The IAC says nothing about indemnification for legal costs and fees, including attorneys' fees, for AoA and DF's own negligence. If AoA had desired this particular protection,

11

as the drafter, it was free to include such a provision, but it did not. Thus, AoA and DF are not entitled to indemnification under the IAC as a matter of law.

## CONCLUSION

For the foregoing reasons, this Court should dismiss AoA and DF's Cross-claims against Belle City because there are no genuine disputes as to any material facts, and Belle City is entitled to judgment as a matter of law. Belle City respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL, AND BERKOWITZ, PC


 /s Mary Wu Tullis
Bruce A. McMullen (Tenn. Bar No.18126)
Mary Wu Tullis (Tenn. Bar No. 31339)
165 Madison Ave., Suite. 2000
Memphis, TN  38103
(901) 526-2000
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com

*Attorneys for Belle City Amusements, Inc.*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on January 4, 2019, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

| | |
|---|---|
| Randall L. Kinnard<br>John F. Teitenberg<br>KINNARD, CLAYTON & BEVERIDGE<br>The Woodlawn<br>127 Woodmont Boulevard<br>Nashville, TN 37205 | J. Mark Griffee<br>BLACK McLAREN JONES RYLAND &<br>GRIFFEE, P.C.<br>530 Oak Court Drive, Ste. 360<br>Memphis, TN 38117 |
| Gregory L. Mast<br>FIELDS HOWELL LLP<br>1180 W. Peachtree Street, Ste. 1600<br>Atlanta, GA 30309 | |

                                                  s/ Mary Wu Tullis