IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

EDWARD ALAN YEARTA,

    Plaintiff,

vs.

AMUSEMENTS OF AMERICA, INC.;
DELTA FAIR, INC.; UNIVERSAL FAIRS,
LLC; and BELLE CITY AMUSEMENTS,
INC.,

    Defendants;

AMUSEMENTS OF AMERICA, INC. and
DELTA FAIR, INC.,

    Cross-claim Plaintiffs,

vs.

BELLE CITY AMUSEMENTS, INC.

    Cross-claim Defendant.

Case No. 2:17-CV-02117-SHM-egb

JURY DEMANDED

---

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF BELLE CITY AMUSEMENTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Belle City Amusements, Inc., by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, files this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment as to the Cross-claims asserted against it by Amusements of America, Inc. and Delta Fair, Inc.

1.    The present lawsuit originated as Plaintiff Edward Alan Yearta ("Plaintiff" or "Yearta")'s action for negligence against Amusements of America, Inc. ("AoA"); Delta Fair, Inc.

1

("DF"); Belle City Amusements, Inc. ("BCA"); and Universal Fairs, LLC.  (*See generally* First Am. Compl., ECF No. 25.)

2. In his lawsuit, Mr. Yearta claimed injuries arising from an accident that occurred on August 30, 2016 at the 2016 Delta Fair & Music Festival ("2016 Delta Fair") in Memphis, Tennessee.  (*See* First Am. Compl. ¶¶ 13, 17, ECF No. 25.)

3. Mr. Yearta, an employee of Prime Time Amusements, was setting up a ride called the Alpine Bob, which had been plugged into a generator owned by BCA.  (*See* First Am. Compl. ¶¶ 32-34, ECF No. 25.)

4. Another ride, the Ring of Fire, owned by AoA, was also being set up at the same time by an AoA employee and plugged into the same generator.  (*See* AoA's Resp. to Pl.'s First Set of Requests for Admissions, Nos. 2, 16, 18-19, attached hereto as Exhibit 1.)

5. While an AoA employee was erecting the Ring of Fire, the Ring of Fire became energized by the power line above and electrocuted Mr. Yearta on the Alpine Bob.  (*See* Ex. 1, AoA's Resp. to Pl.'s First Set of Requests for Admissions, Nos. 20, 24-26.)

6. As a result of this incident, the Tennessee Occupational Safety and Health Administration ("TOSHA") punished AoA for violating Tenn. Code Ann. § 50-3-1003(a), a state statute which prohibits erection of any machinery or equipment within 10 feet of voltage overhead lines and has an intended purpose of protecting employees.  (*See* Ex. 1, AoA's Resp. to Pl.'s First Set of Requests for Admissions, Nos. 30, 40, 42, 43, 45, 48.)

7. The investigation by TOSHA revealed that "a section of the Ring of Fire contacted a 13.2 Kv overhead powerline while in the process of setting up the ride," violating Tenn. Code Ann. § 50-3-1003(a), and "requests for Accident Logs (OSHA 300 forms) for the last three years were made on September 1, 2016 and September 2, 2016," but not received, in

violation of Tennessee Department of Labor and Workforce Development Rule 0800-01-03.05(2)(a). (*See* <u>Ex. 1</u>, AoA's Resp. to Pl.'s First Set of Requests for Admissions, No. 42.)

8.  Initially, Mr. Yearta only brought suit against AoA and DF. (*See* generally Compl., ECF No. 1.)

9.  AoA designed certain aspects of the layout of the 2016 Delta Fair while DF was responsible for the overall design layout. (*See* <u>Ex. 1</u>, AoA's Resp. to Pl's First Set of Requests for Admissions, No. 1.)

10. AoA decided the location of the Ring of Fire at the 2016 Delta Fair, and an employee of AoA, who was aware of the high-voltage overhead power lines to the north, marked the location where the Ring of Fire was to be placed. (*See* <u>Ex. 1</u>, AoA's Resp. to Pl's First Set of Requests for Admissions, Nos. 6-7.)

11. Mr. Yearta's complaints against AoA claimed its employees and/or agents were negligent because they: failed to properly mark and place the Ring of Fire ride; failed to pay attention to what they were doing; failed to properly set up the Ring of Fire ride to avoid injury; and failed to use reasonable and due care to avoid the power line while setting up the Ring of Fire ride. (*See* First Am. Compl. ¶ 47.)

12. Mr. Yearta also asserted that AoA negligently caused his injuries when it: failed to safely map out and plan the carnival midway; failed to properly train its employees to safely set up its rides, including the Ring of Fire; failed to establish, implement, and enforce sufficient policies, procedures, and guidelines for employees regarding the safe set up and operation of rides, including the Ring of Fire; and failed to properly mark and place the Ring of Fire ride. (*See* First Am. Compl. ¶ 48.)

13. Mr. Yearta also alleged negligence *per se* against AoA due to its violation of Tenn. Code Ann. § 50-3-1003(a). (*See* First Am. Compl. ¶ 49.)

14. DF hosts the Delta Fair & Music Festival annually and was the entity who contracted with AoA to provide rides and amusements for the 2016 Delta Fair. (*See* First Am. Compl. ¶¶ 16, 18, ECF No. 25.)

15. Mr. Yearta's complaints against DF claimed DF was negligent because it: failed to safely map out and plan the carnival midway; failed to supervise the contractors setting up rides; failed to establish, implement, and enforce sufficient policies, procedures, and guidelines for the placement of rides and/or safety of patrons; and failed to prohibit the placement of rides in locations where they could come into contact with power lines. (*See* First Am. Compl. ¶ 52.)

16. Only after AoA asserted comparative fault against BCA, alleging that its negligence in failing to ground or to properly ground the generator involved in the incident caused or contributed to Mr. Yearta's injuries, did Mr. Yearta amend his complaint to add BCA as a party. (*See generally* First Am. Compl.)

17. Mr. Yearta testified that the generator was grounded; he testified that he was certain that it was because he would not have hooked up his ride to the generator if it were not. (Deposition of Edward Yearta, 423:7-13; 424:1-5, 8-9, 13-25; 425:13-15, excerpts attached hereto as <u>Exhibit 2</u>.)

18. Both AoA and DF filed Cross-claims for indemnification pursuant to a contract between AoA and BCA, the Independent Attraction Contract ("IAC"). (*See generally* AoA's First Am. Crossclaim, ECF No. 42; DF's Am. Answer and Cross-Claim against BCA, ECF No. 96.)

19. The IAC is a contract drafted by AoA and used by AoA when it subcontracts amusements rides at fairs. (*See* Deposition of Dominic Vivona, 29:8 - 30:2, excerpts attached hereto as Exhibit 3.)

20. The IAC obligated BCA to provide eight specific rides at the 2016 Delta Fair, as identified in the contract. (*See* Ex. B to AoA's First Am. Crossclaim, ¶ 3, ECF No. 42-2; Ex. A to DF's Am. Answer and Cross-Claim against BCA, ¶ 3, ECF No. 96-1.)

21. The contract contained the following language:

SUBCONTRACTOR further agrees to indemnify and defend AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors harmless against, any and all injuries, claims, losses or liabilities which result from any acts or omissions of SUBCONTRACTOR or of any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

(*See* Ex. B to AoA's Cross-Claim, ¶ 17, ECF No. 42-2; Ex. A to DF's Am. Answer and Cross-Claim against BCA, ¶ 17, ECF No. 96-1.)

22. The IAC provides that the "agreement shall be deemed made in the State of New Jersey and shall be construed in accordance with laws of New Jersey." (*See* Ex. B to AoA's First Am. Crossclaim, ¶ 21, ECF No. 42-2; Ex. A to DF's Am. Answer and Cross-Claim against BCA, ¶ 21, ECF No. 96-1.)

23. AoA representatives testified that the IAC does not address generators at all. (*See* Ex. 3, Deposition of Dominic Vivona, 30:13 - 31:2; 44:8 - 45:16; *see also* Deposition of Christopher Vivona, 248:16 - 251:6, excerpts attached hereto as Exhibit 4.)

24. AoA representatives testified that the provision of a generator from BCA occasionally is strictly a verbal arrangement and service provided for which BCA receives no additional compensation. (*See* Ex. 3, Deposition of Dominic Vivona, 44:8-22; 46:24 - 47:4; Ex. 4, Deposition of Christopher Vivona, 233:12-19, 234:2-5.)

25. A ride operator is not always asked to bring a generator with it every time it provides a ride to AoA, and the generator that is brought by a ride operator may not even be used at all. (*See* Ex. 3, Deposition of Dominic Vivona, 47:10 - 48:10; Ex. 4, Deposition of Christopher Vivona, 239:25 - 240:9.)

26. The parties mediated the matter on October 24, 2018, which resulted in the resolution of Mr. Yearta's claims against all Defendants. (*See* Mediation Certification, ECF No. 100.)

27. Settlement negotiations had proceeded without BCA's participation, but BCA later learned that a settlement amount had been reached that did not include consideration of BCA's negligence. (*See* Letter from DF's counsel, attached hereto as Exhibit 5.)[1]

28. BCA was informed that the settlement "merely contemplates the liability of AoA and Delta Fair." (*See* Ex. 5, p. 5.)

---

[1] In anticipation of any argument regarding the admissibility of Exhibit 5 to this Statement, BCA states that such evidence is not prohibited by Fed. R. Evid. 408 because it is not being used for impermissible reasons, but rather for another purpose. As the Cross-claims seek indemnification from BCA for any settlement paid to Yearta, *inter alia*, in this lawsuit, the Cross-claim Plaintiffs have placed Yearta's settlement at issue, and the cited evidence is probative of whether Yearta's settlement was a loss resulting from AoA and/or DF's negligence under New Jersey indemnification law. Additionally, Exhibit A is most naturally understood as a bad faith demand letter to an insurer, rather than any settlement conversations, as the letter explains that the demand is made pursuant to Tenn. Code Ann. § 56-7-105.

        Respectfully submitted,

        BAKER, DONELSON, BEARMAN,
        CALDWELL, AND BERKOWITZ, PC

        /s Mary Wu Tullis
        Bruce A. McMullen (Tenn. Bar No.18126)
        Mary Wu Tullis (Tenn. Bar No. 31339)
        165 Madison Ave., Suite 2000
        Memphis, TN  38103
        (901) 526-2000
        bmcmullen@bakerdonelson.com
        mtullis@bakerdonelson.com

        *Attorneys for Belle City Amusements, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 4, 2019, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

| | |
|---|---|
| Randall L. Kinnard<br>John F. Teitenberg<br>KINNARD, CLAYTON & BEVERIDGE<br>The Woodlawn<br>127 Woodmont Boulevard<br>Nashville, TN 37205<br><br>Gregory L. Mast<br>FIELDS HOWELL LLP<br>1180 W. Peachtree Street, Ste. 1600<br>Atlanta, GA 30309 | J. Mark Griffee<br>BLACK McLAREN JONES RYLAND &<br>GRIFFEE, P.C.<br>530 Oak Court Drive, Ste. 360<br>Memphis, TN 38117 |

        s/ Mary Wu Tullis