# Exhibit 5:

# Letter from DF's Counsel

# Fields Howell LLP

1180 W. Peachtree Street, Suite 1600
Atlanta, GA 30309
T 404.214.1250  F 404.214.1251

fieldshowell.com

Gregory L. Mast
D 404.214.1262
gmast@fieldshowell.com

November 20, 2018

**VIA FIRST-CLASS & CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

ACE American Insurance Company
436 Walnut Street
Philadelphia, PA 19106

Haas & Wilkerson Insurance
4300 Shawnee Mission Parkway
Fairway, KS 66205
c/o Kent Sanders & Al Waechter

Belle City Amusements
c/o Mary Wu Tullis
Baker, Donelson, Bearman, Caldwell,
and Berkowitz, PC
165 Madison Ave., Suite 2000
Memphis, Tennessee 38103

RE:  LAWSUIT:  *Edward Alan Yearta v. Amusements of America, Inc., et. al.*
US District Court for the Western District of Tennessee,
Western Division
Case No. 2:17-cv-02117

To Whom It May Concern:

This letter is one last attempt to give ACE American Insurance Company ("ACE") an opportunity to remedy its bad faith failure to defend and indemnify its additional insureds in the above-referenced matter. Indeed, the conduct here is so egregious that we believe there must have been miscommunication between ACE and its claims administrator, Haas & Wilkerson ("H&W"), or H&W must have a financial motive for its actions done without ACE's knowledge. ACE simply ignored multiple letters from its additional insureds and then allowed H&W to take extreme and unsupportable positions. Nonetheless, we are authorized to give ACE this final opportunity to get out of this dispute for exactly what it owes, without penalties, interest, attorneys' fees, or extra-contractual damages. In so doing, ACE can also protect its named insured against liability in excess of limits.

On behalf of additional insureds, Delta Fair, Inc. ("Delta Fair") and Amusements of America, Inc. ("AofA"), as well as Liberty Corporate Capital Limited ("Liberty"), we hereby demand payment of $1,250,000 within 60 days. If this offer is not accepted, bad faith litigation will be pursued against ACE and its named insured, Belle City Amusements, Inc. ("Belle City"). Neither ACE nor Belle City will have an opportunity to settle for this amount again. Instead, my clients will be seeking no less than $2,325,000 in actual damages, plus bad faith penalties, punitive damages, interest, attorneys' fees, and costs. In total, the damages will easily be a multiple of the amount for which ACE can resolve this matter today.

We trust that this letter will be provided to Belle City with a suggestion that it retain separate counsel to protect its interests.

FIELDS HOWELL LLP

ACE American Insurance Company
September 5, 2018
Page 2

## I. Background Facts

This matter arises out of the tragedy at the 2016 Delta Fair, in Memphis, Tennessee. Delta Fair is the operator and promoter of the annual Delta Fair & Music Festival. Delta Fair contracted with AofA to provide rides and amusements in the carnival midway of the 2016 Fair. Am. Compl. ¶ 18 (attached hereto as Ex. A). AofA, in turn, contracted with other parties, including Prime Time Amusement, LLC and your Named Insured, Belle City. *Id.* ¶¶ 19, 33-34.

### A. The Subcontract

Belle City's contract with AofA (the "Subcontract") identifies Belle City as the "SUBCONTRACTOR" and contains the following indemnification provision:

> 17. SUBCONTRACTOR further agrees to indemnity and defend **AMUSEMENTS OF AMERICA**, VIVONA FAMILY ENTERTAINMENT, **DELTA FAIR INC.**, AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors harmless against any and all injuries, claims, losses or liabilities **which result from any acts or omissions of SUBCONTRACTOR** or any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

Ex. B (Emphasis added and attached hereto). The Subcontract also contains a provision stating that Belle City "confirms and agrees that he carries public liability insurance with liability limits of not less than $2,000,000 primary coverage. SUBCONTRACTOR will have AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, **DELTA FAIR INC.**, AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and their related companies included as an additional named insured under such policy." *Id.* Per the terms of the Subcontract, Belle City must indemnify and defend Delta Fair and AofA against all claims, damages, losses and expenses, including attorneys' fees, arising out of or resulting from Belle City's acts or omissions in connection with the 2016 Delta Fair.

### B. The ACE Policy

ACE issued a policy of insurance to Belle City, through H&W, a purported expert in amusement ride insurance. H&W apparently had both binding authority and claims responsibility, an inherent conflict as claims reserves and settlements negatively affect the profitability of the book of business. Nonetheless, it is unclear why the ACE policy was only issued with a $1 million limit, in violation of the Subcontract, which required a minimum $2 million in primary coverage.

Despite having inadequate coverage, it appears that Belle City did obtain additional insured coverage for Delta Fair and AofA. ACE policy's Additional Insured – Designated Person or Organization Endorsement provides in the relevant part:

**SCHEDULE**

| Name of Additional Insured Person(s) or Organization(s) |
| --- |
|  |

**FIELDS HOWELL LLP**

ACE American Insurance Company
September 5, 2018
Page 3

> 1. The organization that manages the event.
> 2. The political sub-division who grants you permission to operate at the event.
> 3. The owner of the premises on which the event is being held.
> 4. The landlord or lessor of the premises on which the event is being held.
> 5. The Promoter(s) of the event.
> 6. The Sponsor(s) of the event.
> 7. The organization for whom you are performing operations at the event.
>
> Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Scheduled, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, *in whole or in part*, by your acts or omissions or the acts or omissions of those acting on your behalf:

A. In the performance of your ongoing operations; or
B. In connection with your premises owned by or rented to you.

(Bold in original; italics added for emphasis).

### C. The Litigation

The First Amended Complaint plainly alleged that Belle City's failure to properly ground its generator was a contributing cause of Plaintiff's injuries. Specifically, "The Plaintiff… alleges that the Defendant Belle City Amusements, Inc. and/or its employees negligently supplied, maintained, and/or installed its generator such that it lacked sufficient 'grounding.'" Am. Compl. ¶ 58. Further, "Plaintiff alleges that Defendant Belle City Amusements, Inc.'s negligence, on its own accord and/or by and through its employees and/or agents, was a direct, legal, and proximate cause of the Plaintiff's injuries and damages." *Id.*, ¶ 59.

Discovery confirmed that the negligence of Belle City contributed to the Plaintiff's injuries. Jerry Sears gave the Plaintiff and AofA permission to use the generator. Ronald Douberly testified:

Q. Did you have permission to use the generator?

A. Yes.

Q. Do you know if [Plaintiff] had permission to use the generator?

A. Yes.

Q. And who – who did you get permission from?

A. Jerry Sears.

Q. Who is Jerry with?

A. He works for Belle City.

Q. And it's your understanding Belle City owned the generator?

FIELDS HOWELL LLP

ACE American Insurance Company
September 5, 2018
Page 4

    A.    Yes.

Douberly Depo. Excerpts, 169:254-170:11 (attached hereto as Exhibit C). In fact, Mr. Sears told AofA that the generator was "good to go." *Id.* at 246:24-247:20. In addition to the specific authorization, AofA had general permission to use the generator based on a verbal agreement between the parties. C. Vivona Depo. Excerpts, 233:12-23; 234:6-8; 238:7-19 (attached hereto as Exhibit D).

Immediately after the Plaintiff's accident, Zach Panacek of Belle City admitted that the generator was not properly grounded. Christopher Vivona testified:

    Q.    Is this when you had the conversation with Zach regarding the generator?

    A.    Yes.

    ***

    Q.    How did the conversation with Zach regarding the generator start?

    A.    It started when the power company was there. When they got there, [Zach] was upset because it was not grounded and he told me it was not grounded.

    Q.    Did you say anything in response?

    A.    I told him to get it grounded as soon as possible.

*Id.* at 215:25-216:15. To avoid any confusion, Belle City's counsel elicited the following testimony:

    Q.    Earlier you testified that Zach said to you that he did not ground the generators; is that right?

    A.    He said it was not grounded.

    Q.    So he said it was not grounded.

    A.    Correct.

*Id.* at 217:14-19. In addition to Belle City's admissions against interest, AofA visually confirmed that the generator was not properly grounded, after the accident. *Id.* at 241:2-7.

Interestingly, Belle City carefully danced around the question of whether the generator was grounded. In discovery, Belle City simply said that "the undersigned assumes the generator was grounded because it was used by other amusement ride owners." Belle City Amusements, Inc.'s Answers to Amusements of America, Inc.'s First Set of Interrogatories, p. 10 (attached hereto as Exhibit E). Indeed, Belle City claimed that it did not know, which of its employees set up the generator, because it never inquired. *Id.* at 10, 13. As a result, Belle City is not going to be able to reasonably contest its liability.

    D.    Mediation

The parties agreed to mediate, using the mediator, Floyd Flippin, suggested by Belle City. By July 10, 2018, Belle City's counsel started circulating proposed dates, so that the parties and their insurance carriers could confirm their availability. Ultimately, the parties agreed to October 24, 2018, after AofA's insurer was able to confirm its attendance. On July 31, 2018, Mr. Flippin send out a confirmation letter to all parties (attached hereto as Exhibit F).

On October 10, 2018, Plaintiff raised some concerns about whether the mediation should be postponed, but the parties never released the date. The next day, Belle City's counsel, expressed concerns

FIELDS HOWELL LLP

ACE American Insurance Company
September 5, 2018
Page 5

with the last minute attempt to push back mediation, but again, no one cancelled it. By October 13, 2018, Plaintiff confirmed that he was withdrawing any concerns about the mediation going forward. On October 15, 2018, Belle City's counsel advised for the first time that ACE's representative would not be attending in person. Delta Fair expressed great concern that this was a ploy to try and avoid paying, especially as ACE had refused to respond to Delta Fair's multiple tender letters. We were advised that an immovable conflict had somehow arisen in the 72 hours when there was doubt as to whether the mediation would go forward and ACE would cancel the mediation if it could not attend by telephone.[1] Belle City further confirmed that ACE would participate in the mediation in good faith.

Under the local rules, "Insurer representatives are required to attend in person if their agreement is necessary to achieve a settlement, unless excused." Plan for Alternative Dispute Resolution in the United States District Court Western District of Tennessee, § 5.8(c). Here, at a minimum and assuming that ACE can show that its "personal attendance would impose an extraordinary or otherwise unjustifiable hardship", the request was not made with the required 14 days notice. *Id.*, § 5.8(e). When the request was made, the other parties were not made aware of numerous relevant facts, including: (1) the conflict was not with ACE, but involved a claims administrator; (2) the claims administrator did not have authority to settle the case up to the policy limits, which were clearly exposed; and (3) the claims administrator was going to take the position that he would not discuss the case with the mediator. As a result, ACE obtained permission to not attend on false pretenses.

H&W's conduct during the mediation was nothing short of egregious. Even though the ACE policy was primary, liability could not be disputed, the Plaintiff's demand was $6 million, and more than $250,000 had been spent defending ACE's additional insureds, H&W started out by advising that it did not have authority to settle for more than $500,000. Apparently, that authority required the participation of an ACE adjuster that was unavailable and never planned to attend. Then, ignoring the plain language of the ACE policy, H&W tried to argue that its breach of the duty to defend was irrelevant, because AofA's insurer was defending Delta Fair. When the mediator attempted to explain how ridiculous H&W's position was, the mediator was advised that nothing more than $200,000 would be offered, and if the mediator even tried to discuss the case with H&W further, that sum would be reduced. As if that were not enough, H&W then conditioned its $200,000 offer on a complete release from AofA and Delta Fair, notwithstanding that $200,000 was insufficient to even cover the incurred attorneys' fees. Understandably, H&W's position was simply an effort to leverage its personal financial motives to the detriment of ACE's insured and additional insureds and is classic bad faith.

By contrast, AofA's insurer acted in the best interests of its insured, by negotiating an amazing deal. The Plaintiff was unwilling to consider a settlement that did not include all defendants. Nonetheless, due to H&W's bad faith, the Plaintiff appreciated the efforts of AofA to resolve the case. For that reason, a total settlement was reached in the amount of $2,075,000. That sum does not include any payment for the liability of Belle City. Instead, it merely contemplates the liability of AofA and Delta Fair.

---

[1] We look forward to exploring the legitimacy of this purported conflict in discovery, as ACE had two representatives available by phone; both H&W employees. It seems highly unlikely that such a conflict arose during the 72 hour window for both representatives. It appears even more unlikely that ACE's claims adjuster ever intended to appear at mediation.

**FIELDS HOWELL LLP**

ACE American Insurance Company
September 5, 2018
Page 6

      II.      **Coverage and Liability**

There can be no reasonable question that AofA and Delta Fair were additional insureds under the ACE policy and Belle City owes contractual indemnity. For that reason, ACE has breached the policy and exposed its named insured to significant excess liability.

As quoted above, the ACE policy's Additional Insured – Designated Person or Organization Endorsement provides in the relevant part:

SCHEDULE

| Name of Additional Insured Person(s) or Organization(s) |
| --- |
| 1. The organization that manages the event.<br>2. The political sub-division who grants you permission to operate at the event.<br>3. The owner of the premises on which the event is being held.<br>4. The landlord or lessor of the premises on which the event is being held.<br>5. The Promoter(s) of the event.<br>6. The Sponsor(s) of the event.<br>7. The organization for whom you are performing operations at the event. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Scheduled, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, *in whole or in part*, by your acts or omissions or the acts or omissions of those acting on your behalf:

A. In the performance of your ongoing operations; or
B. In connection with your premises owned by or rented to you.

(Bold in original; italics added for emphasis).

The traditional rules for determining a duty to defend are the same for all insureds, named and additional. *See generally Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 609-610 (Tenn.Ct.App. 2011). The obligation to defend "depends solely on the allegations contained in the underlying complaint." *Id.* at 609. In other words, if the complaint alleges damages within the risk covered by the insurance contract, a duty to defend exists. *Id.*

Moreover, additional insured clauses are not limited to vicarious liability. *Ferrell Paving, Inc.*, 397 S.W.3d at 617. In other words, the additional insured endorsement entitles AofA and Delta Fair to coverage for their negligence, independent of the negligence of Belle City. As such, AofA and Delta Fair are entitled to complete indemnity. The ACE policy's "caused, in whole or in part" language, is given a liberal interpretation. *American Guarantee and Liability Ins. Co. v. Norfolk S. R. Co.*, 278 F.Supp. 3d 1025, 1026 (E.D.Tenn. 2017). "[T]he required level of causation by the named insured [is] minimal." *Id.* (noting cases holding 1% liability by the named insured was sufficient and that the named insured need not be a substantial cause). Thus, the endorsement

FIELDS HOWELL LLP

ACE American Insurance Company
September 5, 2018
Page 7

"assigns [AofA and Delta Fair] additional insured status if the accident was caused by Belle City's work, act, or omission, in some way, even partially." *Id.* Courts have specifically rejected the argument that apportionment of liability is necessary (H&W's primary argument):

> The AI Endorsement covers an additional insured for liability, "but only with respect to 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" the named insured. This language undercuts AG's argument that the policy only covers Norfolk's vicarious liability. The phrase "caused, in whole or in part" denotes shared fault, and vicarious liability, on the other hand, is an all or nothing proposition. The AI Endorsement's use of the words "caused ... in part" can only suggest that coverage extends beyond mere vicarious liability arising out of the named insured's acts or omissions. Instead, the language covers the additional insured for its own negligence so long as the named insured was also a contributing cause of the injury or damage giving rise to liability. The phrase specifically denotes an intention to extend coverage to additional insureds for injuries and damage caused by acts or omissions by both the named insured *and* the additional insured.

*Id.* at 1042 (internal quotations and citations omitted, emphasis in original). Thus, if Belle City was even the slightest, most minor, cause of the Plaintiff's injuries, AofA and Delta Fair are entitled to complete indemnification.

Here, the duty to defend was triggered was plainly triggered. Delta Fair managed, promoted, and sponsored the Fair, meeting definitions 1, 5, and 6 in the endorsement's schedule. Belle City was performing operations for both Delta Fair and AofA, meaning that both parties are included within definition 7 of the endorsement. Nor can there be any doubt that the Amended Complaint alleges that Belle City contributed to the Plaintiff's injuries. Indeed, there is an entire section entitled "Wrongs Complained of the Defendant Belle City Amusements, Inc." in the Amended Complaint.

The duty to indemnify is likewise an easy proposition. The undisputed evidence establishes, at best, that the generator was improperly grounded, and at worst, not grounded at all. Belle City admitted as much in the moments following the accident, and Belle City has never contended that the generator was properly grounded. Frankly, this is an easy case.

Because of ACE's refusal to defend and indemnify Delta Fair and AofA, Belle City is now exposed to significant liability. First, Belle City breached the Subcontract by not having $2 million in primary coverage. Thus, if ACE rejects the current offer, we will pursue ACE for its breaches and separately proceed against Belle City for any additional sums owed. Second, the Subcontract provides that Belle City will "indemnity and defend AMUSEMENTS OF AMERICA... [and] DELTA FAIR INC... and to hold AMUSEMENTS OF AMERICA... [and] DELTA FAIR INC. harmless against any and all injuries, claims, losses or liabilities... which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder."

The phrase "arise in connection" is extremely broad. *See Estate of Spurling v. Progressive Industries, Inc.*, No. 3:03 CV 498, 2005 WL 1077730 (E.D.Tenn. May 6, 2005). AofA and Delta Fair are entitled to full defense and indemnity from Belle City, if the suit arose in connection with Belle City's relation to the Fair. Belle City's engagement included the obligation to provide generators, as evidenced by the deposition testimony. Even if the generator had not been required, Belle City put it on the fairgrounds, as part of it ride set-up. In other words, the mere fact that the generator was present is sufficient to trigger the defense and indemnity obligation.

**FIELDS HOWELL LLP**

ACE American Insurance Company
September 5, 2018
Page 8

Thus, ACE is liable for all defense costs and the full amount of its policy limits, and Belle City is liable for the full amount of the settlement plus all defense costs. By accepting this offer and just fulfilling its obligations under the policy, ACE can eliminate more than $1 million of its named insured's liability.

### III.    Bad Faith and Punitive Damages

If ACE does not accept this offer, it will expose both itself and Belle City to significant liability. This demand is made pursuant to T.C.A. § 56-7-105. If the demand is not accepted within 60 days, you are on notice that bad faith damages will be sought. Such damages include an additional 25% and attorneys' fees.

Further, ACE and Belle City will both be liable for punitive damages. The breach of the policy and the Subcontract was intentional, fraudulent, malicious, and/or reckless, justifying an award of punitive damages. *See e.g. Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn.Ct.App. 2013). Specifically, ACE and Belle City intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation of the facts surrounding the Plaintiff's injuries; (3) unjustly refused and/or failed to pay Plaintiff's claim and defend and indemnify AofA and Delta Fair based on ACE's and Belle City's own financial justification, with no reasonable basis; (4) refused to settle Plaintiff's case with no reasonable or justifiable basis; (5) failed to treat the interests of its insureds and/or indemnitees with equal regard to its own; (6) failed to timely investigate the accident; (7) misrepresented the scope of coverage; (8) engaged in lowball settlement tactics to force others to resolve the suit; (9) misrepresented its reasons for failing to attending the mediation in person; (10) refuse to participate in settlement discussions in good faith; (11) actively instructed its agents to take unreasonable positions and/or failed to monitor its agents, knowing those agents had a financial incentive to lowball settlement offers; (12) misrepresented material facts; (13) ignored and completely failed to respond to correspondence from its additional insureds and/or indemnitees; (14) forced Delta Fair and AofA to file suit to enforce their rights; and (15) failed to implement and follow reasonable claims handling guidelines. Based on this egregious conduct, we fully expect that a jury will award significant punitive damages. While we believe that the evidence will show a specific intent to harm AofA and Delta Fair removing any caps on punitive damages, a jury certain will have no problem awarding punitive damage in a minimum of two times the actual damages.

Thus, ACE and Belle City will be facing liability of $6,975,000, before attorneys' fees.

### IV.    Conclusion

Notwithstanding the reasonableness of this offer, if ACE or Belle City have any questions, please do not hesitate to contact us.

Sincerely yours,

FIELDS HOWELL LLP

Gregory L. Mast