**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| EDWARD ALAN YEARTA,<br><br>    Plaintiff,<br><br>v.<br><br>AMUSEMENTS OF AMERICA, INC.; DELTA FAIR, INC.; UNIVERSAL FAIRS, LLC; and BELLE CITY AMUSEMENTS, INC.,<br><br>    Defendants. | Civil Action No.: 2:17-cv-2117 |

**PLAINTIFF EDWARD ALAN YEARTA, DEFENDANTS DELTA FAIR, INC., AND AMUSEMENTS OF AMERICA, INC.'S MEMORANDUM OF FACT AND LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiff Edward Alan Yearta, Defendants Delta Fair, Inc., and Amusements of America, Inc., by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 41(a) and (c) file this Memorandum of Fact and Law in Support of their Motion to Dismiss.

**I.    SUMMARY OF ARGUMENT**

A.    Defendants Delta Fair, Inc. ("Delta Fair") and Amusement of America, Inc. ("AOA"), and their insurer, Liberty Corporate Capital, Ltd. ("Liberty") have been working diligently to resolve the tort claims asserted against Delta Fair and AOA by Plaintiff Edward Yearta in the instant litigation. The parties attended mediation, and Liberty's adjuster, who flew in from London, England for the mediation, was able to negotiate a resolution of the case, protecting Delta Fair and AOA.  As Plaintiff's claims are now fully resolved, Delta Fair, AOA, and the Plaintiff seek dismissal of Plaintiff's claims with prejudice.

  B.  Delta Fair and AOA[1] also seek dismissal of their crossclaims without prejudice against Defendant Belle City Amusements, Inc. ("Belle City"), as they are no longer the real parties in interest to these claims. Resolution of Plaintiff's claims was made possible by Liberty's good faith efforts to participate in the mediation and to protect the best interests of Delta Fair and AOA. In stark contrast to Liberty's efforts, Belle City and its insurer, ACE American Insurance Company ("ACE"), failed to not only meaningfully participate in the mediation, but obstructed progress during the mediation. Specifically, ACE's claims administrator, Haas & Wilkerson ("H&W"), attended with unreasonably low settlement authority that was conditioned upon the presence of an ACE representative who did not attend the mediation and was not even available by phone. Subsequently, ACE's adjuster advised that he was not even made aware of the case, let alone the mediation. The minimal, contingent settlement authority H&W purportedly had failed to reflect the realities of the primary insurance policy issued by ACE and its obligations to Delta Fair and AOA, as insureds under the ACE policy.

  Plaintiff was unwilling to discuss piecemeal settlement with only certain defendants. Thus, because of Belle City and ACE's refusal to participate in resolution of the claims, in an extraordinary demonstration of good faith and in great effort to protect its insureds, Liberty agreed to a settlement with Plaintiff for the minimum amount Plaintiff would have taken in resolution of all of his claims. The settlement was reached on October 24, 2018, but due to the Plaintiff's request for multiple annuities, the settlement agreement was not finalized until early December 2018, Liberty worked to establish an annuity under which Plaintiff would receive the settlement funds

---

[1] The Plaintiff was not privy to the discussions between the Defendants and, as a result, refrains from joining in factual allegations specifically arising from and relating to those discussions. However, Plaintiff has no reason or grounds to doubt the veracity of these allegations and hereby consents to the dismissal of the entire case.

in structured payments, per Plaintiff's election. The structured settlement was finalized on or about December 27, 2018. As of that date, Liberty had fully paid the claims on behalf of Delta Fair and AOA. As of that time, Liberty became the only real party in interest to Delta Fair and AOA's contractual indemnity claims, among others, against Belle City and ACE. However, between October 24, 2018 and December 27, 2018, Delta Fair and AOA effectively knew that they had no remaining interest in the outcome of the case.

Because the crossclaims asserted by Delta Fair and AOA against Belle City no longer belong to Delta Fair and AOA as a matter of law, Delta Fair and AOA respectfully request this Court enter an order dismissing the crossclaims without prejudice. This will allow the real party in interest to pursue its claims. In the alternative, Delta Fair and AOA request that the Court grant leave for Liberty to appear as the substituted cross-claimant to file a new third-party complaint against Belle City so as to enforce the claims that now belong to it by way of subrogation and to add ACE as a defendant so as to enforce new claims for bad faith against ACE that arose out of the settlement and from ACE's egregious conduct.

## II.     FACTUAL BACKGROUND

### A.     The Incident and the Parties

This matter arises out of the tragedy at the 2016 Delta Fair and Music Festival (the "Fair") in Memphis, Tennessee. ECF No. 27-1. Delta Fair promotes the Fair, but does not own or operate any of the amusement rides. Rather, Delta Fair contracted with AOA to provide the Fair's amusement rides. (A true and correct copy of the contract between Delta Fair and AOA is attached as Exhibit "A"). AOA, in turn, contracted with Prime Time Amusements, LLC ("Prime Time") and Belle City to provide additional amusements for the Fair.

Belle City's contract with AOA (the "Agreement") contains the following indemnification provision:

> 17. SUBCONTRACTOR further agrees to indemnity and defend AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, **DELTA FAIR INC.**, AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors harmless against any and all injuries, claims, losses or liabilities which result from any acts or omissions of SUBCONTRACTOR or any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

(The Agreement, ¶ 17. A true and correct copy of the Agreement is attached as Exhibit "B") (emphasis added). The contract also contains a provision stating that Belle City "confirms and agrees that he carries public liability insurance with liability limits of not less than $2,000,000 primary coverage. SUBCONTRACTOR will have AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and their related companies included as an additional named insured under such policy." *Id.*, ¶ 16. Belle City's insurance policy provides each of the following are additional insureds: the promotor, the sponsor, the lessor of the premises, the organization that manages the event, and the organization for whom Belle City is performing operations.

Belle City provided an electrical generator for the Fair and authorized AOA and Plaintiff to use the generator, specifically indicating that the generator was ready to use. (Settlement Agreement, p. 1. A true and correct copy of the settlement agreement executed by Plaintiff is

attached as Exhibit "C"; November 20, 2018 demand letter to ACE, pp. 3, 4. A true and correct copy of the November 20, 2018 demand letter to ACE is attached as Exhibit "D"). With this authorization, rides owned by Plaintiff's employer and AOA were connected to the generator provided by Belle City. *Id.* Because Belle City's generator was not properly grounded, an electrical current flowed through an AOA operated ride and the improperly grounded Belle City generator, and electrocuted the Plaintiff (the "Incident"). *Id.*

B.  **The Lawsuit**

On or around June 12, 2017, Plaintiff filed suit against Delta Fair, AOA, Belle City, and Universal Fairs, LLC, for injuries arising out of the Incident (the "Amended Complaint"). ECF 27-1. In the Amended Complaint, Plaintiff brought claims against Delta Fair for (1) its own alleged negligence in failing to properly plan, supervise, and enforce safety guidelines, (2) its employees' or agents' alleged negligent acts, and (3) vicariously liability for the negligence of defendant Universal Fairs, LLC. *Id.* Plaintiff brought similar negligence claims against the co-defendants, in addition to claims of negligence *per se* for violation of the Tennessee statute governing proper operation around high-voltage overhead power lines. *Id.*

As Plaintiff's injuries were caused by Belle City's failure to properly ground the generator, not only did Belle City face liability for Plaintiff's injuries, Belle City owed a contractual duty to indemnify and defend AOA and Delta Fair, as Plaintiff's claims "result[ed] from any acts or omissions" of Belle City or its employees, agents, or subcontractors. (Ex. B, ¶ 17). Accordingly, on July 14, 2017, AOA filed its First Amended Crossclaim against Belle City, asserting a count for contractual defense and indemnity. ECF No. 42. On September 4, 2018, with leave of the Court, Delta Fair filed its Amended Answer and Crossclaim Against Belle City, asserting claims for contractual defense and indemnity against Belle City. (AOA and Delta Fair's cross claims are

referred to, collectively, as the "Crossclaims"). ECF No. 96. Additionally, AOA and Delta Fair were entitled to a defense and indemnity as additional insureds under Belle City's insurance policy. (Belle City's insurance policy, Policy No. OGLG20495364, Form CG 20 26 07 04. A true and correct copy of Policy No. OGLG20495364 is attached as Exhibit "E") (naming the "organization that manages the event," "Promoter(s) of the event," "organization for whom you are performing operations at the event" as additional insureds). Despite Belle City and ACE's obligations clearly being triggered by the Agreement and Belle City's insurance policy through ACE, however, Belle City and ACE refused, and continue to refuse, to fulfill their contractual obligations.

### C.   Mediation and Settlement

The parties agreed to mediate on October 24, 2018, using the mediator Floyd Flippin, at Belle City's suggestion. On October 16, 2018, Belle City's counsel advised for the first time that ACE's representative would not be attending in person, as an immovable conflict had somehow arisen in the small window during which the mediation was being reconfirmed. (A true and correct copy of the email from Belle City's counsel is attached as Exhibit "F"). ACE threatened it would cancel the mediation if it could not attend by telephone and instead of attending in person, sent a representative of H&W attended mediation on Belle City's behalf.

Without getting into the actual offers at mediation, ACE never responded to correspondence from one of its insureds, Delta Fair, demanding it have limits available at mediation. (September 5, 2018 letter to ACE. A true and correct copy of the September 5, 2018 letter to ACE is attached as Exhibit "G"). Instead, H&W advised that it did not have authority to settle for more than $500,000, when ACE already owed more than $250,000 in defense costs for its insureds. Not only was such authority unreasonable in light of these circumstances, H&W's apparently pre-set limitation on authority necessitated the participation of an ACE adjuster that

was never advised the case existed or that mediation was going to happen. Thus, unbeknownst to the other parties, Belle City's actual insurer never attended the mediation.

Compounding H&W's obstructive and unreasonable behavior on behalf of ACE and Belle City, the Plaintiff was unwilling to consider a settlement that did not include all defendants. (Ex. C, p. 2). Ultimately, in contrast to ACE, Liberty acted in the best interest of its insureds, AOA and Delta Fair, and negotiated a settlement of $2,075,000, obtaining a great discount from Plaintiff's demand. *Id.* Because the Plaintiff was unwilling to consider settlement of less than all defendants, the settlement included release of claims against Belle City as well, despite Belle City and ACE's refusal to participate in the mediation in good faith. The settlement did not include a single dollar for the release of Belle City. *Id.* Instead, Plaintiff released Belle City to give closure to the litigation and allow Liberty to pursue Belle City, without a concern over any voluntary payment argument or the parties otherwise competing to recover ACE's limits. The settlement agreement (the "Settlement Agreement") was executed on December 6, 2018. (Ex. C).

Under the Settlement Agreement, Liberty alone paid the $2,075,000 settlement amount. (Ex. C at ¶ 2; Affidavit of Kathy Owens, ¶¶ 7-9. A true and correct copy of the affidavit of Kathy Owens is attached as Exhibit "H"). Plaintiff expressly acknowledged that this was the minimum amount he would have accepted at mediation in settlement of all his claims. (Ex. C, p. 2). The Settlement Agreement gave Plaintiff the right to purchase an annuity with the settlement funds. (Ex. C, ¶ 2.5). Plaintiff elected this option to establish a structured settlement. Liberty, Delta Fair, and AOA worked diligently with the Plaintiff to fund and to set up the structured settlement. (A true and correct copy of the November 15, 2018 email regarding the structured settlement is attached as Exhibit "I"). The structured settlement was finalized on or about December 27, 2018. (Ex. H, ¶ 12).

On November 20, 2018, Liberty issued a bad faith demand letter to ACE, Belle City, and H&W (the "Demand"). (Ex. "D"). The Demand outlines Belle City and ACE's bad faith conduct leading up to and during the mediation, including that ACE ignored multiple demands for defense and indemnity from AOA and Delta Fair as additional insureds. In the Demand, Liberty sought payment of $1,250,000 in actual damages, an amount representing the sums owed under the Agreement and under Belle City's insurance policy.

On November 27, 2018, a representative of ACE acknowledged receipt of the Demand and advised that he was reviewing the file for the first time. (A true and correct of the November 27, 2018 email from ACE's representative is attached as Exhibit "J"). On December 19, 2018, ACE's representative advised that had sent the matter to Clyde & Co. as coverage counsel to review the Demand. (A true and correct of the December 19, 2018 email from ACE's representative is attached as Exhibit "K"). He specifically advised that he believed coverage counsel had "all they need at this point." *Id.* On January 3, 2019, more than a month after ACE acknowledged receipt of the Demand and more than two weeks after ACE advised that it had referred the demand to coverage counsel, ACE's coverage counsel requested an extension for a response to the Demand, stating that it had only just received the assignment and needed further information and documentation to analyze the Demand. (A true and correct of the January 3, 2019 email from ACE's coverage counsel is attached as Exhibit "L"). As a show of good faith, counsel for Delta Fair provided the requested documents (some of which were already in ACE or Belle City's possession), and offered to grant the extension in exchange for Belle City agreeing to join in a stipulation dismissing the Crossclaims without prejudice. (A true and correct of Delta Fair's counsel's January 3, 2019 response to ACE's coverage counsel is attached as Exhibit "M"). Neither ACE, Belle City, nor Clyde & Co. responded to this offer. Rather, while ACE was

indicating to Liberty that meaningful review of the Demand and ACE's failure to protect all of its insureds with regards to Plaintiff's claims was underway, which would allow for dismissal of the entire lawsuit, on January 4, 2019, at 11:53 Central Time, Belle City filed a Motion for Summary Judgment as to the Crossclaims.  ECF No. 101.

### III.    LAW AND ARGUMENT

#### A.    Plaintiff, Delta Fair, and AOA All Stipulate to Plaintiff's Dismissal of His Claims Against Delta Fair and AOA With Prejudice

Because Plaintiff's claims are now fully resolved by the Settlement Agreement, Plaintiff moves this Court for an order dismissing his claims with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).  Delta Fair and AOA consent to dismissal of Plaintiff's claims with prejudice.

Under Fed. R. Civ. P. 41(a)(2), the Court may enter an order dismissing a claim with or without prejudice. Fed. R. Civ. P. 41(2)(2).  It is "within the sound discretion of the district court" to grant such a dismissal, and a district court only abuses such discretion "where the defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).  Here, as provided in the Settlement Agreement, Plaintiff released all of his claims asserted in the present matter and agreed to dismiss the same with prejudice. (Ex. C, p. 2).

Thus, in light of the settlement of all of Plaintiff's claims and his agreement to release the same, dismissal of Plaintiff's claims with prejudice would not impose "plain legal prejudice" on any party.  Accordingly, Plaintiff requests this Court dismiss all of his claims with prejudice.

#### B.    The Court Should Enter an Order Dismissing Delta Fair and AOA's Crossclaims Against Belle City Because Delta Fair and AOA Are No Longer the Real Parties In Interest

As a result of the Settlement Agreement, Delta Fair and AOA are no longer the real parties in interest with respect to the Crossclaims.  Accordingly, Delta Fair and AOA respectfully request

the Court also exercise its discretion under Fed. R. Civ. P. 41(a)(2) and 41(c) and enter an order dismissing their Crossclaims against Belle City without prejudice so that Liberty, the real party in interest as of December 27, 2018, may pursue these claims, in addition to other, recently arisen claims.

In federal court, claims may only be brought in the name of the real party in interest. Fed. R. Civ. P. 17. The real party in interest is the party "who is entitled to enforce the right asserted under the governing substantive law." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994). Tennessee law is clear that "upon payment of a loss, an insurance carrier becomes the real party in interest with respect to its subrogation claim." *Solectron USA ex rel. Fid. & Deposit Co. of Maryland v. Fedex Ground Package Sys.*, Inc., 520 F. Supp. 2d 904, 911 (W.D. Tenn. 2007). As explained by the this Court:

> [i]mmediately upon the payment of [a claim], [insurance companies are] subrogated to the rights of their insureds through whom they could bring a suit to recover the losses paid by them. They, and not the insureds, [are] the real plaintiffs in interest and of record, both under federal law and under Tennessee law.

*Id.* (quoting *Nat'l Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793, 796–97 (1964)). Indeed, once the insurer pays for an entire loss, the insurer then becomes the *only* real party in interest. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 381, 70 S. Ct. 207, 215, 94 L. Ed. 171 (1949). So long as the insured did not pay part of the loss itself (e.g., a portion of the loss that was self-insured), the insured is no longer the real party in interest. *See Jones Exp., Inc. v. Watson*, No. 3:10-CV-140, 2011 WL 1303164, at *5 (M.D. Tenn. Mar. 31, 2011).

Here, Liberty paid in full the claims that Plaintiff asserted against its insureds, Delta Fair and AOA. (Ex. C, ¶ 2; Ex. H, ¶¶ 7, 9). Further, Delta Fair and AOA contributed nothing to the amount payable under the Settlement Agreement, nor to their defense costs. (Ex. H, ¶ 9). As such,

Liberty is now the only real party in interest for Delta Fair and AOA's contractual indemnity crossclaims against Belle City.

After reaching an agreement for the release of Plaintiff's claims in this matter on mediation, Delta Fair, AOA, and their insurer, Liberty, worked diligently toward consummating the settlement. Per the Settlement Agreement, Liberty paid $2,075,000 in exchange for a release of all of Plaintiff's claims against Delta Fair, AOA, and Belle City. Plaintiff elected for payment of the settlement funds to be made through a structured annuity, however, meaning consummation of the Settlement Agreement did not occur until the annuity was set up and fully funded. In other words, as of the October mediation, Delta Fair and AOA effectively no longer had an interest in the claims against Belle City, as Liberty was absolving them of any exposure.

When Liberty paid the claims of Delta Fair and AOA, it stepped into the shoes of those parties with respect to any claims they had arising out of the Incident. Liberty's payment of the settlement was not complete until the annuity was established and funded on December 27, 2018. Thus, Liberty could not pursue the Crossclaims until on or about December 27, 2018. In the interim, both ACE and ACE's coverage counsel corresponded with counsel for Delta Fair regarding the Demand, suggesting that ACE was interested in remedying its bad faith conduct at that time. Delta Fair and AOA now request that the Crossclaims be dismissed without prejudice so that Liberty, the real party in interest, may separately pursue the Crossclaims as well as new claims that arose, in part, by way of the egregious conduct on behalf of ACE at the mediation.

**C.    In the Alternative, Liberty Should be Substituted and Allowed to Proceed with the Crossclaims**

As Plaintiff's claims are fully resolved and the real party in interest to the Crossclaims has recently changed, dismissing the Crossclaims without prejudice would be the most efficient way to move forward at this point. This is especially true given Liberty has new claims to assert against

Belle City and ACE that arose after settlement, including a breach of contract claim against Belle City for failure to obtain the contractually agreed upon amount of liability insurance, which only ripened upon reaching a settlement in excess of Belle City's available coverage. Specifically, Belle City was required to obtain $2 million in liability coverage for Delta Fair and AOA. Belle City obtained half of that amount. Additionally, Liberty also has claims against ACE, who is not currently a party to the litigation, for bad faith failure to defend and indemnify AOA and Delta Fair. Based on the Demand, the bad faith claim did not ripen until January 16, 2019, 60 days after its issuance. These new claims would essentially require the litigation to begin anew with the added complications of substituting and adding in the appropriate parties. Dismissal of the Crossclaims without prejudice would allow Liberty, as the real party in interest, to efficiently pursue its claims against Belle City and ACE all together in a new action. Plaintiff, Delta Fair, AOA, and Liberty all consent to dismissal of the Crossclaims without prejudice.

If the Court declines to exercise its discretion and enter an order voluntarily dismissing the Crossclaims without prejudice, the fact remains that Liberty is now the only real party in interest for such Crossclaims. Additionally, Liberty has new claims to assert that arose following settlement of Plaintiff's claims and transfer of AOA and Delta Fair's claims to Liberty. Accordingly, if the Court does not dismiss the Crossclaims without prejudice, Delta Fair and AOA alternatively request that Liberty be substituted for Delta Fair and AOA in this action and that Liberty be permitted to: (1) file a new complaint against Belle City, as the Crossclaims now belong to Liberty by way of subrogation, and assert the newly arisen claims and Belle City for breach of contract for failure to obtain the contractually required amount of insurance; and (2) add ACE as a defendant so that Liberty may assert its new, related claims against ACE for bad faith failure to defend and indemnify its additional insureds.

## IV.   CONCLUSION

As discussed above, Plaintiff requests his claims, which have been fully resolved, be dismissed with prejudice.

Delta Fair and AOA respectfully request this Court dismiss the Crossclaims without prejudice, as the Crossclaims now belong to Liberty at a matter of law and Liberty has new claims to assert against Belle City and ACE, who is not currently a party to this action.  In the alternative, Delta Fair and AOA request this Court substitute Liberty for them into this litigation and grant leave for Liberty to file a new complaint in the instant litigation to assert its claims against Belle City and to add ACE as a defendant.

This 18th day of January, 2019.

FIELDS HOWELL LLP
By: /s/ *Gregory L. Mast*
Gregory L. Mast, Esq., BPR No. 030681
1180 W. Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 214-1250
gmast@fieldshowell.com
*Attorneys for Defendant Delta Fair, Inc.*

KINNARD, CLAYTON & BEVERIDGE
By: /s/ *Randall L. Kinnard*
(with express permission)
Randall L. Kinnard, B.P.R. No. 04714
John F. Teitenberg, B.P.R. No. 21940
127 Woodmont Boulevard
Nashville, Tennessee 37205
(615) 297-1007 (telephone)
(615) 297-1505 (facsimile)
rkinnard@kcbattys.com
jteitenberg@kcbattys.com
*Attorneys for Plaintiff*

and

BLACK McLAREN JONES RYLAND & GRIFFEE, P.C.
By: /s/ *J. Mark Griffee*
(with express permission)
J. Mark Griffee
530 Oak Court Drive, Suite 360
Memphis, TN 38117
(901) 762-0535 (telephone)
(901) 762-0539 (facsimile)
knelson@blackmclaw.com
*Attorneys for Amusements of America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been filed with the Clerk of Court and served electronically upon counsel listed below via the CM/ECF system:

Randall L. Kinnard
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Boulevard
Nashville, Tennessee 37205
rkinnard@kcbattys.com
*Counsel for Plaintiff*

J. Mark Griffee
BLACK McLAREN JONES RYLAND &
GRIFFEE, P.C.
530 Oak Court Drive, Suite 360
Memphis, TN 38117
knelson@blackmclaw.com
*Counsel for Defendant Amusements of America, Inc.*

Bruce A. McMullen
Mary Wu Tullis
BAKER, DONELSON, BEARMAN, CALDWELL, AND BERKOWITZ, PC
165 Madison Ave., Suite. 2000
Memphis, TN 38103
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com
*Attorneys for Belle City Amusements, Inc.*

on this 18th day of January, 2019.

/s/ *Gregory L. Mast*
Gregory L. Mast, Esq.
BPR No. 030681