IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EDWARD ALAN YEARTA,<br><br>         Plaintiff,<br><br>v.<br><br>AMUSEMENTS OF AMERICA, INC.; DELTA FAIR, INC.; UNIVERSAL FAIRS, LLC; and BELLE CITY AMUSEMENTS, INC.,<br><br>         Defendants. | Civil Action No.: 2:17-cv-2117 |

## DELTA FAIR, INC. AND AMUSEMENTS OF AMERICA, INC.'S JOINT RESPONSE IN OPPOSITION TO BELLE CITY AMUSEMENTS, INC.' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

This case arises out of Plaintiff's tragic electrocution accident caused by Defendant Belle City Amusements, Inc.'s ("BCA") failure to properly ground a generator. The present motion arises out of the consistent refusal of BCA to honor its contractual responsibilities to Defendants Delta Fair, Inc. ("Delta Fair") and Amusements of America, Inc. ("AOA"), despite the fact that its defense and indemnity obligations were clearly triggered by the Plaintiff's tort claims.

BCA entered into a contractual agreement with AOA to provide eight amusement rides for a fair. Incidental and critical to BCA's agreement to provide these rides, BCA also agreed to provide a generator for the fair. BCA also agreed to have AOA and Delta Fair included as named insureds on BCA's insurance policy of at least $2 million in primary coverage. Plaintiff Edward Alan Yearta suffered a tragic injury when BCA's failure to properly ground a generator caused him to be electrocuted. Despite BCA having also agreed to defend and indemnify Delta Fair and AOA against claims arising in connection with BCA's performance of its agreed upon responsibilities, which included the provision of the rides and generator, BCA refused to defend or indemnify AOA and Delta Fair against Plaintiff's tort claims. BCA also failed to comply with its obligation to secure $2 million in primary insurance coverage and have Delta Fair and AOA

included as named insureds thereunder. As if that were not enough, BCA then failed to meaningfully participate in mediation and obstructed settlement of Plaintiff's claims. BCA's contractual breaches and behavior in this litigation forced AOA and Delta Fair to assert Crossclaims for BCA's breach of contract, hunt for insurance coverage that should have been readily available to them, and ultimately suffer significant damages.

In sharp contrast to BCA's actions, including its refusal to assume its defense and indemnity obligations, AOA, Delta Fair, and their insurer, Liberty Corporate Capital, Ltd. ("Liberty"), worked diligently to resolve Plaintiff's claims. As admitted in its memorandum in support of its motion, BCA has been aware since October 24, 2018, that the good faith efforts of Delta Fair, AOA, and Liberty resulted in resolution of *all* of Plaintiff's claims against *all* of the Defendants, without BCA's participation in the settlement process. Because of this settlement, as BCA well knows, Delta Fair and AOA are not the real parties in interest to the pending crossclaims and moved to dismiss the same without prejudice on that basis. (ECF No. 102).

It is against this backdrop, after shirking its contractual obligations to defend and indemnify Delta Fair and AOA in this case and obtain the agreed-upon insurance coverage, and with full awareness that the Plaintiff's claims against all Defendants were resolved and the crossclaims no longer belong to Delta Fair and AOA, that BCA burdened the Court and the parties with an inappropriate motion for summary judgment against Delta Fair and AOA. Notably, at the time BCA filed its eleventh-hour motion, its insurer's representatives had been advising Delta Fair's counsel for weeks that it was, after over a year and half of litigation, giving serious consideration *for the very first time* to its failure to assume the defense owed to Delta Fair and AOA. BCA's insurer has since recognized a duty to defend Delta Fair and AOA. It would be reasonable to surmise that BCA's insurer may have encouraged BCA to file the present motion to buy more time

to evaluate its bad faith refusal to defend and indemnify its insureds and to try to obtain judicial estoppel against the real party in interest to the crossclaims. BCA's motion is not only directed at two parties who are no longer the real parties in interest to the crossclaims, it fails to establish that its contractual defense and indemnity obligations were not triggered and that it did not breach its other contractual obligations. Accordingly, BCA's motion should be denied.

## FACTUAL BACKGROUND

### I.  BCA's Contractual Obligations

This matter arises out of the tragedy at the 2016 Delta Fair and Music Festival (the "Fair") in Memphis, Tennessee. Delta Fair promotes the Fair, and generally designates the areas where rides can be placed, but does not own or operate any of the amusement rides. (Resp. to SUMF, ¶ 9).[1] Rather, Delta Fair contracted with AOA to provide the Fair's amusement rides. (SUMF, ¶ 14). AOA, in turn, contracted with Prime Time Amusements, LLC ("Prime Time") and BCA to provide additional amusements for the Fair. (SUMF, ¶ 20; ECF No. 42-2). BCA's contract with AOA (the "IAC") contains the following indemnification provision:

> 17. SUBCONTRACTOR further agrees to indemnify and defend AMUSEMENTS OF AMERICA . . . DELTA FAIR INC. . . . and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA . . . DELTA FAIR INC. . . . and its officers, employees, agents and other subcontractors harmless against any and all injuries, claims, losses or liabilities which result from any acts or omissions of SUBCONTRACTOR or any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

(SUMF, ¶ 21; ECF No. 42-2). The contract also contains a provision stating that BCA "confirms and agrees that he carries public liability insurance with liability limits of not less than $2,000,000 primary coverage. SUBCONTRACTOR will have AMUSEMENTS OF AMERICA . . . DELTA

---

[1] "SUMF" refers to ECF No. 101-2 and "Resp. to SUMF" refers to Delta Fair and AOA's contemporaneously-filed joint response to BCA's statement of undisputed material facts.

3

FAIR INC. . . . and their related companies included as an additional *named insured* under such policy." (Resp. to SUMF, ¶ 21) (emphasis added). The IAC contains a choice of law provision selecting New Jersey Law. (SUMF, ¶ 22).

Specifically under the IAC, BCA contracted to provide eight rides for the Fair. (Resp. to SUMF, ¶ 20). As was routinely required by AOA when it engaged subcontractors who provided eight or more rides, AOA and BCA agreed, as a condition for BCA to participate in the Fair, BCA would provide a generator. (Resp. to SUMF, ¶¶ 23, 25). BCA's agreement to provide a generator was negotiated alongside the IAC, concurrent with the negotiations of compensation for the IAC and number of rides BCA was to provide. (Resp. to SUMF, ¶ 24).

## II. The Incident

Pursuant to its agreement to provide a generator in conjunction with its provision of eight rides under the IAC, BCA provided an electrical generator for the Fair and authorized AOA and Plaintiff to use the generator, specifically indicating that the generator was ready to use. (SUMF, ¶ 4; Resp. to SUMF, ¶ 4). With this authorization, rides owned by Plaintiff's employer and AOA were connected to the generator provided by BCA. (SUMF, ¶¶ 3, 4; Resp. to SUMF, ¶¶ 3, 4). Plaintiff was setting up a ride called the Alpine Bob, which was plugged into BCA's generator, as authorized by BCA. *Id.* Electricity from an above power line flowed through another ride being set up by AOA, the Ring of Fire, flowed through BCA's generator, and exited through the Alpine Bob. (Resp. to SUMF, ¶ 5). Had BCA's generator been grounded, when the Ring of Fire became energized due to apparently inadequate clearance with an overhead power line, the current would have flowed from the Ring of Fire into BCA's generator and been harmlessly grounded. Unfortunately, because BCA's generator was not grounded, the current continued on to the Alpine Bob, resulting in the electrocution of Plaintiff (the "Incident"). (Resp. to SUMF, ¶ 17).

Immediately after the Incident, BCA admitted the generator was not grounded.  (Resp. to SUMF, ¶ 17).  AOA visually confirmed after the Incident that BCA's generator was not grounded and instructed BCA to immediately ensure the generator was properly grounded.  *Id.*  BCA did not undertake any investigation into the installation of the generator and cannot even identify the employee who set it up.  *Id.*  Plaintiff did not testify that he was certain the generator was grounded.  *Id.*  Instead, he admitted he did not have a good memory of the day and testified that he did not know if the grounding rods were driven into the ground.  *Id.*

### III.  The Lawsuit

On or around June 12, 2017, Plaintiff filed its First Amended Complaint against Delta Fair, AOA, BCA, and Universal Fairs, LLC, for injuries arising out of the Incident (the "Amended Complaint").[2]  (ECF No. 27-1).  In the Amended Complaint, Plaintiff brought claims against Delta Fair for (1) its own alleged negligence in failing to properly plan, supervise, and enforce safety guidelines, (2) its employees' or agents' alleged negligent acts, and (3) vicarious liability for the negligence of defendant Universal Fairs, LLC.  *Id.*  Plaintiff brought similar negligence claims against the co-defendants, in addition to claims of negligence *per se* for violation of the Tennessee statute governing proper operation around high-voltage overhead power lines.  *Id.*

As Plaintiff's injuries were caused by BCA's failure to properly ground the generator, not only did BCA face liability for Plaintiff's injuries, BCA owed a contractual duty to indemnify and defend AOA and Delta Fair, as Plaintiff's claims "result[ed] from any acts or omissions" of BCA or its employees, agents, or subcontractors or otherwise arose in connection with BCA's

---

[2] BCA implies AOA orchestrated the addition of BCA as a defendant.  Contrary to BCA's suggestion, however, the evidence demonstrates that Plaintiff did not have a good memory of the events of the day of the Incident, and simply was unaware initially of BCA's negligence in failing to properly ground its generator.  (Resp. to SUMF, ¶ 16).  Upon becoming aware of the same, Plaintiff added BCA as an at-fault party.  *Id.*

engagements under the IAC. (SUMF, ¶ 21). Accordingly, on July 14, 2017, AOA filed its First Amended Crossclaim against BCA, asserting a count for contractual defense and indemnity. (ECF No. 42). On September 4, 2018, with leave of the Court, Delta Fair filed its Amended Answer and Crossclaim Against BCA, asserting claims for contractual defense and indemnity against BCA. (AOA and Delta Fair's crossclaims are referred to, collectively, as the "Crossclaims"). (ECF No. 96). Despite BCA's obligations having been triggered, BCA refused to fulfill the same.

**IV.     Complete Resolution of All of Plaintiff's Claims**

The parties agreed to mediate on October 24, 2018. (SUMF, ¶ 26). At mediation, BCA not only continued to refuse to assume its contractual defense and indemnity obligations to AOA and Delta Fair, BCA refused to meaningfully participate in, and even obstructed, resolution of Plaintiff's claims at the mediation, including failing to have the persons with settlement authority available or even made aware of the mediation, and bringing unreasonably low settlement authority to the table.[3] (Resp. to SUMF, ¶ 27). Compounding the obstructive and unreasonable behavior on behalf of BCA's insurer, ACE American Insurance Company ("ACE"), and BCA, the Plaintiff was unwilling to consider a piece-meal settlement. *Id*.

Ultimately, in contrast to ACE, Liberty acted in the best interest of its insureds, AOA and Delta Fair, and negotiated a settlement of $2,075,000, obtaining a great discount from Plaintiff's demands. (Resp. to SUMF, ¶ 29). Because the Plaintiff was unwilling to consider settlement of less than all defendants, the settlement included release of claims against BCA as well, despite BCA and ACE's refusal to participate in the mediation in good faith. The settlement did not include a single dollar for the release of BCA. *Id.* Instead, Plaintiff released BCA to give closure

---

[3] BCA waived any mediation privilege by filing the November 20, 2018 bad faith demand letter, outlining its conduct at the mediation, as an exhibit to its motion for summary judgment. (ECF No. 101-7).

to the litigation and allow Liberty to pursue BCA, without a concern over any voluntary payment argument or the parties otherwise competing to recover ACE's limits.[4]  The settlement agreement was executed on December 6, 2018. *Id.* BCA never requested a copy of the settlement agreement. However, per ACE's request, a copy of the settlement agreement was provided prior to BCA filing its summary judgment motion. (Resp. to SUMF, ¶ 30).   Under the settlement agreement, Liberty alone paid the $2,075,000 settlement amount.  (Resp. to SUMF, ¶ 33).  Plaintiff expressly acknowledged that this was the minimum amount he would have accepted at mediation in settlement of all his claims. (Resp. to SUMF, ¶ 34).  The Settlement Agreement gave Plaintiff the right to purchase an annuity with the settlement funds, which was funded on or around December 27, 2018, completing the settlement.  (Resp. to SUMF, ¶ 35).

On November 20, 2018, Liberty issued a bad faith demand letter to ACE, BCA, and ACE's claims administrator seeking payment for sums owed under the IAC and BCA's insurance policy (the "Demand"). (SUMF, Ex. 5). The Demand outlines BCA and ACE's bad faith conduct leading up to and during the mediation, including that ACE ignored multiple demands for defense and indemnity from AOA and Delta Fair as additional insureds and that BCA failed to obtain the contractually agreed-upon insurance.  *Id.*

On November 27, 2018, a representative of ACE acknowledged receipt of the Demand and advised that he was reviewing the file for the first time.  (Resp. to SUMF, ¶ 38).  On December 19, 2018, ACE's representative advised that he had sent the matter to Clyde & Co. as coverage counsel to review the Demand.  (Resp. to SUMF, ¶ 39).  He specifically advised that he believed

---

[4] Delta Fair and AOA's claim against BCA for failure to procure an insurance policy that provided $2 million in primary coverage and named Delta Fair and AOA as named insureds on that policy only recently ripened when settlement of Plaintiff's claims for over $2 million was reached.  Had BCA and ACE participated in the mediation fully, Delta Fair and AOA likely would have been able to settle at or near the $1 million policy limits BCA actually obtained.

coverage counsel had "all they need at this point." *Id.* On January 3, 2019, more than a month after ACE acknowledged receipt of the Demand and more than two weeks after ACE advised that it had referred the demand to coverage counsel, ACE's coverage counsel requested an extension for a response to the Demand, stating that it had only just received the assignment and needed further information and documentation to analyze the Demand. (Resp. to SUMF, ¶ 40). As a show of good faith, counsel for Delta Fair provided the requested documents (some of which were already in ACE or BCA's possession), and offered to grant the extension in exchange for BCA agreeing to join in a stipulation dismissing the Crossclaims without prejudice. (Resp. to SUMF, ¶ 41). Neither ACE, BCA, nor Clyde & Co. responded to this offer. *Id.* Rather, while ACE was indicating to Liberty that meaningful review of the Demand and ACE's failure to protect all of its insureds with regards to Plaintiff's claims was underway, which would allow for dismissal of the entire lawsuit, on January 4, 2019, at 11:53 p.m. Central Time, BCA filed a Motion for Summary Judgment as to the Crossclaims. (ECF No. 101). On January 22, 2019, on behalf of ACE, Clyde & Co. recognized a duty to participate in AOA and Delta Fair's defense. (Resp. to SUMF, ¶ 43).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "A fact is 'material' for the purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro* Gov't, 687 F.3d 771, 776 (6th Cir. 2012). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan v. City*

*of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  In considering a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003).  After the movant has carried their initial burden, the burden then shifts to the non-moving party to "go beyond the pleadings" and "designate specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  At this stage, the "Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter," but to determine whether there is a genuine issue for trial.  *Baxter v. Tennessee,* No. 12-1294-JDT-EGB, 2015 WL 1064601, at *3 (W.D. Tenn. Mar. 11, 2015); *see also Moldowan*, 578 F.3d at 374.  Ultimately, in evaluating the appropriateness of summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

## ARGUMENT

BCA's motion for summary judgment fails for a number of reasons.  First, because Delta Fair and AOA are no longer the real parties in interest to the Crossclaims, BCA's motion is directed at the wrong parties, and is, in effect, moot.  Indeed, BCA cannot obtain judgment against two parties for claims that do not belong to them.  Second, the undisputed evidence shows BCA breached its contract in multiple ways, including failing to obtain the agreed-upon insurance coverage for Delta Fair and AOA and refusing to comply with its contractual obligations to defend and indemnify when triggered by Plaintiff's claims.  At the very least, there is a genuine issue of material fact regarding BCA's breach of its contractual obligations, precluding a grant of summary judgment in favor of BCA.

## I.     **Delta Fair and AOA Are No Longer the Real Parties in Interest to the Crossclaims**

As discussed in great detail in Delta Fair, AOA, and Plaintiff's Joint Motion to Dismiss, Delta Fair and AOA are no longer the real parties in interest to the Crossclaims against BCA. (ECF No. 102-1). Thus, BCA's motion, which seeks judgment against Delta Fair and AOA on the Crossclaims, which no longer belong to them, must not be granted. Of note, the Court can resolve the entire case, including this motion, by granting Delta Fair, AOA, and Plaintiff's Joint Motion to Dismiss, and Delta Fair and AOA requests the Court do so.

The real party in interest is the party "who is entitled to enforce the right asserted under the governing substantive law." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994). Tennessee law is clear that "upon payment of a loss, an insurance carrier becomes the real party in interest with respect to its subrogation claim." *Solectron USA ex rel. Fid. & Deposit Co. of Maryland v. Fedex Ground Package Sys.*, Inc., 520 F. Supp. 2d 904, 911 (W.D. Tenn. 2007). As explained by this Court:

> [i]mmediately upon the payment of [a claim], [insurance companies are] subrogated to the rights of their insureds through whom they could bring a suit to recover the losses paid by them. They, and not the insureds, [are] the real plaintiffs in interest and of record, both under federal law and under Tennessee law.

*Id.* (quoting *Nat'l Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793, 796–97 (1964)). Indeed, once the insurer pays for an entire loss, the insurer then becomes the *only* real party in interest. *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-81, 70 S. Ct. 207, 215 (1949).

After reaching an agreement for the release of Plaintiff's claims in this matter in mediation, Delta Fair, AOA, and their insurer, Liberty, worked diligently toward consummating the settlement. Per the settlement agreement, Liberty paid $2,075,000 in exchange for a release of all of Plaintiff's claims against Delta Fair, AOA, and BCA. Plaintiff elected for payment of the settlement funds to be made through a structured annuity, however, meaning consummation of the

10

Settlement Agreement did not occur until the annuity was set up and fully funded on December 27, 2018.  This created, as a practical matter, a period of limbo for the real party in interest to the Crossclaims between the mediation and the date the annuity was funded.  During this time, Liberty was not yet entitled to pursue the Crossclaims, and Delta Fair and AOA no longer, in effect, had an interest in the Crossclaims, as Liberty was absolving them of exposure.  AOA, Delta Fair, and Plaintiff coordinated to jointly move to dismiss Plaintiff's claims and the Crossclaims, as the most efficient way forward, shortly after Liberty became the real party in interest to the Crossclaims. (ECF No. 102).

BCA had long been aware that Liberty stepped up to protect Delta Fair and AOA and settled all of Plaintiff's claims at the mediation, while BCA and ACE breached their contractual obligations.  Moreover, BCA's insurer received a copy of the settlement agreement prior to BCA moving for summary judgment, which plainly showed Liberty paid the entire amount of the settlement, released all of Plaintiff's claims, and required dismissal of the same. (Resp. to SUMF, ¶¶ 40, 41).[5]  BCA cannot credibly argue it was or is unaware that Liberty is the real party in interest to the Crossclaims.  BCA also cannot ask the Court to ignore AOA and Delta Fair are not the real parties in interest to the Crossclaims, in an effort to create judicial estoppel on behalf of its insurer, and to preclude Liberty, the real party in interest, from litigating the Crossclaims, among other recently ripened claims.  To do so would encourage unconscionable conduct by insurers and reward ACE for burying its head in the sand, forcing others to resolve the underlying claim.  Instead, as BCA seeks summary judgment against two parties, Delta Fair and AOA, for claims that do not belong to them, BCA's motion should be denied.

---

[5] BCA is certainly aware Liberty became the proper party in interest to the Crossclaims from AOA, Delta Fair, and Plaintiff's Joint Motion to Dismiss.

## II. BCA Has Failed to Demonstrate It Is Entitled to Judgment as a Matter of Law on AOA and Delta Fair's Breach of Contract Claims

Even setting aside that Delta Fair and AOA are no longer the real parties in interest to the Crossclaims, BCA has failed to demonstrate that it is entitled to judgment as a matter of law that it did not breach its contractual obligations to Delta Fair and AOA. Instead, the evidence clearly shows BCA breached the IAC in multiple ways, namely by failing to obtain the agreed-upon insurance coverage for Delta Fair and AOA and by refusing to fulfill its defense and indemnity obligations, and is not entitled to summary judgment on the Crossclaims.

### A. New Jersey Law Governs Interpretation of the IAC

As an initial matter, New Jersey law governs the interpretation of the IAC and BCA's contractual obligations thereunder. Both AOA and Delta Fair's contractual claims arise out of the IAC. (ECF No. 42, ¶ 3; ECF No. 96, p. 13, ¶ 3). Under the IAC, the "agreement shall be deemed made in the State of New Jersey and shall be construed in accordance with the laws of New Jersey." (SUMF, ¶ 22). A federal court sitting in diversity applies the law of the forum state, including the forum state's choice-of-law rules. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). Tennessee follows the rule of *lex loci contractus* which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent contrary intent. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466-67 (Tenn. 1973). Additionally, when interpreting contracts in a diversity action, federal courts generally enforce choice of law provisions. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). Accordingly, New Jersey law governs the interpretation of BCA's obligations under the IAC.

### B. BCA Breached Its Contractual Obligations

A far cry from BCA demonstrating its entitlement to a judgment as a matter of law regarding its breaches under the IAC, the evidence shows BCA failed to fulfill several of its

12

contractual obligations under the IAC and, at the very least, genuine issues of material fact exist regarding the same. First, BCA indisputably breached the IAC by failing to carry $2 million in primary insurance coverage and having Delta Fair and AOA named as named insureds under that coverage.[6] The IAC indisputably required BCA to "confirm[] and agree[] that he carries public liability insurance with liability limits of not less than $2,000,000 primary coverage" and name AOA and Delta Fair "as an additional *named insured* under such policy." (ECF No. 42-2, ¶ 16) (emphasis added). BCA failed to have AOA and Delta Fair included as named insureds under its policy. (Resp. to SUMF, ¶ 32). Instead, BCA's policy only includes a blanket additional insured endorsement, which limits coverage to causes of action related to BCA's conduct. *Id.* at Form CG 20 26 07 04. Though Delta Fair and AOA clearly qualify as additional insureds under that endorsement, BCA's failure to have them included as named insureds has led to a protracted battle between Delta Fair and AOA against ACE for coverage under BCA's policy. Though ACE recently admitted a duty to defend AOA and Delta Fair under the policy, it still refuses to indemnify them. Had BCA performed its obligations under the insurance provision of the IAC, Delta Fair and AOA would have long been afforded coverage under BCA's policy, and there would be no fight over whether BCA's conduct caused the Plaintiff's injuries. Instead, because of BCA's clear breach of the insurance provision, Delta Fair and AOA were left to scrounge for insurance coverage that should have been made readily available to them, and Liberty, their insurer, was forced to provide primary coverage it would not otherwise have needed to, to its significant financial detriment. On this basis alone, BCA is not entitled to a judgment that it did not breach

---

[6] Prior to settlement of Plaintiff's claims in excess of $2 million, Delta Fair and AOA's claim against BCA for breach of the insurance provision of the IAC was not yet ripe. As Delta Fair and AOA's damages are now established from BCA's failure to obtain primary insurance coverage of $2 million and have Delta Fair and AOA named as additional named insureds under that coverage, these claims recently ripened.

13

its contractual obligations.

BCA also breached the IAC's indemnification provision. Plaintiff's tort claims against Delta Fair and AOA triggered both the broad defense and indemnity obligations of BCA under the IAC. Under New Jersey law, "[i]ndemnity agreements are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, it should be strictly construed against the indemnitee. [Courts] are nonetheless obliged to construe the clause in a manner consonant with its essential purpose and with the objects the parties were striving to achieve." *Vitty v. D.C.P. Corp.*, 268 N.J. Super. 447, 452, 633 A.2d 1040, 1042 (App. Div. 1993) (internal citations omitted). In construing contracts, New Jersey courts allow extrinsic evidence. *Manakawkin Convalescent v. O'Neill,* 217 N.J 99, 118 (2014).

Here, the IAC's indemnification provision broadly states BCA will indemnify and defend AOA and Delta Fair "against *any and all* injuries, claims, losses or liabilities which result from any acts or omissions of [BCA] or any [BCA] employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the [BCA's] engagement hereunder. (SUMF, ¶ 21 (emphasis added)). BCA admits under this provision, its defense and indemnity obligations are at least triggered when: (1) an injury, claim, loss, or liability is pursued against Delta Fair or AOA (2) that injury, claim, loss, or liability results from any acts or omissions of BCA or its employees and (3) those acts or omissions were in connection with BCA's engagements under the IAC. (ECF 101-1, p. 9).[7]

Here, it is undisputed that Plaintiff asserted claims against Delta Fair and AOA in satisfaction of the first element. (SUMF, ¶¶ 11, 12, 15). Thus, in hopes of avoiding the

---

[7] Delta Fair and AOA believe BCA's defense and indemnification obligations are also triggered for any and all injuries, claims, losses or liabilities which arise in connection with BCA's engagements under the IAC, and do not require a negligence by BCA, as discussed below.

14

consequences of its failure to defend and indemnify AOA and Delta Fair, BCA focuses on the two remaining triggering elements, erroneously arguing that AOA and Delta Fair "have not met their burden of establishing any negligence on the part of [BCA]" and that the provision of a generator and failure to properly ground it was not an act "in connection with the engagements" under the IAC.[8]  BCA's positions are simply untenable.

Satisfying the second element identified by BCA to trigger the indemnification provision, Plaintiff's claims resulted from the acts or omissions of BCA or its employees. Consistent with Plaintiff's allegations, the evidence shows BCA's negligence caused Plaintiff's injuries and gave rise to his claims.[9]  For example, immediately after the Incident, Zach Panacek of BCA admitted the generator was not properly grounded and Christopher Vivona, co-owner of AOA, instructed BCA to ground the generator.  Indeed, Mr. Vivona testified:

> Q. Is this when you had the conversation with Zach regarding the generator?
> A. Yes.
>
> ***
>
> Q. How did the conversation with Zach regarding the generator start?
> A. It started when the power company was there.  When they got there, [Zach] was upset because it was not grounded and he told me it was not grounded.
> Q. Did you say anything in response?
> A. I told him to get it grounded as soon as possible.

---

[8] BCA notes a similar indemnification provision to that in the IAC was addressed in *McCabe v. Great Pac. Century Corp.* 236 N.J. Super. 488, 492, 566 A.2d 234, 236 (App. Div. 1989). Critical to the appellate court's determination in *McCabe* that the indemnity obligation was not triggered was the fact that the trial judge granted summary judgment in favor of the indemnitee without a finding that the indemnitee or indemnitor had been negligent or that any negligence of the indemnitee related to the work performed by indemnitor.  Here, in contrast to the absence of such findings, the evidence shows BCA was negligent and its negligence caused Plaintiff's claims, or at least creates a genuine issue of fact on these points.  Moreover, the provision at issue in *McCabe* was narrower than that in the IAC.  Thus, *McCabe* is inapposite.

[9] Specifically, the First Amended Complaint stated: "The Plaintiff… alleges that the Defendant BCA Amusements, Inc. and/or its employees negligently supplied, maintained, and/or installed its generator such that it lacked sufficient 'grounding.'" (ECF No. 27-1, ¶ 58).  It further stated, "Plaintiff alleges that Defendant BCA Amusements, Inc.'s negligence, on its own accord and/or by and through its employees and/or agents, was a direct, legal, and proximate cause of the Plaintiff's injuries and damages." *Id.* at ¶ 59.

15

(Resp. to SUMF, ¶ 17). To avoid confusion, BCA's counsel elicited the following testimony:

> Q. Earlier you testified that Zach said to you that he did not ground the generators; is that right?
> A. He said it was not grounded.
> Q. So he said it was not grounded.
> A. Correct.

*Id.* In addition to BCA's admissions against interest, after the Incident, AOA visually confirmed that the generator was not properly grounded. *Id.*

Ignoring all of this evidence, and inappropriately shifting the burden of establishing no genuine issue of material fact exists as to BCA's negligence to non-movants Delta Fair and AOA, BCA suggests AOA and Delta Fair have not met their burden of establishing any negligence on the part of BCA. *See Celotex*, 477 U.S. at 323. In support of this outlandish argument, BCA only offers cherry-picked slivers of Plaintiff's testimony.[10] Even if the plainly misconstrued testimony of Plaintiff was given any credence, the competing evidence offered by Delta Fair and AOA herein, at the very least, establishes an issue of material fact regarding whether BCA was negligent and if its negligence caused the Plaintiff's injuries, precluding summary judgment in favor of BCA.[11]

---

[10] BCA erroneously claims Plaintiff testified the generator was grounded. (SUMF, ¶ 17). Plaintiff actually admitted he did not have a good memory of the day and testified specifically that he did not know if the grounding rods were driven into the ground. (Resp. to SUMF, ¶ 17).

[11] BCA also notes Delta Fair and AOA did not have an expert to offer the obvious opinion that a jury could determine for themselves, namely that current flowing through a generator that is not properly grounded causes electric shock. Letting the wind out of this red-herring's sails, "[t]he mere availability of expert proof does not mean that a court must use it. Instead, 'expert testimony is necessary only when the subject of examination requires knowledge or experience that person lacking special skills do not have and that cannot be obtained from ordinary witnesses.' If the jury can understand a subject without expert testimony, then 'an expert witness is not necessary.'" *Wildasin v. Mathes*, 176 F. Supp. 3d 737, 750 (M.D. Tenn. 2016) (internal citations omitted). While there are areas of the law which require expert testimony, this is not one of them. *See e.g., Shipley v. Williams*, 350 S.W.3d 527, 537 (Tenn. 2011) (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006)) (expert testimony must be provided by a plaintiff to establish the elements of his or her medical negligence case). BCA fails to offer any authority that recognizing a current flowing through an improperly grounded generator can cause electric shock or electrocution requires expert testimony. Moreover, at the time of AOA and Delta Fair's expert disclosure deadline, a settlement for Plaintiff's claims had been reached, and because AOA and

In satisfaction of the third element for triggering the indemnification provision under BCA's interpretation of the indemnification provision, the provision of the generator was in connection with BCA's engagements under the IAC. As readily admitted by BCA, BCA's engagements contemplated under the IAC included that BCA would provide and operate eight amusement rides for the Fair. (ECF 101-1, p. 4). Consistent with AOA's routine requirement of subcontractors who provided eight or more rides, AOA and BCA agreed, as a condition for BCA to participate in the Fair, that BCA would provide a generator. (Resp. to SUMF, ¶¶ 23, 25). BCA's agreement to provide a generator was negotiated alongside the IAC, concurrent with the negotiations of the compensation for the IAC and the number of rides BCA was to provide. (Resp. to SUMF, ¶ 24). Given this evidence, provision of the generator and failure to properly ground it was certainly "in connection" with BCA's engagements under the IAC, especially as "in connection" is broadly construed under New Jersey law. *See Najmee v. Brownstones at Essex Fells, LLC*, No. A-3232-12T3, 2014 WL 349486, at *4 (N.J. Super. Ct. App. Div. Feb. 3, 2014) (noting breadth of "arising in connection" language in contract arbitration clause).

In opposition to the evidence showing the provision of the generator was part and parcel to BCA's engagements under the IAC, BCA suggests that because the word "generator" is not specifically included in the IAC, that its provision and negligent failure to ground the generator cannot be "in connection" with its engagements under the IAC. As noted above, however, the

---

Delta Fair no longer faced liability for the claims they did not disclose an expert. Liberty, who was not yet the real party in interest and not a party to the litigation, could not disclose an expert. Accordingly, in the event the Court substitutes Liberty into this action as the real party in interest, as opposed to dismissing the Crossclaims without prejudice, Liberty would request leave of the Court to find and disclose an expert, among the other leave requested in the Joint Motion to Dismiss. Liberty would imagine needing only a short amount of time to disclose an expert, however, anticipating it will have little trouble finding an expert to opine on the obvious point that failure to ground a generator leads to electric shock.

broad terms of the indemnification provision merely require BCA's acts or omissions be "in connection" with its engagements under the IAC and it cannot be credibly disputed that the provision of the generator was "in connection" with the IAC obligations.

Moreover, the IAC is not an integrated contract. There is no "complete integration" clause present in the contract, and there are clearly agreements external to the contract which are necessary components for the IAC to be fulfilled, namely the provision and running of the generator. (ECF No. 42-2). However, even if this Court were to determine that the IAC was completely integrated into the four corners of the written contract, under New Jersey law, extrinsic evidence is always admissible to determine the intent of the parties. *See Manakawkin,* 217 N.J 99 at 118 (New Jersey courts "enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract'" and can consider all of the relevant evidence that will assist in determining a contract's intent and meaning). Thus, the aforementioned evidence of BCA's agreement to provide a generator, which BCA does not dispute existed, can be considered to interpret BCA's engagements under the IAC. In sum, even under BCA's narrow interpretation of the indemnification provision, to which Delta Fair and AOA do not subscribe, the three triggering elements for BCA's obligations are met.

BCA contends the indemnification provision does not contemplate claims arising in part by the negligence of AOA or Delta Fair. However, the indemnification provision is not so narrowly limited. Instead, the indemnification provision requires BCA to defend and indemnify Delta Fair and AOA against any and all injuries, claims, losses or liabilities which (1) result from any acts or omissions of BCA or any BCA employees, agents or subcontractors in connection with the engagements hereunder or (2) which may otherwise arise in connection with the BCA's engagement hereunder. (SUMF, ¶ 21). "Any and all injuries, claims, losses or liabilities . . . which

may otherwise arise in connection with" BCA's engagements under the IAC contemplates not only scenarios involving BCA's negligence, but the negligence of others as well. The phase "which may otherwise arise" is juxtaposed against the circumstances of liabilities resulting from acts or omissions of BCA or its employees in connection with the engagements under the IAC. The phrase then must be read to contemplate additional liabilities, outside of those resulting from BCA or its employees' actions, or it would be improperly rendered surplusage. *See Maselli v. Valley Nat'l Bancorp.*, No. A-0440-16T1, 2018 WL 828053, at *2 (N.J. Super. Ct. App. Div. Feb. 13, 2018); *see also New Wrinkle, Inc. v. John L. Armitage & Co.*, 238 F.2d 753, 757 (3d Cir. 1956) ("It is elementary that a written contract is to be construed so as to give effect to all of its parts, and any construction which would render the agreement meaningless should be avoided."). In sum, at the very least, genuine issues of material fact exist regarding BCA's breach of its contractual obligations, precluding summary judgment in favor of BCA.

## CONCLUSION

For the foregoing reasons, namely that BCA's motion seeks summary judgment against two parties who are no longer the real parties in interest to the claims at issue and, at the very least, genuine issues of fact exist regarding BCA's breach of contract, BCA's motion should be denied.

This 1st day of February, 2019.

| FIELDS HOWELL LLP | BLACK McLAREN JONES RYLAND & GRIFFEE, P.C. |
|---|---|
| By: /s/ *Gregory L. Mast* <br> Gregory L. Mast, Esq., <br> BPR No. 030681 <br> 1180 W. Peachtree Street, Suite 1600 <br> Atlanta, GA 30309 <br> Telephone: (404) 214-1250 <br> gmast@fieldshowell.com <br> *Attorney for Defendant* <br> *Delta Fair, Inc.* | By: /s/ *J. Mark Griffee* (with express permission) <br> J. Mark Griffee, Esq., <br> BPR No. TN # 007220 <br> 530 Oak Court Drive, Suite 360 <br> Memphis, TN 38117 <br> (901) 762-0535 (telephone) <br> (901) 762-0539 (facsimile) <br> mgriffee@blackmclaw.com <br> *Attorney for Amusements of America, Inc.* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been filed with the Clerk of Court and served electronically upon counsel listed below via the CM/ECF system:

Randall L. Kinnard
John F. Teitenberg
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Boulevard
Nashville, Tennessee 37205
rkinnard@kcbattys.com
*Counsel for Plaintiff*

J. Mark Griffee
BLACK McLAREN JONES RYLAND &
GRIFFEE, P.C.
530 Oak Court Drive, Suite 360
Memphis, TN 38117
mgriffee@blackmclaw.com
*Counsel for Defendant Amusements of America, Inc.*

Bruce A. McMullen
Mary Wu Tullis
BAKER, DONELSON, BEARMAN, CALDWELL, AND BERKOWITZ, PC
165 Madison Ave., Suite. 2000
Memphis, TN 38103
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com
*Attorneys for BCA Amusements, Inc.*

on this 1st day of February, 2019.

/s/ *Gregory L. Mast*
Gregory L. Mast, Esq.
BPR No. 03068