IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EDWARD ALAN YEARTA,<br><br>       Plaintiff,<br><br>v.<br><br>AMUSEMENTS OF AMERICA, INC.; DELTA FAIR, INC.; UNIVERSAL FAIRS, LLC; and BELLE CITY AMUSEMENTS, INC.,<br><br>       Defendants. | Civil Action No.: 2:17-cv-2117 |

**DEFENDANTS DELTA FAIR, INC. AND AMUSEMENT OF AMERICA, INC.'S RESPONSE TO BELLE CITY AMUSEMENTS, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND ADDITIONAL UNDISPUTED MATERIAL FACTS**

**RESPONSE TO BELLE CITY AMUSEMENTS, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

    1.    The present lawsuit originated as Plaintiff Edward Alan Yearta ("Plaintiff" or "Yearta")'s action for negligence against Amusements of America, Inc. ("AoA"); Delta Fair, Inc. ("DF"); Belle City Amusements, Inc. ("BCA"); and Universal Fairs, LLC. (*See generally* First Am. Compl., ECF No. 25.)

**RESPONSE:**  Plaintiff alleged that "the Defendant Belle City Amusements, Inc. and/or its employees negligently supplied, maintained, and/or installed its generator such that it lacked sufficient 'grounding'… [and] the Defendant Belle City Amusements, Inc.'s negligence, on its own accord and/or by and through its employees and/or agents, was a direct, legal, and proximate cause of the Plaintiff's injuries and damages." (First Am. Compl., ECF No. 25, ¶¶ 58-59). As such, this statement is undisputed.

2. In his lawsuit, Mr. Yearta claimed injuries arising from an accident that occurred on August 30, 2016 at the 2016 Delta Fair & Music Festival ("2016 Delta Fair") in Memphis, Tennessee. (*See* First Am. Compl. ¶¶ 13, 17, ECF No. 25.)

**RESPONSE:** Undisputed.

3. Mr. Yearta, an employee of Prime Time Amusements, was setting up a ride called the Alpine Bob, which had been plugged into a generator owned by BCA. (*See* First Am. Compl. ¶¶ 32-34, ECF No. 25.)

**RESPONSE:** Jerry Sears, an employee of Belle City Amusements, Inc. ("Belle City"), authorized the use of the improperly grounded generator. (Deposition of Ronald Douberly, 169:24, 170:1-11, 246:24, 247:1-20 (Excerpts of Ronald Douberly's deposition are attached hereto as Exhibit "A"); Deposition of Christopher Vivona, 233:12-23, 234:6-8, 238:7-19 (Excerpts of Christopher Vivona's deposition are attached hereto as Exhibit "B")). Thus, this statement is undisputed.

4. Another ride, the Ring of Fire, owned by AoA, was also being set up at the same time by an AoA employee and plugged into the same generator. (*See* AoA's Resp. to Pl.'s First Set of Requests for Admissions, Nos. 2, 16, 18-19, attached hereto as Exhibit 1.)

**RESPONSE:** Jerry Sears, an employee of Belle City, authorized the use of the improperly grounded generator. (Ex. A, Dep. of Ronald Douberly, 169:24,170:1-11, 246:24, 247:1-20; Ex. B, Dep. of Christopher Vivona, 233:12-23, 234:6-8, 238:7-19). Additionally, the evidence cited by Belle City in support of this statement does not establish that "the Ring of Fire was being set up at the same time by an AOA employee" as the Alpine Bob. (ECF No. 101-3, Nos. 2, 16, 18-

19).  For purposes of Belle City's summary judgment motion only, however, this statement is undisputed.

5. While an AoA employee was erecting the Ring of Fire, the Ring of Fire became energized by the power line above and electrocuted Mr. Yearta on the Alpine Bob.  (*See* Ex. 1, AoA's Resp. to Pl.'s First Set of Requests for Admissions, Nos. 20, 24-26.)

**RESPONSE:**  Electricity from an above power line flowed through the Ring of Fire, through Belle City's generator, and exited through the Alpine Bob.  (AoA's Resp. to Plaintiff's First Set of Requests for Admission, ECF No. 101-3, Nos. 24-26).  Thus, this statement is undisputed.

6. As a result of this incident, the Tennessee Occupational Safety and Health Administration ("TOSHA") punished AoA for violating Tenn. Code Ann. § 50-3-1003(a), a state statute which prohibits erection of any machinery or equipment within 10 feet of voltage overhead lines and has an intended purpose of protecting employees.  (*See* Ex. 1, AoA's Resp. to Pl.'s First Set of Requests for Admissions, Nos. 30, 40, 42, 43, 45, 48.)

**RESPONSE:**  AoA received a $4,000 fine from TOSHA.  Thus, this statement is undisputed. (ECF No. 101-3, No. 43).

7. The investigation by TOSHA revealed that "a section of the Ring of Fire contacted a 13.2 Kv overhead powerline while in the process of setting up the ride," violating Tenn. Code Ann. § 50-3-1003(a), and "requests for Accident Logs (OSHA 300 forms) for the last three years were made on September 1, 2016 and September 2, 2016," but not received, in violation of

Tennessee Department of Labor and Workforce Development Rule 0800-01-03.05(2)(a). (*See* Ex. 1, AoA's Resp. to Pl.'s First Set of Requests for Admissions, No. 42.)

**RESPONSE:** The evidence cited by Belle City does not support the statement that "'requests for Accident Logs (OSHA 300 forms) for the last three years were made on September 1, 2016 and September 2, 2016,' but not received, in violation of Tennessee Department of Labor and Workforce Development Rule 0800-01-03.05(2)(a)" were made. For purposes of Belle City's summary judgment motion only, however, this fact is undisputed.

8. Initially, Mr. Yearta only brought suit against AoA and DF. (*See generally* Compl., ECF No. 1.)

**RESPONSE:** Undisputed.

9. AoA designed certain aspects of the layout of the 2016 Delta Fair while DF was responsible for the overall design layout. (*See* Ex. 1, AoA's Resp. to Pl's First Set of Requests for Admissions, No. 1.)

**RESPONSE:** Disputed. AoA designed the layout of the rides for the 2016 Delta Fair & Music Festival. Delta Fair, Inc. ("Delta Fair") merely designated the general areas where rides could be placed. (Deposition of Mark Lovell, 37:16-22, 99:15-24, 100:1-23 (Excerpts of the deposition of Mark Lovell are attached hereto as Exhibit "C")).

10. AoA decided the location of the Ring of Fire at the 2016 Delta Fair, and an employee of AoA, who was aware of the high-voltage overhead power lines to the north, marked

the location where the Ring of Fire was to be placed. (*See* <u>Ex. 1</u>, AoA's Resp. to Pl's First Set of Requests for Admissions, Nos. 6-7.)

**RESPONSE:** Undisputed.

11. Mr. Yearta's complaints against AoA claimed its employees and/or agents were negligent because they: failed to properly mark and place the Ring of Fire ride; failed to pay attention to what they were doing; failed to properly set up the Ring of Fire ride to avoid injury; and failed to use reasonable and due care to avoid the power line while setting up the Ring of Fire ride. (*See* First Am. Compl. ¶ 47.)

**RESPONSE:** It is undisputed that these allegations were made against AoA in the Amended Complaint. However, it is disputed that these were the sole grounds for liability against AoA. (ECF No. 25, ¶¶ 46-50).

12. Mr. Yearta also asserted that AoA negligently caused his injuries when it: failed to safely map out and plan the carnival midway; failed to properly train its employees to safely set up its rides, including the Ring of Fire; failed to establish, implement, and enforce sufficient policies, procedures, and guidelines for employees regarding the safe set up and operation of rides, including the Ring of Fire; and failed to properly mark and place the Ring of Fire ride. (*See* First Am. Compl. ¶ 48.)

**RESPONSE:** It is undisputed that these allegations were made against AoA in the Amended Complaint. However, it is disputed that these were the sole grounds for liability against AoA. **(**ECF No. 25, ¶¶ 46-50).

13. Mr. Yearta also alleged negligence per se against AoA due to its violation of Tenn. Code Ann. § 50-3-1003(a).  (*See* First Am. Compl. ¶ 49.)

**RESPONSE:**  Undisputed.

14. DF hosts the Delta Fair & Music Festival annually and was the entity who contracted with AoA to provide rides and amusements for the 2016 Delta Fair.  (*See* First Am. Compl. ¶¶ 16, 18, ECF No. 25.)

**RESPONSE:**  Undisputed.

15. Mr. Yearta's complaints against DF claimed DF was negligent because it: failed to safely map out and plan the carnival midway; failed to supervise the contractors setting up rides; failed to establish, implement, and enforce sufficient policies, procedures, and guidelines for the placement of rides and/or safety of patrons; and failed to prohibit the placement of rides in locations where they could come into contact with power lines.  (*See* First Am. Compl. ¶ 52.)

**RESPONSE:**  It is undisputed that these allegations were made against Delta Fair in the Amended Complaint.  However, it is disputed that these were the sole grounds for liability against Delta Fair. **(**ECF No. 25, ¶¶ 51-53).

16. Only after AoA asserted comparative fault against BCA, alleging that its negligence in failing to ground or to properly ground the generator involved in the incident caused or contributed to Mr. Yearta's injuries, did Mr. Yearta amend his complaint to add BCA as a party.  (*See generally* First Am. Compl.)

**RESPONSE:** Disputed. Technically, this statement is accurate, but it is intended to suggest that the addition of Belle City to this action was orchestrated by AoA, which is inaccurate. To the contrary, the evidence demonstrates that Mr. Yearta did not have a good memory of the events of the day of the accident. (Plaintiff's Responses to Amusement of America's Interrogatories, p. 8 (Plaintiff's Responses to Amusement of America's Interrogatories are attached hereto as Exhibit "D")). Therefore, Mr. Yearta was not aware of the fact that Belle City failed to properly ground the generator, which was raised as an affirmative defense by AoA. (Answer of Amusements of America, Inc., ECF No. 19, p. 7). There is no evidence of any improper actions by AoA. Instead, the evidence suggests that Mr. Yearta realized that there was an additional at-fault party, which he then added to the lawsuit.

17. Mr. Yearta testified that the generator was grounded; he testified that he was certain that it was because he would not have hooked up his ride to the generator if it were not. (Deposition of Edward Yearta, 423:7-13; 424:1-5, 8-9, 13-25; 425:13-15, excerpts attached hereto as Exhibit 2.)

**RESPONSE:** Disputed. The generator was not grounded. AoA visually confirmed that the generator was not grounded, after the accident. (Ex. B, Dep. of Christopher Vivona, 241:2-7). Immediately after the accident, Belle City admitted that the generator was not grounded. *Id.* at 215:25, 216:1-15, 217:14-19. For that reason, Belle City was specifically instructed to make sure the generator was grounded as soon as possible. *Id.* Throughout the litigation, Belle City has been left to merely "assume the generator was grounded." (Belle City Amusements, Inc.'s Answers to Amusements of America Inc.'s First Set of Interrogatories, p. 10 (Belle City Amusements, Inc.'s Answers to Amusements of America, Inc.'s First Set of Interrogatories are attached hereto as

Exhibit "E")). Indeed, Belle City undertook no investigation into the installation of the generator and cannot even identify the employee who purportedly set it up. *Id.* at p. 10, 13.

Contrary to the admissions of Belle City, Mr. Yearta, who acknowledged not having a good memory of the day (Ex. D, Plaintiff's Responses to Amusement of America, Inc.'s Interrogatories, p. 8), actually testified that he does not know whether the generator was properly grounded. (Deposition of Edward Yearta, 423:7-10 (Excerpts of the deposition of Edward Yearta are attached hereto as Exhibit "F")). Specifically, he saw grounding rods, but he does not know if they were driven into the ground. *Id.* at 424:1-12.

18. Both AoA and DF filed Cross-claims for indemnification pursuant to a contract between AoA and BCA, the Independent Attraction Contract ("IAC"). (*See generally* AoA's First Am. Crossclaim, ECF No. 42; DF's Am. Answer and Cross-Claim against BCA, ECF No. 96.)

**RESPONSE:** It is undisputed that AoA and Delta Fair filed cross-claims, prior to Liberty Corporate Capital Limited settling the claims. (Affidavit of Kathy Owens, Ex. A (A true and correct copy of the Affidavit of Kathy Owens is attached hereto as Ex. "G")). At this time, AoA and Delta Fair are not the real parties at interest. *Solectron USA ex rel. Fid. & Deposit Co. of Maryland v. Fedex Ground Package Sys.*, Inc., 520 F. Supp. 2d 904, 911 (W.D. Tenn. 2007).

19. The IAC is a contract drafted by AoA and used by AoA when it subcontracts amusements rides at fairs. (*See* Deposition of Dominic Vivona, 29:8 - 30:2, excerpts attached hereto as <u>Exhibit 3</u>.)

**RESPONSE:** It is undisputed that AoA drafted the contract, but its terms were negotiable. Moreover, while AoA did have a general format for its contracts, they were not fully integrated

contracts or contracts of adhesion and were frequently modified by written and verbal agreements by both parties. (Deposition of Dominic Vivona, 29:8-22, 30:13-23, 44:8-22 (Excerpts of the Deposition of Dominic Vivona are attached hereto as Ex. "H"); Ex. B, Dep. of Christopher Vivona, 233:12-23).

20. The IAC obligated BCA to provide eight specific rides at the 2016 Delta Fair, as identified in the contract. (*See* Ex. B to AoA's First Am. Crossclaim, ¶ 3, ECF No. 42-2; Ex. A to DF's Am. Answer and Cross-Claim against BCA, ¶ 3, ECF No. 96-1.)

**RESPONSE:** It is undisputed that the contract expressly requires Belle City to provide eight rides. However, to the extent Belle City implies that it was not required to provide the generator in connection with its obligations under the IAC, it is disputed. Specifically, AoA and Belle City agreed as a condition for Belle City to participate in the fair, that Belle City would provide a generator. (Ex. H, Dep. of Dominic Vivona, 44:8-22; Ex. B, Dep. of Christopher Vivona, 233:12-23).

21. The contract contained the following language:

> SUBCONTRACTOR further agrees to indemnify and defend AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER

> INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors harmless against, any and all injuries, claims, losses or liabilities which result from any acts or omissions of SUBCONTRACTOR or of any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

(*See* Ex. B to AoA's Cross-Claim, ¶ 17, ECF No. 42-2; Ex. A to DF's Am. Answer and Cross-Claim against BCA, ¶ 17, ECF No. 96-1.)

**RESPONSE:** It is undisputed that the IAC contains this language, in addition to the requirement that Belle City procure $2 million in insurance for the benefit of AoA and Delta Fair. (Ex. B to AoA's Crossclaim, ECF No. 42-2, ¶ 16).

22. The IAC provides that the "agreement shall be deemed made in the State of New Jersey and shall be construed in accordance with laws of New Jersey." (*See* Ex. B to AoA's First Am. Crossclaim, ¶ 21, ECF No. 42-2; Ex. A to DF's Am. Answer and Cross-Claim against BCA, ¶ 21, ECF No. 96-1.)

**RESPONSE:** It is undisputed that the IAC contains this language.

23. AoA representatives testified that the IAC does not address generators at all. (See Ex. 3, Deposition of Dominic Vivona, 30:13 - 31:2; 44:8 - 45:16; *see also* Deposition of Christopher Vivona, 248:16 - 251:6, excerpts attached hereto as Exhibit 4.)

**RESPONSE:** To the extent Belle City implies that it was not required to provide the generator in connection with its obligations under the IAC, it is disputed. Specifically, AoA and Belle City agreed as a condition for Belle City to participate in the fair, that Belle City would provide a generator. (Ex. H, Dep. of Dominic Vivona, 44:8-22).

24. AoA representatives testified that the provision of a generator from BCA occasionally is strictly a verbal arrangement and service provided for which BCA receives no additional compensation. (*See* Ex. 3, Deposition of Dominic Vivona, 44:8-22; 46:24 - 47:4; Ex. 4, Deposition of Christopher Vivona, 233:12-19, 234:2-5.)

**RESPONSE:** To the extent Belle City implies that it was not required to provide the generator in connection with its obligations under the IAC, it is disputed. Specifically, AoA and Belle City agreed as a condition for Belle City to participate in the fair, that Belle City would provide a generator. (Ex. H, Dep. of Dominic Vivona, 44:8-22). This was negotiated alongside the IAC, *id.* at 47:5-9, and was verbally agreed to by Belle City. (Ex. H, Dep. of Dominic Vivona, 44:8-22; Ex. B, Dep. of Christopher Vivona, 233:12-23, 234:2-8).

25. A ride operator is not always asked to bring a generator with it every time it provides a ride to AoA, and the generator that is brought by a ride operator may not even be used at all. (*See* Ex. 3, Deposition of Dominic Vivona, 47:10 - 48:10; Ex. 4, Deposition of Christopher Vivona, 239:25 - 240:9.)

**RESPONSE:** Belle City is misconstruing the testimony, without the necessary context, and therefore, it is disputed. The actual testimony was that, if a company were only supplying one ride, it might not be required to provide a generator. (Ex. B, Dep. of Christopher Vivona, 239:25,

240:1-9). However, where a company like Belle City is providing eight or more rides, it is required to provide a generator. (Ex. H, Dep, of Dominic Vivona, 45:17-21: 47:5-9).

26. The parties mediated the matter on October 24, 2018, which resulted in the resolution of Mr. Yearta's claims against all Defendants. (*See* Mediation Certification, ECF No. 100.)

**RESPONSE:** Undisputed.

27. Settlement negotiations had proceeded without BCA's participation, but BCA later learned that a settlement amount had been reached that did not include consideration of BCA's negligence. (*See* Letter from DF's counsel, attached hereto as <u>Exhibit 5</u>.)[1]

**RESPONSE:** Disputed. The settlement did not include payment for Belle City's negligence. In other words, no monetary consideration was paid for the release of Belle City. (Ex. G, Affidavit of Kathy Owens, Ex. A, p. 2). Instead, Mr. Yearta insisted on a global resolution of the claims. *Id.* The settlement agreement includes the release of all of Plaintiff's claims, including the claims against Belle City. *Id.* at pp. 1-2. Moreover, Belle City did not meaningfully participate at any point during the mediation. Without getting into the actual offers at mediation, ACE American Insurance Company ("ACE"), Belle City's insurer, never responded to correspondence from one

---

[1] In anticipation of any argument regarding the admissibility of Exhibit 5 to this Statement, BCA states that such evidence is not prohibited by Fed. R. Evid. 408 because it is not being used for impermissible reasons, but rather for another purpose. As the Cross-claims seek indemnification from BCA for any settlement paid to Yearta, inter alia, in this lawsuit, the Cross-claim Plaintiffs have placed Yearta's settlement at issue, and the cited evidence is probative of whether Yearta's settlement was a loss resulting from AoA and/or DF's negligence under New Jersey indemnification law. Additionally, Exhibit A is most naturally understood as a bad faith demand letter to an insurer, rather than any settlement conversations, as the letter explains that the demand is made pursuant to Tenn. Code Ann. § 56-7-105.

of its insureds, Delta Fair, demanding it have limits available at mediation. (ECF No. 102-8). Instead, ACE advised, via its claims administrator, that it did not have authority to settle for more than $500,000, when ACE already owed more than $250,000 in defense costs for its insureds. Not only was such authority unreasonable in light of these circumstances, the apparently pre-set limitation on authority necessitated the participation of an ACE adjuster that was never advised the case existed or that mediation was going to happen. Thus, unbeknownst to the other parties, Belle City's actual insurer never attended the mediation.

28.     BCA was informed that the settlement "merely contemplates the liability of AoA and Delta Fair." (*See* Ex. 5, p. 5.)

**RESPONSE:** Disputed. The settlement did not include payment for Belle City's negligence. In other words, no monetary consideration was paid for the release of Belle City. (Ex. G, Affidavit of Kathy Owens, Ex. A). Instead, Mr. Yearta insisted on a global resolution of the claims. *Id.* The settlement agreement includes the release of all of Plaintiff's claims, including the claims against Belle City. *Id.* at pp. 1-2.

**ADDITIONAL UNDISPUTED MATERIAL FACTS**

29.     Because Mr. Yearta was unwilling to consider settlement of less than all defendants, the settlement included release of claims against Belle City as well, despite Belle City and ACE's refusal to participate in the mediation in good faith. (Ex. G, Affidavit of Kathy Owens, Ex. A, p. 2). The settlement did not include a single dollar for the release of Belle City. *Id.* Instead, Plaintiff released Belle City to give closure to the litigation and allow Liberty to pursue Belle City, without a concern over any voluntary payment argument or the parties otherwise

competing to recover ACE's limits. The settlement agreement was executed on December 6, 2018. (Ex. G, Affidavit of Kathy Owens, Ex. A).

30. Belle City never requested a copy of the settlement agreement.

31. A copy of the settlement agreement was provided to Belle City's insurer, ACE, prior to Belle City filing its motion for summary judgment. (ECF No. 102-14).

32. Belle City did not obtain $2 million in primary insurance coverage that included Delta Fair or AOA as named insureds. (ECF No. 102-6).

33. Under the Settlement Agreement, Liberty alone paid the $2,075,000 settlement amount. (Ex. G, Affidavit of Kathy Owens, ¶¶ 7-9).

34. Mr. Yearta expressly acknowledged in the settlement agreement that $2,075,000 was the minimum amount he would have accepted at mediation in settlement of all his claims. (Ex. G, Affidavit of Kathy Owens, Ex. A, p. 2).

35. The Settlement Agreement gave Plaintiff the right to purchase an annuity with the settlement funds, which was funded on or around December 27, 2018, completing the settlement. (Ex. G, Affidavit of Kathy Owens, ¶ 12, Ex. A, ¶ 2.5).

36. On November 20, 2018, Liberty issued a bad faith demand letter to ACE, BCA, and ACE's claims administrator seeking payment for sums owed under the IAC and BCA's insurance policy (the "Demand"). (ECF No. 102-5).

37. The Demand outlines BCA and ACE's bad faith conduct leading up to and during the mediation, including that ACE ignored multiple demands for defense and indemnity from AOA and Delta Fair as named insureds and that BCA failed to obtain the contractually agreed-upon insurance. *Id.*

38. On November 27, 2018, a representative of ACE acknowledged receipt of the Demand and advised that he was reviewing the file for the first time. (ECF No. 102-11).

39. On December 19, 2018, ACE's representative advised that he had sent the matter to Clyde & Co. as coverage counsel to review the Demand. (ECF No. 102-12). ACE's representative specifically advised that he believed coverage counsel had "all they need at this point." *Id.*

40. On January 3, 2019, more than a month after ACE acknowledged receipt of the Demand and more than two weeks after ACE advised that it had referred the demand to coverage counsel, ACE's coverage counsel requested an extension for a response to the Demand, stating that it had only just received the assignment and needed further information and documentation to analyze the Demand. (ECF No. 102-13).

41. As a show of good faith, counsel for Delta Fair provided the requested documents (some of which were already in ACE or BCA's possession), and offered to grant the extension in exchange for BCA agreeing to join in a stipulation dismissing the Crossclaims without prejudice. (ECF No. 102-14). Neither ACE, BCA, nor Clyde & Co. responded to this offer.

42. On January 4, 2019, at 11:53 p.m. Central Time, BCA filed a Motion for Summary Judgment as to the Crossclaims. (ECF No. 101).

43. On January 18, 2019, on behalf of ACE, Clyde & Co. recognized a duty to participate in AOA and Delta Fair's defense. (January 18, 2019 letter from Clyde & Co. to Delta Fair's counsel, attached hereto as Exhibit "I").

This 1st day of February, 2019.

| FIELDS HOWELL LLP | BLACK McLAREN JONES RYLAND & GRIFFEE, P.C. |
|---|---|
| By: /s/ *Gregory L. Mast* <br> Gregory L. Mast, Esq., <br> BPR No. 030681 <br> 1180 W. Peachtree Street, Suite 1600 <br> Atlanta, GA 30309 <br> Telephone: (404) 214-1250 <br> gmast@fieldshowell.com <br> *Attorney for Defendant Delta Fair, Inc.* | By: /s/ *J. Mark Griffee* (with express permission) <br> J. Mark Griffee, Esq., <br> BPR No. TN #007220 <br> 530 Oak Court Drive, Suite 360 <br> Memphis, TN 38117 <br> (901) 762-0535 (telephone) <br> (901) 762-0539 (facsimile) <br> mgriffee@blackmclaw.com <br> *Attorney for Amusements of America, Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been filed with the Clerk of Court and served electronically upon counsel listed below via the CM/ECF system:

Randall L. Kinnard
John F. Teitenberg
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Boulevard
Nashville, Tennessee 37205
rkinnard@kcbattys.com
*Counsel for Plaintiff*

J. Mark Griffee
BLACK McLAREN JONES RYLAND &
GRIFFEE, P.C.
530 Oak Court Drive, Suite 360
Memphis, TN 38117
mgriffee@blackmclaw.com
*Counsel for Defendant Amusements of America, Inc.*

Bruce A. McMullen
Mary Wu Tullis
BAKER, DONELSON, BEARMAN, CALDWELL, AND BERKOWITZ, PC
165 Madison Ave., Suite. 2000
Memphis, TN 38103
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com
*Attorneys for BCA Amusements, Inc.*

on this 1st day of February, 2019.

/s/ *Gregory L. Mast*
Gregory L. Mast, Esq.
BPR No. 03068