**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| EDWARD ALAN YEARTA,<br><br>   Plaintiff,<br><br>v.<br><br>AMUSEMENTS OF AMERICA, INC.; DELTA FAIR, INC.; UNIVERSAL FAIRS, LLC; and BELLE CITY AMUSEMENTS, INC.,<br><br>   Defendants. | Civil Action No.: 2:17-cv-2117 |

**DEFENDANTS DELTA FAIR, INC., AMUSEMENTS OF AMERICA, INC., AND LIBERTY CORPORATE CAPITAL LTD.'S MEMORANDUM OF FACT AND LAW IN SUPPORT OF DELTA FAIR, INC. AND AMUSEMENTS OF AMERICA, INC.'S MOTION TO SUBSTITUTE AND, AS ALTERNATIVE RELIEF, LIBERTY CORPORATE CAPITAL, LTD.'S MOTION TO INTERVENE**

Defendants Delta Fair, Inc. and Amusements of America, Inc., and Liberty Corporate Capital, Ltd., by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 15, 24, and 25 (c) file this Memorandum of Fact and Law in Support of Delta Fair, Inc. and Amusements of America, Inc.'s Motion to Substitute and, As Alternative Relief, Liberty Corporate Capital, Ltd.'s Motion to Intervene.

**I. SUMMARY OF ARGUMENT**

Defendants Delta Fair, Inc. ("Delta Fair") and Amusement of America, Inc. ("AOA"), and their insurer, Liberty Corporate Capital, Ltd. ("Liberty") worked diligently to resolve the tort claims asserted against Delta Fair and AOA by Plaintiff Edward Yearta in the instant litigation. The ultimate resolution of Plaintiff's claims was made possible by Liberty's good faith efforts to participate in the mediation and to protect the best interests of Delta Fair and AOA, and in spite of Defendant Belle City Amusements, Inc. ("Belle City") and its insurer, ACE American Insurance

Company ("ACE"), who both failed to participate meaningfully or in good faith in the mediation and failed to honor their contractual obligations to Delta Fair and AOA. This was complicated by the recent discovery that Belle City's initial disclosures failed to identify an insurance policy issued by ACE.[1]

Liberty's good faith efforts to resolve the Plaintiff's claims included Liberty's exclusive funding of the full settlement amount paid to the Plaintiff in resolution of his claims. As Liberty paid the entirety of the settlement, Liberty is the real party in interest with respect to what were previously Delta Fair and AOA's claims against Belle City and ACE as a matter of law.

Given that Plaintiff's claims were fully resolved, the Plaintiff, Delta Fair, and AOA jointly moved for dismissal of Plaintiff's claims with prejudice. ECF No. 102. Delta Fair and AOA also sought dismissal of their crossclaims against Belle City without prejudice so that Liberty could pursue these claims, in addition to the recently ripened bad faith claims against ACE, in a new action. Delta Fair, AOA, and Liberty believed this to be the most efficient route to allow Liberty, as the real party in interest, to pursue its claims. In the alternative, Delta Fair and AOA requested Liberty be substituted for them and be granted leave to file an amended complaint.

In its April 3, 2019, Order, this Court dismissed Plaintiff's claims with prejudice, such that only the crossclaims remained at issue. ECF No. 112. In its April 3, 2019 Order, the Court also reserved ruling on Delta Fair and AOA's motion to dismiss the crossclaims, denied the alternative relief request for substitution without prejudice, and invited Delta Fair and AOA to file a motion to substitute Liberty into the action under Rule 25(c).

---

[1] Belle City's initial disclosures referred to a single policy issued by ACE to Belle City. On March 12, 2019, ACE revealed that a second insurance policy was actually issued to Belle City, which would have provided coverage for the claims by Plaintiff. The reason this information was withheld is unknown, but Delta Fair, AOA, and Liberty assume that Belle City and ACE withheld this information from defense counsel as part of the efforts to manipulate settlement.

Pursuant to the Court's invitation in its April 3, 2019, Order, and Rule 25(c) of the Federal Rules of Civil Procedure, Delta Fair and AOA now move this Court to substitute Liberty for them in this matter. As discussed in Delta Fair and AOA's Motion to Dismiss, however, further relief is required should the Court substitute Liberty for Delta Fair and AOA. Specifically, for Liberty to be able to pursue the recently-ripened claims against Belle City and ACE, Liberty would need leave from the Court to file an Amended Complaint. Liberty, however, is not yet a party to this action and does not have standing to request leave to file an amended pleading yet. As they are no longer the real parties in interest to the crossclaims, AOA and Delta Fair cannot effectively move to amend their pleadings to address these recently ripened claims either. Essentially, AOA, Delta Fair, and Liberty are caught in limbo.

To allow for the Court to address this procedural conundrum, and to avoid inundating the Court with additional motions and briefing, Delta Fair and AOA's motion to substitute and request for leave to file an amended pleading is combined with a motion by Liberty to intervene in the present action as a matter of right. By moving to intervene in this action, Liberty seeks to inform the Court that it intends to pursue the subrogation claims against Belle City and ACE and that Liberty consents to the request that it be granted leave to file an amended pleading upon its substitution for AOA and Delta Fair. Recognizing that Liberty's substitution and amendment of the pleadings would involve the addition of a brand new defendant and necessitate the reopening of discovery, Liberty, AOA, and Delta Fair agree that the most efficient and least complicated resolution of the procedural challenges at issue would be dismissal of the crossclaims without prejudice per ECF No. 102. By intervening, Liberty seeks to inform the Court that it consents to the dismissal of the crossclaims against Belle City without prejudice so that it may pursue these

claims in a new action. Allowing a new action would permit the new plaintiff, Liberty, and a new defendant, ACE, to litigate without the baggage of a now two year old suit by other parties.

Accordingly, by its motion to intervene, Liberty consents to and effectively joins Delta Fair and AOA's motion to substitute and request for leave for Liberty to file an amended pleading.

## II.  FACTUAL BACKGROUND

### A.  The Incident and the Parties

This case arose out of the tragedy at the 2016 Delta Fair and Music Festival (the "Fair") in Memphis, Tennessee. ECF No. 27-1. Delta Fair promotes the Fair, but does not own or operate any of the amusement rides. Rather, Delta Fair contracted with AOA to provide the Fair's amusement rides. ECF No. 102-2. AOA, in turn, contracted with Prime Time Amusements, LLC ("Prime Time") and Belle City to provide additional amusements for the Fair. Belle City's contract with AOA (the "Agreement") contained the following indemnification provision:

> 17. SUBCONTRACTOR further agrees to indemnity and defend AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its officers, employees, agents and other subcontractors harmless against any and all injuries, claims, losses or liabilities which result from any acts or omissions of SUBCONTRACTOR or any SUBCONTRACTOR'S employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with the SUBCONTRACTOR'S engagement hereunder.

ECF NO. 102-3. The contract also contains a provision stating that Belle City "confirms and agrees that he carries public liability insurance with liability limits of not less than $2,000,000 primary coverage. SUBCONTRACTOR will have AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT, DELTA FAIR INC., AGRICENTER INTERNATIONAL,

4

SHELBY COUNTY GOVERNMENT and their related companies included as an additional named insured under such policy." *Id.*, ¶ 16. Belle City's primary insurance policy through ACE provides each of the following are additional insureds: the promotor, the sponsor, the lessor of the premises, the organization that manages the event, and the organization for whom Belle City is performing operations. ECF No. 102-6, Form CG 20 26 07 04.

Belle City provided an electrical generator for the Fair and authorized AOA and Plaintiff to use the generator, specifically indicating that the generator was ready to use. ECF No. 102-4, p. 1; ECF No. 102-5, pp. 3, 4. With this authorization, rides owned by Plaintiff's employer and AOA were connected to the generator provided by Belle City. *Id.* Because Belle City's generator was not properly grounded, an electrical current flowed through an AOA operated ride and the improperly grounded Belle City generator, and electrocuted the Plaintiff (the "Incident"). *Id.*

**B.     The Lawsuit**

On or around June 12, 2017, Plaintiff filed suit against Delta Fair, AOA, Belle City, and Universal Fairs, LLC, for injuries arising out of the Incident. Belle City served its initial disclosures on August 29, 2017, referring to a single insurance policy. (A copy of the relevant excerpts of Belle City's initial disclosures are attached hereto as Exhibit "A"). A single policy was produced following a formal request on July 12, 2018. (A copy of Belle City's counsel's office's response to the request by Delta Fair's counsel for a copy of Belle City's policy is attached hereto as Exhibit "B").

As Plaintiff's injuries were caused by Belle City's failure to properly ground the generator, not only did Belle City face liability for Plaintiff's injuries, Belle City owed a contractual duty to indemnify and defend AOA and Delta Fair, as Plaintiff's claims "result[ed] from any acts or omissions" of Belle City or its employees, agents, or subcontractors. ECF No. 102-3, ¶ 17.

5

Accordingly, AOA and Delta Fair filed crossclaims against Belle City, asserting a count for contractual defense and indemnity. ECF Nos. 42 and 96. Additionally, AOA and Delta Fair were entitled to a defense and indemnity as additional insureds under Belle City's insurance policy. ECF No. 102-6. Despite Belle City and ACE's obligations clearly being triggered by the Agreement and Belle City's insurance policy through ACE, however, Belle City and ACE refused to fulfill their contractual obligations to defend and indemnify Delta Fair and AOA.

Just a month ago, on March 12, 2019, ACE revealed that it had a second insurance policy with Belle City, providing another $9 million in coverage. (A copy of ACE's response to Liberty's statutory request for insurance information is attached hereto as Exhibit "C"). Of course, by that time, Liberty had settled the underlying case, based in part on the mistaken belief that Belle City lacked the necessary coverage to pay the settlement.

### C. Mediation and Settlement

The parties agreed to mediate on October 24, 2018. Belle City and ACE's behavior leading up to and during the mediation was the epitome of bad faith. Such behavior ranged from ACE failing to respond to Delta Fair's multiple pre-mediation tenders, to ACE threatening to cancel the mediation based on an alleged last-minute immovable conflict of its representative unless ACE could attend by telephone, to the unreasonable and obstructive behavior of ACE's claims administrator, Haas & Wilkerson ("H&W"), as ACE's representatives, at the actual mediation, and of course, the misleading initial disclosures and hiding the existence of an excess policy.

The Plaintiff was unwilling to consider a settlement that did not include all defendants. ECF No. 102-4, p. 2. Ultimately, in contrast to ACE, Liberty acted in the best interest of its insureds, AOA and Delta Fair, and negotiated a settlement of $2,075,000, obtaining a great discount from Plaintiff's demand. *Id.* Because the Plaintiff was unwilling to consider settlement

of less than all defendants, the settlement included release of claims against Belle City as well, despite Belle City and ACE's refusal to participate in the mediation in good faith. The settlement did not include a single dollar for the release of Belle City. *Id.* Instead, Plaintiff released Belle City to give closure to the litigation and allow Liberty to pursue Belle City, without a concern over any voluntary payment argument or the parties otherwise competing to recover ACE's limits. Although the case settled at mediation, the settlement agreement (the "Settlement Agreement") was not executed until December 6, 2018. ECF No. 102-4.

Under the Settlement Agreement, Liberty alone paid the $2,075,000 settlement amount. ECF No. 102-4, ¶ 2; ECF No. 102-9, ¶¶ 7-9. The Settlement Agreement gave Plaintiff the right to purchase an annuity with the settlement funds. ECF No. 102-4, ¶ 2.5. Plaintiff elected this option to establish a structured settlement. Liberty, Delta Fair, and AOA worked diligently with the Plaintiff to fund and to set up the structured settlement. ECF No. 102-10. The structured settlement was finalized on or about December 27, 2018. ECF No. 102-9, ¶ 12.

On November 20, 2018, Liberty issued a bad faith demand letter to ACE, Belle City, and H&W (the "Demand"). ECF No. 102-5. The Demand outlined Belle City and ACE's bad faith conduct leading up to and during the mediation, including that ACE ignored multiple demands for defense and indemnity from AOA and Delta Fair as additional insureds. In the Demand, Liberty sought payment of $1,250,000 in actual damages, an amount representing the sums owed under the Agreement and under Belle City's primary insurance policy (as Liberty was unaware of the additional $9 million in coverage).

On November 27, 2018, a representative of ACE acknowledged receipt of the Demand and advised that he was reviewing the file for the first time. ECF No. 102-11. On December 19, 2018, ACE's representative advised that he had sent the matter to Clyde & Co. as coverage counsel to

7

review the Demand. ECF No. 102-12. He specifically advised that he believed coverage counsel had "all they need at this point." *Id.* On January 3, 2019, more than a month after ACE acknowledged receipt of the Demand and more than two weeks after ACE advised that it had referred the demand to coverage counsel, ACE's coverage counsel requested an extension for a response to the Demand, stating that it had only just received the assignment and needed further information and documentation to analyze the Demand. ECF No. 102-13. As a show of good faith, counsel for Delta Fair provided the requested documents (some of which were already in ACE or Belle City's possession), and offered to grant the extension in exchange for Belle City agreeing to join in a stipulation dismissing the Crossclaims without prejudice. ECF No. 102-14. Neither ACE, Belle City, nor Clyde & Co. responded to this offer. Rather, while ACE was indicating to Liberty that meaningful review of the Demand and ACE's failure to protect all of its insureds with regards to Plaintiff's claims was underway, which would allow for dismissal of the entire lawsuit, on January 4, 2019, at 11:53 p.m. Central Time, Belle City filed a Motion for Summary Judgment as to the Crossclaims. ECF No. 101. ACE failed to accept the offer in the Demand within sixty days as required by T.C.A. § 56-7-105, but has since at least acknowledged, it breached the duty to defend Delta Fair and AOA against the Plaintiff's claims. ECF No. 103-10. Of course, ACE has nonetheless refused to pay anything towards the defense of Delta Fair or AOA.

### III. LAW AND ARGUMENT

#### A. As the Real Party in Interest to the Crossclaims, Liberty Should Be Substituted for Delta Fair and AOA and Granted Leave to File an Amended Complaint

Delta Fair and AOA previously sought dismissal of the crossclaims against Belle City without prejudice so that Liberty, the real party in interest, could pursue its subrogated claims against Belle City and ACE. In this Court's April 3, 2019 Order, the Court advised it was reserving

ruling on the motion to dismiss the crossclaims without prejudice. Therein, the Court also advised Delta Fair and AOA that they may move to substitute Liberty into the action under Rule 25(c) of the Federal Rules of Civil Procedure. Pursuant to this Court's invitation, and Rule 25(c), AOA and Delta Fair move to substitute Liberty for them into this action. In so doing, however, Delta Fair, AOA, and Liberty continue to believe the most appropriate remedy would simply be to grant the motion to dismiss.

Rule 25(c) allows for the substitution of parties when there has been a transfer of interest after suit has been brought. *United States v. Lacy*, 234 F.R.D. 140, 144-45 (S.D. Tex. 2005). A Rule 25(c) decision is generally left to the court's discretion. *Raymond v. Tennessee Valley Auth.*, No. 3:09-CV-48, 2012 WL 2191625, at *2 (E.D. Tenn. June 14, 2012). The real party in interest is the party "who is entitled to enforce the right asserted under the governing substantive law." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994). Under Tennessee law, "upon payment of a loss, an insurance carrier becomes the real party in interest with respect to its subrogation claim." *Solectron USA ex rel. Fid. & Deposit Co. of Maryland v. Fedex Ground Package Sys., Inc.*, 520 F. Supp. 2d 904, 911 (W.D. Tenn. 2007). As explained by this Court:

> [i]mmediately upon the payment of [a claim], [insurance companies are] subrogated to the rights of their insureds through whom they could bring a suit to recover the losses paid by them. They, and not the insureds, [are] the real plaintiffs in interest and of record, both under federal law and under Tennessee law.

*Id.* (quoting *Nat'l Cordova Corp. v. City of Memphis*, 214 Tenn. 371, 380 S.W.2d 793, 796–97 (1964)). Indeed, once the insurer pays for an entire loss, the insurer then becomes the only real party in interest. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-81, 70 S. Ct. 207, 215, 94 L. Ed. 171 (1949). So long as the insured did not pay part of the loss itself (e.g., a portion of the loss that was self-insured), the insured is no longer the real party in interest. *See Jones Exp.,*

9

*Inc. v. Watson*, No. 3:10-CV-140, 2011 WL 1303164, at *5 (M.D. Tenn. Mar. 31, 2011).

Here, Liberty funded the entirety of the settlement funds issued to the Plaintiff. As a matter of law, because Liberty paid for the entire loss, it is now the only real party in interest to any subrogated claims. Accordingly, it is proper and well within this Court's discretion under Rule 25(c) to substitute Liberty for AOA and Delta Fair based on the transfer of interest in the subrogated claims against Belle City and ACE. As determined by this Court, Liberty's presence would facilitate the conduct of the litigation as Liberty is the sole real party in interest to the claims against Belle City and ACE and wishes to pursue those claims. ECF No. 112, p. 8. Accordingly, pursuant to this Court's April 3, 2019, Order, and Rule 25(c) of the Federal Rules of Civil Procedure, Delta Fair and AOA move to have Liberty substituted for Delta Fair and AOA with respect to their claims against Belle City as the real party in interest to those claims. A notice of hearing is filed contemporaneously with this memorandum.[2]

Unfortunately, mere substitution of Liberty for Delta Fair and AOA would not completely protect Liberty's interests in the subrogated claims. Instead, it would be prejudicial. New claims against Belle City[3] and claims against ACE ripened in the limbo period between when the settlement was reached to fully resolve the Plaintiff's claims and now. Because these additional claims against Belle City and claims against ACE only recently ripened, should the Court substitute Liberty in for Delta Fair and AOA, to ensure Liberty is afforded the opportunity to address all of its claims, Liberty would require leave under Rule 15(a)(2) of the Federal Rules of

---

[2] Delta Fair's counsel is representing Liberty in pursuit of its claims against ACE and Belle City. Liberty agrees to waive service of this motion and allow its counsel to accept service of this motion and notice of hearing. Accordingly, the service requirements of Rule 25(c) will have been satisfied.

[3] For clarity, Liberty would address Belle City's multiple contractual breaches individually, namely Belle City's breach of the Agreement's insurance provision and the defense and indemnity provision.

10

Civil Procedure to file an amended pleading against Belle City and assert its claims against ACE under the appropriately adjusted case style. Moreover, ACE would need to be served, and a new scheduling order would be necessary to allow discovery on the new claims.

Leave to amend pleadings under Rule 15(a)(2) is to be granted freely when justice so requires. Indeed, as summarized by this Court, "Rule 15 'plainly embodies a liberal amendment policy,' that 'reinforces the principle that cases should be tried on their merits rather than the technicalities of pleadings.'" *Chambers v. Tennessee Bd. of Regents*, No. 2:16-CV-02851-JPM-DKV, 2017 WL 3218075, at *2 (W.D. Tenn. July 28, 2017) (internal citations omitted). In the event the amendment of the pleadings would require the modification of the Court's scheduling order, the party seeking the amendment must demonstrate good cause for seeking the amendment. *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. 2013).[4] Prejudice to the non-moving party is "merely a consideration that informs whether [the moving party] has satisfied the 'good cause' requirement." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010). Upon establishing good cause, the Court proceeds to the permissive Rule 15(a)(2) analysis. *See Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009).

Here, good cause exists for allowing Liberty to file an amended complaint after being substituted in for AOA and Delta Fair. First, there has been no undue delay in seeking the requested leave to amend as the additional claims Liberty would seek to add only recently ripened and amendment of the pleadings to include these claims was not possible prior to the Court's entry

---

[4] The Court's original scheduling order required amendment of the pleadings by May 2, 2018. ECF No. 49. The most recent amended scheduling order required dispositive motions to be filed by January 4, 2019. ECF No. 79. Modifications to these orders was not permitted absent good cause shown.

of a scheduling order. For example, the additional claim against Belle City for breach of the Agreement's insurance provision requiring $2 million in primary coverage only ripened upon reaching a settlement in excess of Belle City's available coverage of $1 million.[5] This settlement was not reached until the October 24, 2018 mediation and the settlement was not fully funded until on or around December 27, 2018, when the annuity was completely set up. Similarly, Liberty's statutory bad faith claim against ACE for its failure to defend and indemnify AOA and Delta Fair only ripened on January 19, 2019, and could not have been brought prior to the entry of this Court's scheduling order or the dispositive motion deadline. AOA and Delta Fair could not have moved to amend their pleading when the claims ripened or prior to the dispositive motion deadline because, after these claims ripened, they were effectively no longer the real parties in interest to the claims against ACE and Belle City. Accordingly, on January 18, 2019, only a couple of weeks after additional claims ripened against Belle City, and prior to the bad faith claim ripening against ACE, AOA and Delta Fair filed to dismiss their claims against Belle City without prejudice so that Liberty could pursue those claims in a new action, along with the new, recently ripened claims. ECF No. 102-1, p. 13. Thus, because Liberty's request to amend could not have been made earlier, and AOA and Delta Fair alerted the Court of the need of an amendment to the pleadings in their motion to dismiss, AOA, Delta Fair, and Liberty have attempted to promptly address the need for leave to amend the pleadings and there has been no unexcusable delay, supporting that good cause exists for granting leave to amend the pleadings.[6]

---

[5] The recently discovered ACE $9 million policy is written on an excess basis and does not name Delta Fair and AOA as named insureds.

[6] The circumstances surrounding the request for leave to amend here are unlike the requests of other litigants courts have denied because the factual basis for the claims existed early on in the case. *See Commerce Benefits Grp., Inc.*, 326 F. App'x at 376 (upholding denial of motion for leave to amend pleadings in part because moving party failed to explain delay in bringing new claims and factual basis for the new claims existed at the beginning of the lawsuit).

Second, Liberty has been diligently working with AOA and Delta Fair since settlement of the Plaintiff's claims was reached to effectuate the settlement, obtain dismissal of the Plaintiff's claims with prejudice, and assume the pursuit of the claims against Belle City and Delta Fair. These efforts further support that AOA, Delta Fair, and Liberty have not delayed in their attempts to amend the pleadings. Given the posture of the case, Belle City should have requested a stay, in lieu of incurring expense.

Third, Belle City would suffer minimal prejudice by the amended pleadings because it appears to have expended minimal effort and expense exclusively in defense against the crossclaims. Indeed, almost all discovery conducted in this litigation was in relation to Plaintiff's claims, not exclusively the crossclaims, and would have been necessary in the absence of the crossclaims. Any effort and expense by Belle City related exclusively to the crossclaims appears to be mostly the drafting of a motion for summary judgment against Delta Fair and AOA, who were no longer the real parties in interest to the crossclaims when the motion was filed. Critically, via the Demand, Belle City was aware that Delta Fair and AOA were no longer be the real parties in interest to the crossclaims at the time it incurred the effort and expense associated with its motion for summary judgment. Further, the motion for summary judgment was filed in the middle of discussions between Liberty and ACE over the consent to dismissal of the crossclaims. The drafting of the summary judgment motion by ACE-appointed defense counsel, was also undertaken while ACE was representing that it was taking seriously, for the first time, its failure to properly defend and indemnify Delta Fair and AOA and convincing Delta Fair and AOA that resolution of the crossclaims and claims that ripened after the settlement was imminent. Thus, any inconvenience was entirely manufactured by ACE and Belle City for strategic gain.

The inconvenience Belle City may experience by an amended complaint is only one consideration in this Court's overall determination of whether good cause exists for allowing an amendment to the pleadings at this stage. As good cause exists for allowing leave to amend, the Court should support the strong interest in upholding the liberal amendment policy and allowing matters to be resolved on the merits established by Rule 15(a)(2) and allow Liberty to amend the pleadings upon substitution into this action. A proposed Amended Complaint, contemplating Liberty as substituted for Delta Fair and AOA, is attached hereto as Exhibit "D."

Notably, Delta Fair, AOA, and Liberty all agree that the most efficient and least complex way to adequately protect Liberty's interest in pursuing its claims, would be to substitute Liberty for Delta Fair and AOA and then dismiss the claims against Belle City without prejudice pursuant to Rule 41. Delta Fair, AOA, and Liberty all consent to this Court substituting Liberty for Delta Fair and AOA and dismissing the claims against Belle City without prejudice so Liberty can pursue its claims in a new action. However, should the Court not allow dismissal without prejudice, Liberty requests 60 days to perfect service on ACE and a six month discovery period, as Liberty anticipates ACE will attempt to obstruct discovery.

### B.     Liberty May Intervene in this Action as a Matter of Right

As an alternative request for relief, Liberty, as the only real party in interest to the claims against Belle City arising out of its failure to honor its contractual obligations, as well as the claims against ACE for its bad faith failure to defend and indemnify Delta Fair and AOA, moves to intervene in this action as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure. As Rule 24(c) requires a pleading that sets out Liberty's claim, a draft pleading is enclosed as Exhibit "E."

"Proposed intervenors must establish four elements in order to be entitled to intervene as a matter of right: (1) that the motion to intervene was timely; (2) that they have a substantial legal

interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999). Here, all four elements are met.

First, this motion to intervene is timely as Liberty only recently became the real party in interest to the crossclaims.[7] Second, Liberty has a substantial legal interest in the subject matter of this litigation. In considering a substantial interest of a would-be intervenor, the Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right." *Id.* at 398. Here, as Liberty is now the only real party in interest to the only remaining claims in this action, and has additional, recently ripened claims to assert against Belle City and ACE arising out of the same facts and circumstances as this action, Liberty undoubtedly has a substantial legal interest in the subject matter of this case.

Third, Liberty's ability to protect its interests in pursuing its subrogated claims would be impaired in the absence of intervention as all of its claims against Belle City and ACE are not presently included in the action and neither AOA nor Delta Fair can seek the necessary leave to amend the pleadings to add the additional claims as they are not the real parties in interest to those claims. Notably, the burden to show impairment is minimal. *Id.* at 399.

Fourth, Liberty's interests may not be adequately represented by Delta Fair and AOA. Under Rule 24(a), Liberty is "not required to show that the representation will in fact be

---

[7] AOA and Delta Fair attempted to dismiss the claims against Belle City within a couple of weeks after Liberty became the real party in interest and, alternatively, have Liberty substituted into this action. Liberty did not move to intervene in the relatively small window of time between finalizing of the annuity on or around December 27, 2018, and now in an effort to avoid potentially unnecessary motions practice. Liberty now has promptly moved to intervene after this Court's April 3, 2019, Order, inviting a formal Rule 25(c) motion to substitute and reserving ruling on the pending motion to dismiss.

15

inadequate," and "[i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* at 400. As explained by the Sixth Circuit, the Supreme Court has held the proposed intervenors' burden in showing inadequacy is "minimal" and requires a showing of only the potential for inadequate representation. *Id.* at 400-1 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538, 92 S. Ct. 630, 636, 30 L. Ed. 2d 686 (1972)). Here, as Delta Fair and AOA are no longer the real parties in interest to the claims arising out of this lawsuit, and practically speaking have no interest or incentive to remain in the suit or continue to litigate, they cannot be expected or understood to be in a position to adequately protect Liberty's interests in pursuing Belle City for breach of its contractual obligations or ACE for its breach of contract and bad faith failure to defend and indemnify Delta Fair and AOA. Moreover, it would be improper for Liberty to direct defense counsel for Delta Fair and AOA to pursue subrogation, as any such defense costs would become part of AOA's loss history and could result in increased insurance costs going forward. Accordingly, as all four elements of intervention as a matter of right are met, Liberty can intervene as a matter of right under Rule 24(a).

Liberty moves to intervene as a matter of right in part to demonstrate to the Court, in the absence of standing otherwise, Liberty's intent to pursue its claims and affirm that Liberty consents to the dismissal of the claims against Belle City without prejudice. As previously discussed, Liberty does not effectively have standing at this juncture to move to dismiss the crossclaims against Belle City without prejudice, though it is the real party in interest to those claims. Liberty does, however, consent to the dismissal of the claims against Belle City without prejudice and asks the Court that upon its substitution or intervention into this action, that the claims against Belle City be dismissed without prejudice. In support, and to avoid the rehashing of the same arguments

16

already made to this Court regarding the basis for the requested dismissal and the absence of plain legal prejudice upon dismissal of the claims against Belle City without prejudice, Liberty adopts and incorporates by reference the arguments raised in Section III.B. of Delta Fair and AOA's motion to dismiss as well as Section I.A. of Delta Fair and AOA's reply brief in support of their motion to dismiss. ECF Nos. 102-1, 108.

## IV. CONCLUSION

For the foregoing reasons, Delta Fair and AOA respectfully request this Court substitute Liberty in for them so Liberty may pursue its claims against Belle City. Upon substitution, Liberty, Belle City, and AOA request the Court dismiss the crossclaims without prejudice. In the alternative, the movants request Liberty be granted leave to file an amended pleading to address the recently ripened claims against Belle City and ACE as good cause exists for such granting such leave and given 60 days to serve ACE and a six month discovery period. As alternative relief, Liberty moves to intervene in this action, in part to join in AOA and Delta Fair's prior request that the Court simply dismiss the claims against Belle City without prejudice.

This 17th day of April, 2019.

**FIELDS HOWELL LLP**

*/s/ Gregory L. Mast*
Gregory L. Mast, Esq., BPR No. 030681
1180 W. Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 214-1250
gmast@fieldshowell.com
*Attorneys for Defendant Delta Fair, Inc. and Prospective Party Liberty Corporate Capital, Ltd.*

and

          **BLACK McLAREN JONES RYLAND &
  GRIFFEE, P.C.**
*/s/ J. Mark Griffee*
(*with express permission*)
J. Mark Griffee
530 Oak Court Drive, Suite 360
Memphis, TN 38117
(901) 762-0535 (telephone)
(901) 762-0539 (facsimile)
mgriffee@blackmclaw.com
*Attorneys for Amusements of America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been filed with the Clerk of Court and served electronically upon counsel listed below via the CM/ECF system:

J. Mark Griffee
BLACK McLAREN JONES RYLAND &
GRIFFEE, P.C.
530 Oak Court Drive, Suite 360
Memphis, TN 38117
mgriffee@blackmclaw.com
*Counsel for Defendant Amusements of America, Inc.*

Bruce A. McMullen
Mary Wu Tullis
BAKER, DONELSON, BEARMAN, CALDWELL, AND BERKOWITZ, PC
165 Madison Ave., Suite. 2000
Memphis, TN 38103
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com
*Attorneys for Belle City Amusements, Inc.*

The undersigned hereby further certifies a copy of foregoing was delivered Gregory L. Mast, as counsel for Liberty Corporate Capital, Ltd., who has acknowledged service of the same.

This 17th day of April, 2019.

                                            */s/ Gregory L. Mast*
                                            Gregory L. Mast, Esq.
                                            BPR No. 030681