IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EDWARD ALAN YEARTA,<br><br>    Plaintiff,<br><br>v.<br><br>AMUSEMENTS OF AMERICA, INC.;<br>DELTA FAIR, INC.; UNIVERSAL<br>FAIRS, LLC; and BELLE CITY<br>AMUSEMENTS, INC.,<br><br>    Defendants. | No. 2:17-cv-02117-SHM-jay |

ORDER

Before the Court are three motions. The first is Cross-Defendant Belle City Amusements, Inc.'s ("Belle City") January 4, 2019 Motion for Summary Judgment. (ECF No. 101.) Amusements of America, Inc. ("AOA") and Delta Fair, Inc. have brought crossclaims against Belle City for indemnity and defense. Belle City seeks summary judgment on those crossclaims on the ground that Belle City's contract with AOA does not obligate it to indemnify or defend AOA and Delta Fair for their losses in this litigation. AOA and Delta Fair responded on February 1, 2019. (ECF No. 103.) Belle City replied on February 15, 2019. (ECF No. 104.)

The second motion is AOA and Delta Fair's January 18, 2019 Motion to Dismiss. (ECF No. 102.) AOA and Delta Fair seek the voluntary dismissal without prejudice of their crossclaims against Belle City. Belle City responded on February 15, 2019. (ECF No. 105.) AOA and Delta Fair replied on February 28, 2019. (ECF No. 108.)

The third motion is AOA and Delta Fair's April 17, 2019 Motion to Substitute Liberty Corporate Capital, Ltd. (ECF No. 113.) AOA and Delta Fair seek to substitute their insurer, Liberty Corporate Capital, Ltd. ("Liberty"), in their place. They ask that, if the Court substitutes Liberty, it also grant Liberty leave to amend the crossclaims against Belle City and add new claims against ACE American Insurance Company ("ACE"), Belle City's insurer, which is not currently a party to this suit. Belle City responded on May 1, 2019. (ECF No. 115.) AOA and Delta Fair replied on May 15, 2019. (ECF No. 118.)

For the following reasons, Belle City's Motion for Summary Judgment is DENIED. AOA and Delta Fair's Motion to Dismiss is DENIED. AOA and Delta Fair's Motion to Substitute is GRANTED IN PART and DENIED IN PART.

## I. Background

This suit began as a tort case but has become an indemnity dispute. It arises from the electrocution of Edward Alan Yearta at the Delta Fair & Music Festival (the "Fair") in Memphis,

Tennessee on August 30, 2016. (ECF No. 103-1 ¶ 2.) The Fair was a large event that included several promoters, contractors, and vendors. Three of those companies are currently parties to this lawsuit: (1) Delta Fair, the entity that hosted the Fair; (2) AOA, a provider and operator of amusement park rides that contracted with Delta Fair to provide rides for the Fair; and (3) Belle City, a provider and operator of amusement park rides that subcontracted with AOA to provide certain rides for the Fair. (Id. ¶¶ 9, 14, 20.)

On August 30, 2016, Yearta was setting up a ride at the Fair, the Alpine Bob. (Id. ¶¶ 2-3.) Yearta was an employee of Prime Time Amusements, a non-party contractor at the Fair. (Id. ¶ 3.) At the same time Yearta was setting up the Alpine Bob, AOA employees were setting up an AOA-owned ride, the Ring of Fire. (Id. ¶ 4.) The Alpine Bob and the Ring of Fire were both plugged into a generator owned by Belle City. (Id. ¶¶ 3-4.) As AOA employees were constructing the Ring of Fire, the ride collided with an overhead power line. (Id. ¶ 5.) Electricity from the power line flowed through the Ring of Fire, through Belle City's generator, through the Alpine Bob, and into Yearta. (Id.) Yearta was injured. (Id. ¶ 2.)

Yearta filed a Complaint on February 21, 2017, which he amended on June 2, 2017. (ECF Nos. 1, 25.) Yearta alleged that AOA, Delta Fair, Belle City, and Universal Fairs, LLC

3

(collectively, the "Defendants") negligently caused his injuries. (ECF No. 25 ¶¶ 46-59.) At an October 24, 2018 mediation, Yearta agreed to settle his claims against the Defendants. (ECF No. 103-1 ¶ 26.) A settlement agreement releasing Yearta's claims was executed on December 6, 2018. (ECF No. 104-1 ¶ 29.) The settlement agreement gave Yearta the right to purchase an annuity funded by the settlement proceeds. (Id. ¶ 35.) That annuity was funded on or around December 27, 2018. (Id.) Liberty, AOA and Delta Fair's insurer, paid the entire $2,075,000 settlement amount. (Id. ¶ 33.) The Court dismissed Yearta's claims on April 3, 2019. (ECF No. 112.)

The only claims remaining are AOA and Delta Fair's crossclaims against Belle City. AOA filed its crossclaim on June 16, 2017 and filed an amended crossclaim on July 14, 2017. (ECF Nos. 31, 42.) Delta Fair filed its crossclaim on September 4, 2018. (ECF No. 96.) AOA and Delta Fair seek indemnity and defense from Belle City for their losses in this litigation pursuant to a July 24, 2016 Independent Attraction Contract ("IAC") between AOA and Belle City that set out the terms of Belle City's subcontracting engagement with AOA. (ECF No. 42-2.) AOA drafted the IAC. (ECF No. 103-1 ¶ 19.) The IAC

obligated Belle City to provide eight rides at the Fair.[1]  (ECF

No. 42-2 ¶ 3.)  The IAC's indemnity clause states:

> SUBCONTRACTOR [Belle City] further agrees to indemnify
> and defend AMUSEMENTS OF AMERICA, VIVONA FAMILY
> ENTERTAINMENT, DELTA FAIR INC., AGRICENTER
> INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its
> officers, employees, agents and other subcontractors
> for, and to hold AMUSEMENTS OF AMERICA, VIVONA FAMILY
> ENTERTAINMENT, DELTA FAIR INC., AGRICENTER
> INTERNATIONAL, SHELBY COUNTY GOVERNMENT and its
> officers, employees, agents and other subcontractors
> harmless against, any and all injuries, claims, losses
> or liabilities which result from any acts or omissions
> of SUBCONTRACTOR or of any [of] SUBCONTRACTOR'S
> employees, agents or subcontractors in connection with
> the engagements hereunder or which may otherwise arise
> in connection with the SUBCONTRACTOR'S engagement
> hereunder.

(Id. ¶ 17.)  The IAC's choice-of-law clause states that the

"agreement shall be deemed made in the State of New Jersey and

shall be construed in accordance with the laws of New Jersey."

(Id. ¶ 21.)

## II.  Jurisdiction and Choice of Law

The Court has found that it has diversity jurisdiction over

this action.  (ECF No. 112 at 4-5.)  Following the Court's April

3, 2019 dismissal of Yearta, the Court retains supplemental

jurisdiction over the indemnity crossclaims pursuant to 28 U.S.C.

§ 1367.  See 6 Charles A. Wright et al., Federal Practice and

---

[1] The rides the IAC obligated Belle City to provide were the
Moonraker, Drop Zone, Tornado, Crazy Plane, Berry Go Round, Free
Fall, Mini Enterprise, and Peter & Paul.  (ECF No. 42-2 ¶ 3.)  None
of those rides was involved in Yearta's accident.

Procedure § 1433 (3d ed. 2019) (noting that "crossclaims under Rule 13(g) fall within the ancillary jurisdiction of the court" as codified in 28 U.S.C. § 1367 "and need not present independent grounds of federal jurisdiction"); see also Progressive Cas. Ins. Co. v. Belmont Bancorp, 199 F.R.D. 219, 223 (S.D. Ohio 2001) ("If a cross-claim is brought under the 'same core of facts' as the original complaint, a court needs no further basis for jurisdiction.") (quoting Lasa Per L'Industria Del Marmo Societa v. Alexander, 414 F.2d 143, 146 (6th Cir. 1969)); Coleman v. Casey Cty. Bd. of Educ., 686 F.2d 428, 430 (6th Cir. 1982) ("[T]he federal court may adjudicate a cross-claim because of its relationship to the main action for which federal jurisdiction is proper.").

State substantive law applies to state law claims in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties agree in their respective memoranda that New Jersey substantive law governs AOA and Delta Fair's crossclaims under the IAC, which contains a choice-of-law clause selecting New Jersey law. (ECF No. 101-1 at 7; ECF No. 103 at 12.) The Court applies New Jersey law to AOA and Delta Fair's crossclaims.

6

## III. Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (internal quotation marks and citation omitted). The nonmoving party must do more than simply "'show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

When considering whether to grant summary judgment, the court should "consider the evidence in the light most favorable

7

to the non-moving party and draw all reasonable inferences in that party's favor." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016). "Summary judgment is appropriate where reasonable minds could not disagree as to the conclusion to be drawn from the evidence." FDIC v. Jeff Miller Stables, 573 F.3d 289, 299 (6th Cir. 2009). Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." Id. at 294 (quotation marks and citations omitted).

## IV. Analysis

### A. AOA and Delta Fair's Motion to Substitute

AOA and Delta Fair move to substitute their insurer Liberty in their place in this litigation. (ECF No. 113.) As an alternative request for relief, Liberty moves to intervene under Rule 24 of the Federal Rules of Civil Procedure. (Id.) AOA and Delta Fair also request that, if the Court grants their motion to substitute Liberty, it also grant Liberty leave to amend the crossclaims against Belle City and add new claims against ACE. (Id.) Belle City does not oppose AOA and Delta Fair's request to substitute Liberty. (ECF No. 115 at 1.) Belle City does oppose AOA and Delta Fair's request that the Court grant Liberty leave to amend. (Id.)

## 1. Substitution of Liberty for AOA and Delta Fair

Federal Rule of Civil Procedure 25(c) provides for the substitution of parties when a transfer of interest has occurred after a suit is filed. See 7C Charles Alan Wright et al., Federal Practice and Procedure § 1958 (3d ed. 2019). Rule 25(c) states:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c). Rule 25 "is merely a procedural device designed to facilitate the conduct of a case, and does not affect the substantive rights of the parties or the transferee." Iron Workers Local No. 25 Pension Fund v. Watson Wyatt & Co., No. 04-cv-40243, 2008 WL 1924884, at *1 (E.D. Mich. Apr. 30, 2008) (citing 6 James Wm. Moore et al., Moore's Federal Practice § 25.32 (3d ed. 2010)). It "does not require that parties be substituted or joined after an interest has been transferred." The Charter Oak Fire Ins. Co. v. SSR, Inc., No. 11-cv-0118, 2015 WL 10890126, at *4 (E.D. Ky. July 13, 2015). "An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." 7C Wright et al., supra, § 1958.

In a diversity case, the substantive law of the forum state determines the real party in interest. See Certain Interested Underwriters at Lloyd's v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994) ("[T]he real party in interest is the person who is entitled to enforce the right asserted under governing substantive law. . . . Of course, the governing substantive law in diversity actions is state law.") (citations omitted). In Tennessee, "upon payment of a loss, an insurance carrier becomes the real party in interest with respect to its subrogation claim." Solectron USA, Inc. ex rel. Fidelity & Deposit Co. of Md. v. FedEx Ground Package Sys., Inc., 520 F. Supp. 2d 904, 911 (W.D. Tenn. 2007) (quoting Kentucky Nat'l Ins. Co. v. Gardner, 6 S.W.3d 493, 499 (Tenn. Ct. App. 1999)). "Immediately upon the payment of [a claim]," insurance companies are "subrogated to the rights of their insureds," and are "the real plaintiffs in interest." Id. (quoting Nat'l Cordova Corp. v. City of Memphis, 380 S.W.2d 793, 796-97 (Tenn. 1964)).

Liberty paid the entire settlement between Yearta and the Defendants. (ECF No. 104-1 ¶ 33.) It is now the real party in interest as to AOA and Delta Fair's indemnity crossclaims against Belle City.[2] The Court grants AOA and Delta Fair's request to

---

[2] AOA and Delta Fair have met the service requirement of Rule 25, which requires service "on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). AOA and Delta Fair's counsel also represents Liberty in this litigation, and counsel submits that "Liberty agrees to waive service of this motion and allow its counsel to accept

substitute Liberty and directs the Court Clerk to alter the case caption accordingly.

Because the Court grants AOA and Delta Fair's motion to substitute Liberty, it need not consider Liberty's alternative request to intervene under Rule 24. (See ECF No. 113-1 at 14-17.) Substitution is the appropriate remedy here. See Ray Capital, Inc. v. M/V Newlead Castellano, No. 16-cv-0093, 2017 WL 4079082, at *5 (S.D. Ga. Sept. 13, 2017) (noting that a "motion to intervene [] based on a transfer of one or more of the Defendants' interests" is "more properly considered a motion to substitute pursuant to Rule 25(c)"). The Motion to Substitute is GRANTED as to the substitution of Liberty.

### 2. Leave to Amend

In their Motion to Substitute, AOA and Delta Fair ask the Court to grant Liberty leave to amend the crossclaims against Belle City and add new claims against ACE, Belle City's insurer, which is not currently a party to this suit. (ECF No. 113.) AOA and Delta Fair attach a proposed Amended Complaint that sets out several proposed new claims against Belle City and ACE. (ECF No. 113-5 ¶¶ 97-144.)

---

service of this motion." (ECF No. 113-1 at 10 n.2.) That is sufficient. See Gottfried v. Frankel, 818 F.2d 485, 493 (6th Cir. 1987) ("Rule 4 is a flexible rule which principally requires sufficient notice to the party of claims brought against it.").

### a. New Claims Against Belle City

Where, as here, a party moves for leave to amend after the deadline for amending the pleadings in the scheduling order has passed, a court must consider whether the plaintiff has shown good cause for leave to amend under Rule 16(b) of the Federal Rules of Civil Procedure.[3]  Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003); see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  When determining whether a plaintiff has shown good cause for leave to amend under Rule 16(b), courts consider, inter alia, "possible prejudice to the party opposing the modification."  Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002) (citations omitted); see also Leary, 349 F.3d at 909 ("[T]he district court [] is required to evaluate prejudice to the opponent before modifying the scheduling order.").

If a party shows good cause for leave to amend under Rule 16(b), the Court must also consider whether leave to amend is warranted under Rule 15(a)(2).  Leary, 349 F.3d at 909.  Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave [to amend a complaint] when justice so

---

[3] The deadline for motions to amend pleadings in this case was June 15, 2018.  (ECF No. 66.)

requires,' the right to amend is not absolute or automatic."
Islamic Ctr. of Nashville v. Tennessee, 872 F.3d 377, 386 (6th
Cir. 2017) (quoting Tucker v. Middleburg-Legacy Place, 539 F.3d
545, 551 (6th Cir. 2008)). The district court has discretion
about whether to grant leave. Id. In deciding whether to
exercise that discretion, courts may consider a number of
factors, such as undue delay, bad faith, undue prejudice, or
futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).
"[S]ubstantial prejudice to the opposing party" is a "critical
factor[] in determining whether an amendment should be granted."
Head v. Jellico Hous. Auth., 870 F.2d 1117, 1123 (6th Cir. 1989)
(citation omitted).

The proposed Amended Complaint states two proposed new
claims against Belle City: (1) a breach-of-contract claim
alleging that Belle City failed to obtain $2 million in primary
liability coverage as required under the IAC; and (2) a negligent
misrepresentation claim alleging that Belle City falsely told
AOA and Delta Fair during discovery that Belle City had only one
insurance policy when in fact it had two. (ECF No. 113-5 ¶¶ 106-
14, 133-38.)

Allowing Liberty to add these claims would substantially
prejudice Belle City at this late stage. Discovery is over, the
dispositive motion deadline has passed, and Belle City has moved

for summary judgment.[4]   Each of these factors is a strong indicator that allowing Liberty to turn back the clock on the timeline of this litigation would be prejudicial.   See Commerce Benefits Grp., Inc. v. McKesson Corp., 326 F. App'x 369, 376 (6th Cir. 2009) (affirming denial of motion for leave to amend where the dispositive motion deadline had passed, the defendant had filed a motion for summary judgment, and "the addition of new [] claims would have resulted in prejudice to defendants at such a late stage in the litigation"); Wade v. Knoxville Util. Bd., 259 F.3d 452, 459 (6th Cir. 2001) (affirming denial of motion for leave to amend where "significant discovery ha[d] been completed" and "defendant ha[d] filed a motion for summary judgment on all claims alleged in the original complaint"); Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) ("[A]llowing amendment after the close of discovery creates significant prejudice.").

The proposed new claims against Belle City rest on new theories of liability that would significantly reshape the case at a late stage.   For this reason also, allowing amendment would prejudice Belle City.   See Leary, 349 F.3d at 909 (affirming denial of motion for leave to amend given the "prejudice that

---

[4] The discovery deadline was December 14, 2018.  (ECF No. 79.)  The dispositive motion deadline was January 4, 2019.  (Id.)  Belle City filed its motion for summary judgment on January 4, 2019.  (ECF No. 101.)

[the defendant] would suffer if the Plaintiffs were permitted to 'recast' their claims at this late stage"); <u>Anderson v. Young Touchstone Co.</u>, 735 F. Supp. 2d 831, 834 (W.D. Tenn. 2010) ("[T]he court may deem it prejudicial if the Plaintiff, in the latter stages of litigation, presents an alternative theory of recovery that substantially changes the theory on which the case has been proceeding.") (citing <u>Troxel Mfg. Co. v. Schwinn Bicycle Co.</u>, 489 F.2d 968, 971 (6th Cir. 1973)).

Under Rule 16(b)'s good cause standard and Rule 15(a)(2)'s discretionary considerations, to allow the proposed new claims against Belle City would be substantially prejudicial. The Motion to Substitute is DENIED to the extent it seeks to add new claims against Belle City.

### b. New Claims Against ACE

The Sixth Circuit "has not determined whether Rule 21 or Rule 15" of the Federal Rules of Civil Procedure "controls the amendment of a pleading where the amendment seeks to add parties to the action." <u>Broyles v. Corr. Med. Servs., Inc.</u>, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. Jan. 23, 2009). Rule 21 states that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Courts in this Circuit have considered both Rule 21 and Rule 15(a)(2) when deciding whether to allow a party to add new claims against a new party. <u>See, e.g.</u>, <u>Kunin v. Costco Wholesale Corp.</u>,

No. 10-cv-11456, 2011 WL 6090132, at *2-3 (E.D. Mich. Dec. 7, 2011).  Under those rules, "the standard" for granting leave to amend "is the same."  Haynes v. Martin, No. 12-cv-0210, 2014 WL 1159932, at *9 (E.D. Ky. Mar. 21, 2014) (citation omitted).  Both rules "allow amendment of pleadings when justice so requires and on just terms."  Id. (quoting Kunin, 2011 WL 6090132, at *7).

When deciding whether to add a new party under Rule 21, courts analyze whether the proposed new party can be permissively joined under Rule 20.  See Kunin, 2011 WL 6090132, at *3; Dottore v. Nat'l Staffing Servs., LLC, No. 06-cv-01942, 2007 WL 2114668, at *3-5 (N.D. Ohio July 20, 2007); TicketNetwork, Inc. v. Darbouze, 133 F. Supp. 3d 442, 447 (D. Conn. 2015) ("Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance.") (quoting Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 521 (5th Cir. 2010)).

Rule 20 allows permissive joinder of defendants in a single action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  "The purpose of Rule 20 is to 'promote trial convenience and expedite the resolution of disputes.'"  SEC

v. Carroll, No. 11-cv-0165, 2011 WL 5880828, at *1 (W.D. Ky. Nov. 23, 2011) (quoting Alexander v. Fulton Cty., 207 F.3d 1303, 1323 (11th Cir. 2000)); see also Third Degree Films, Inc. v. John Does 1-72, No. 12-cv-14106, 2013 WL 1164024, at *5 (E.D. Mich. Mar. 18, 2013) (noting that Rule 20 is "a pragmatic tool meant to help courts and parties conduct litigation in such a way that is efficient, practical, and fair") (citation omitted). The Court "has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay." 7 Charles A. Wright et al., Federal Practice and Procedure § 1652 (3d ed. 2019). The plaintiff has the "burden of convincing" the "court that joinder under Rule 20(a) is appropriate." Thorn v. Novartis Pharm. Corp., No. 04-cv-0586, 2005 WL 8162566, at *4 (E.D. Tenn. Aug. 30, 2005).

The proposed Amended Complaint lists three proposed new claims against ACE, Belle City's insurer: (1) a breach-of-contract claim alleging that ACE failed to indemnify AOA and Delta Fair for their losses in this litigation pursuant to Belle City's insurance policy with ACE; (2) a statutory bad faith claim alleging that ACE refused AOA and Delta Fair's demand for payment of insurance under Belle City's insurance policy; and (3) a negligent misrepresentation claim alleging that ACE falsely told AOA and Delta Fair during discovery that Belle City had only one

17

insurance policy when in fact it had two. (ECF No. 113-5 ¶¶ 115-39.)

The Court need not consider whether Liberty's claims against ACE satisfy the two factors of Rule 20's permissive joinder test. Even if the elements of that test were met, to allow Liberty to bring its proposed new claims against ACE at this late stage would not serve the purposes of the rule. See 7 Wright et al., supra, § 1652. Discovery has long since closed as to AOA and Delta Fair's existing crossclaims against Belle City. Allowing new claims against a new party would substantially delay the resolution of the claims currently before the Court. See Fed. Ins. Co. v. Singing River Health Sys., 850 F.3d 187, 202 (5th Cir. 2017) (affirming denial of request for permissive joinder under Rule 20 where "joining all of the requested parties would create substantial delay"). That delay would prejudice Belle City. See Chavez v. Ill. State Police, 251 F.3d 612, 631-33 (7th Cir. 2001) (affirming denial of request for permissive joinder under Rule 20 where existing claims were ready to proceed to trial and reopening discovery would have prejudiced defendant); see also Thorn, 2005 WL 8162566, at *4 (denying motion for permissive joinder where plaintiffs had "failed to carry [their] burden" to show that joinder would meet the objectives of Rule 20).

To allow Liberty to add new claims against a new party would substantially prejudice Belle City under Rule 15(a)(2) for the reasons discussed above. See supra, at 12-15. Belle City has defended against AOA and Delta Fair's crossclaims for more than two years. The discovery and dispositive motion deadlines have passed. To reset the clock on this litigation "would deprive the defendants of their anticipated closure." Duggins, 195 F.3d at 834.

Allowing Liberty to add new claims against ACE would not serve the purposes of permissive joinder and would substantially prejudice Belle City under Rule 15(a)(2). The Motion to Substitute is DENIED to the extent it seeks to add new claims against ACE.[5]

## B.   AOA and Delta Fair's Motion to Dismiss

AOA and Delta Fair ask the Court to dismiss their crossclaims against Belle City without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 102.) Rule 41(a)(2) provides for voluntary dismissal of an action "at the plaintiff's request only by court order, on terms that the

---

[5] In addition to the claims discussed above, the proposed Amended Complaint sets out a "claim" against Belle City and ACE for punitive damages. (ECF No. 113-5 ¶¶ 140-44.) Punitive damages are a remedy, not an independent cause of action. See Carroll v. TDS Telecomm. Corp., No. 17-cv-1127, 2017 WL 6757566, at *10 (W.D. Tenn. Dec. 29, 2017). Because the Court declines to allow Liberty to add its proposed new claims, it also declines to allow Liberty to pursue punitive damages as to those claims.

court considers proper." Fed. R. Civ. P. 41(a)(2). Whether to grant a request for voluntary dismissal under Rule 41(a)(2) is "within the sound discretion of the district court." Grover by Grover v. Eli Lilly and Co., 33 F.3d 716, 718 (6th Cir. 1994) (citation omitted).

A court should not grant a motion for voluntary dismissal when the defendant would suffer "plain legal prejudice as a result." Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc., 583 F.3d 948, 953 (6th Cir. 2009) (internal quotation marks and citation omitted). The Sixth Circuit has established four factors for trial courts to consider when determining whether voluntary dismissal would result in plain legal prejudice to a defendant: (1) the defendant's effort and expense of preparation for trial; (2) excessive delay and lack of diligence by the plaintiff in prosecuting the action; (3) insufficient explanation of the need for dismissal; and (4) whether the defendant has filed a motion for summary judgment. Grover, 33 F.3d at 718. A majority of those factors weigh against AOA and Delta Fair's motion for voluntary dismissal.

First, Belle City has incurred significant effort and expense in preparation for trial. Belle City has defended against AOA and Delta Fair's crossclaims since June 2017. (See ECF No. 31.) Discovery was completed in December 2018. (ECF No. 79.) There have been numerous pleadings, motions, subpoenas,

discovery requests, and depositions. (See, e.g., ECF Nos. 44, 58-59, 70, 74, 93, 97.) Belle City has prepared a motion for summary judgment along with a memorandum of law, statement of undisputed material facts, and five exhibits. See Hart v. Bank of Am., N.A., No. 14-cv-2807, 2015 WL 12532149, at *2 (W.D. Tenn. Nov. 17, 2015) (denying motion for voluntary dismissal where defendant's submission of "149 pages of arguments, affidavits or exhibits in support of its Motion for Summary Judgment" demonstrated its "effort and expense in preparation for trial"). This factor weighs against AOA and Delta Fair's motion.

Second, AOA and Delta Fair did not delay in prosecuting their crossclaims against Belle City. This factor weighs in favor of AOA and Delta Fair's motion.

Third, AOA and Delta Fair have not sufficiently explained the need for dismissal. AOA and Delta Fair argue that dismissal is justified for two reasons: (1) "they are no longer the proper party in interest," and (2) "the efficiency of a dismissal." (ECF No. 108 at 4.) Those reasons are not persuasive. An "action may be continued by or against the original party" after an interest has transferred, or the Court may substitute the transferee, as it has in this Order. Fed. R. Civ. P. 25(c); see supra, at 8-11. A dismissal at this stage would wash away the parties' significant efforts without resolution. It would be

inefficient.  This factor weighs against AOA and Delta Fair's motion.

Fourth, Belle City has filed a motion for summary judgment. (ECF No. 101.)  That motion is fully briefed and ripe for the Court's consideration.  This factor weighs against AOA and Delta Fair's motion.  See Matthews v. Tenn. Bd. of Prob. and Parole, No. 07-cv-0046, 2008 WL 2609160, at *5 (E.D. Tenn. June 26, 2008) (denying motion for voluntary dismissal where the defendant "ha[d] a motion for summary judgment pending").

Considering the Grover factors as a whole, they weigh decisively against AOA and Delta Fair's motion for voluntary dismissal under Rule 41(a)(2).  The Motion to Dismiss is DENIED.

### C.  Belle City's Motion for Summary Judgment

Belle City moves for summary judgment on AOA and Delta Fair's crossclaims.  (ECF No. 101.)

In a breach-of-contract action premised on diversity jurisdiction, a federal court applies the substantive law of the state whose law governs the contract and will "generally enforce the parties' contractual choice of governing law."  Savedoff v. Access Grp., Inc., 524 F.3d 754, 762 (6th Cir. 2008) (citations omitted).  The parties agree that New Jersey law governs the IAC.  (ECF No. 101-1 at 7; ECF No. 103 at 12.)  The Court applies New Jersey law to AOA and Delta Fair's crossclaims.

AOA and Delta Fair allege that their losses were caused by Belle City's failure to properly ground the generator that was connected to the Ring of Fire and Alpine Bob when Yearta was electrocuted. (ECF No. 42 ¶¶ 20-23; ECF No. 96 at 16-17.) In their crossclaims against Belle City, AOA and Delta Fair allege that Belle City has failed to indemnify and defend them pursuant to the terms of the IAC between AOA and Belle City. (ECF No. 42 ¶¶ 25-32; ECF No. 96 at 17-18.) In the IAC, Belle City agreed to indemnify and defend AOA and Delta Fair for "any and all injuries, claims, losses or liabilities which result from any acts or omissions of [Belle City] or of any [of Belle City's] employees, agents or subcontractors in connection with the engagements hereunder or which may otherwise arise in connection with [Belle City's] engagement hereunder." (ECF No. 42-2 ¶ 17.)

Belle City makes three arguments in its motion for summary judgment: (1) AOA and Delta Fair's losses at the Fair did not arise "in connection with" Belle City's engagement under the IAC; (2) AOA and Delta Fair cannot prove their losses arose from a negligent act or omission by Belle City; and (3) AOA and Delta Fair are not entitled to indemnity or defense for their losses because the losses arose from AOA and Delta Fair's own negligence. (ECF No. 101-1 at 7-12.) Belle City contends that each of these is an independent ground for summary judgment. (Id.)

AOA and Delta Fair make two threshold arguments in their response to Belle City's motion for summary judgment. Both are unpersuasive. First, AOA and Delta Fair argue that the Court should deny Belle City's motion because it seeks summary judgment against parties that are "no longer the real parties in interest." (ECF No. 103 at 10-11.) That is not how substitution works. After an interest has been transferred, an "action may be continued by or against the original party," and the Court may in its discretion add or substitute the transferee. Fed. R. Civ. P. 25(c). Belle City's motion for summary judgment is properly directed at AOA and Delta Fair.

Second, AOA and Delta Fair argue that there are disputes of material fact about whether Belle City breached the IAC by failing to obtain $2 million in primary liability coverage. (ECF No. 103 at 12-13.) That claim is not before the Court. AOA and Delta Fair have elsewhere requested that the Court allow Liberty to add this claim in an amended pleading, a request the Court has denied in a separate section of this Order. See supra, at 11-15. A nonmovant cannot defeat a summary judgment motion by attempting to raise new claims in response. Tucker v. Union of Needletrades, Indus. and Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005) (citing 10A Charles A. Wright et al., Federal Practice and Procedure § 2723 (3d ed. Supp. 2005)).

In New Jersey, "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 510 A.2d 1152, 1159 (N.J. 1986) (citations omitted). "The objective in construing a contractual indemnity provision is the same as in construing any other part of a contract -- it is to determine the intent of the parties." Kieffer v. Best Buy, 14 A.3d 737, 742-43 (N.J. 2011) (citation omitted). "However, indemnity provisions differ from provisions in a typical contract in one important aspect. If the meaning of an indemnity provision is ambiguous, the provision is 'strictly construed against the indemnitee.'" Kieffer, 14 A.3d at 743 (quoting Mantilla v. NC Mall Assocs., 770 A.2d 1144, 1151 (N.J. 2001)). An indemnity provision is also strictly construed against the drafter. Id. (citing Pacifico v. Pacifico, 920 A.2d 73, 78 (N.J. 2007)).

### 1.  "In Connection With" Belle City's Engagement

Belle City argues that AOA and Delta Fair's losses from Belle City's allegedly negligent grounding of a generator at the Fair did not arise "in connection with" Belle City's engagement under the IAC.  (ECF No. 101-1 at 8-10.)

The "engagement" the IAC contemplates is Belle City's provision of eight amusement park rides, none of which was involved in Yearta's accident.  (ECF No. 42-2 ¶ 3.)  No term of

the IAC obligated Belle City to provide a generator at the Fair. (See generally ECF No. 42-2; see also ECF No. 103-1 ¶ 23.) That the IAC did not obligate Belle City to provide a generator does not, without more, tell us whether Belle City's provision of a generator arose "in connection with" its engagement under the IAC. The relevant clause of the IAC's indemnity provision indemnifies AOA and Delta Fair for "losses . . . which . . . arise in connection with [Belle City's] engagement hereunder." (ECF No. 42-2 ¶ 17.) Belle City argues that this language is "ambiguous," although it does not explain what the competing interpretations might be. (ECF No. 104 at 7-8); see also Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 948 A.2d 1285, 1289 (N.J. 2008) ("If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists.") (citation omitted).

There is potential ambiguity in the phrase "in connection with" in the IAC's indemnity provision. "In connection with" is a malleable term. See Ben Ali v. Towe, 103 A.2d 158, 160 (N.J. Super. Ct. App. Div. 1954) (noting that "[t]he words 'in connection with' could imply a relationship either proximate or remote") (citation omitted). One reading of the phrase "in connection with" in the IAC might be that it contemplates only losses directly related to Belle City's engagement under the IAC (e.g., losses arising from Belle City's set-up, operation, or

break-down of the rides it agreed to provide and operate at the Fair). Another reading might be that the phrase "in connection with" extends further, contemplating losses bearing only a tangential relationship to Belle City's engagement (e.g., an injury sustained by an off-duty Belle City employee while visiting other sections of the Fair).

The IAC is not clear about which of these competing interpretations the parties intended. In keeping with controlling New Jersey precedents, the Court strictly construes the IAC's indemnity provision against AOA and Delta Fair, the indemnitees. See Ramos, 510 A.2d at 1159. Thus, the indemnity provision covers only losses directly related to Belle City's engagement under the contract.

Even under this narrow reading, however, there is a dispute of material fact about whether Belle City's provision of a generator at the Fair was "in [direct] connection with" Belle City's engagement to provide amusement park rides under the IAC. In their briefs, the parties emphasize competing sets of summary judgment evidence. (ECF No. 101-1 at 10; ECF No. 103 at 17.)

AOA and Delta Fair offer evidence suggesting that Belle City's provision of a generator was closely connected to Belle City's engagement under the IAC. An AOA representative testified at his deposition that AOA requires subcontractors who provide eight or more rides to provide a generator, and that Belle City's

provision of a generator was orally negotiated by Belle City and AOA together with other terms such as the "ride lineup" and the "monetary compensation" for Belle City's contractual engagement. (ECF No. 103-9 at 45:4-46:7.) Another AOA representative described the provision of a generator as an "understood" requirement for a subcontractor to "book rides" with AOA. (ECF No. 103-3 at 233:12-17, 238:7-14.)

Belle City offers evidence suggesting that its provision of a generator was a separate arrangement, unconnected to Belle City's engagement under the IAC. AOA representatives testified that the arrangement by which Belle City agreed to provide a generator at the Fair was a separate "oral agreement," and that "[t]he written contract does not state anything about generators." (ECF No. 101-5 at 44:8-45:16; see also ECF No. 101-6 at 233:16-19.) AOA representatives also testified that the purpose of Belle City's provision of a generator at the Fair was not "specifically" to "power [Belle City's] own rides," but was "needed in the whole scope of the fair" to, inter alia, provide power to AOA's rides. (ECF No. 101-5 at 46:8-17; see also ECF No. 101-6 at 233:20-234:5.)

This evidence illustrates the live dispute in the record about whether Belle City's provision of a generator at the Fair arose "in connection with" its engagement under the IAC. There is a substantial body of New Jersey case law in which courts

have interpreted similar indemnity clauses providing indemnity for losses "arising out of" or "arising from" the contractual engagement.  See Torres v. Tamburri Assocs., Inc., 2010 WL 4905069 (N.J. Super. Ct. App. Div. Dec. 3, 2010); Dorsey v. Cobblestone Village Equities, LLC, 2009 WL 763409 (N.J. Super. Ct. App. Div. Mar. 25, 2009); Di Filippi v. Target Corp., 2008 WL 141152 (N.J. Super. Ct. App. Div. Jan. 16, 2008); Leitao v. Damon G. Douglas Co., 693 A.2d 1209 (N.J. Super. Ct. App. Div. 1997); Vitty v. D.C.P. Corp., 633 A.2d 1040 (N.J. Super. Ct. App. Div. 1993).  In those cases, New Jersey courts have considered whether there was a "substantial nexus between the claim and the subject matter of the subcontractor's work duties." Leitao, 693 A.2d at 1212; see also Torres, 2010 WL 4905069, at *11; Dorsey, 2009 WL 763409, at *3; Di Filippi, 2008 WL 141152, at *4; Vitty, 633 A.2d at 1043.  This is a fact-intensive inquiry. See, e.g., Torres, 2010 WL 4905069, at *11 (finding a dispute of material fact about whether losses resulting from a subcontractor's work in erecting a steel platform at an apartment complex "arose out of" the subcontractor's contractual engagement to fabricate and deliver steel).

Here, there is a dispute of material fact about whether AOA and Delta Fair's losses from Belle City's allegedly negligent grounding of a generator at the Fair arose "in connection with" Belle City's engagement under the IAC.  Reasonable minds could

answer this question differently.  Cf. Jeff Miller Stables, 573
F.3d at 299 ("Summary judgment is appropriate where reasonable
minds could not disagree as to the conclusion to be drawn from
the evidence.").  It is a question for the jury.

## 2.  Belle City's Negligence

Belle City argues that AOA and Delta Fair cannot show that
their losses arose from a negligent act or omission by Belle
City.  (ECF No. 101-1 at 7-10.)  That argument is not well-taken
for two reasons.

First, Belle City contends that the IAC's indemnity
provision covers only losses caused by the negligent acts or
omissions of Belle City or its employees, agents, or
subcontractors.  (Id. at 9.)  In New Jersey, an indemnity
provision that covers losses resulting from the "acts or
omissions" of the indemnitor provides for indemnity only if the
indemnitor was negligent.  See McCabe v. Great Pac. Century
Corp., 566 A.2d 234, 236-37 (N.J. Super. Ct. App. Div. 1989)
(finding that an "act or omission" indemnity provision required
a showing of "negligen[ce] in some manner directly related to
[the] subcontract").  However, the IAC's indemnity provision
covers not only losses that "result from any acts or omissions
of [Belle City] or of any [of Belle City']s employees, agents or
subcontractors in connection with the engagements hereunder,"
but also losses that "may otherwise arise in connection with

[Belle City's] engagement hereunder." (ECF No. 42-2 ¶ 17 (emphasis added).)

Belle City ignores the "otherwise arise in connection with" language in the IAC's indemnity provision. Belle City does not explain why this clause would require a showing that AOA and Delta Fair's losses resulted from a negligent act or omission by Belle City. When construing similar indemnity provisions covering losses "arising out of" an indemnitor's contractual engagement, New Jersey courts have held that no showing of negligent action by the indemnitor is necessary. See Leitao, 693 A.2d at 1212 (indemnity provision covering losses "arising out of or resulting from the performance of subcontractor[]'s work" did not "requir[e] fault on the subcontractor's part as a prerequisite to indemnification"); Di Filippi, 2008 WL 141152, at *3-4 (finding that the "clear language" of an indemnity provision covering losses that "arose out of" subcontractor's performance of the contract "d[id] not require a finding of negligence on [indemnitor's] part to trigger indemnification"). By its terms, the "otherwise arise in connection with" clause of the IAC's indemnity provision operates in the same way. It requires a "connection" between AOA and Delta Fair's losses and Belle City's contractual engagement, but does not require fault.

Second, even if the Court were to read the IAC's indemnity provision to cover only losses resulting from Belle City's

negligence, there would be a dispute of material fact in the record about whether AOA and Delta Fair's losses resulted from a negligent act or omission by Belle City. AOA and Delta Fair offer deposition testimony by an AOA representative that the generator Belle City provided at the Fair "was not grounded." (ECF No. 103 at 15-16.) Yearta, at his deposition, testified that Belle City's generator "was grounded, but I don't know how -- if it was grounded right." (ECF No. 103-7 at 423:9-10.) In its reply, Belle City seems to accept that "there is a factual dispute as to whether the generator was grounded." (ECF No. 104 at 6.)

However, Belle City argues that, regardless of this factual dispute, AOA and Delta Fair cannot prove Belle City's negligence at trial because AOA and Delta Fair have no expert witnesses to testify about causation or the relevant standard of care, two of the elements necessary for a showing of negligence. (ECF No. 101-1 at 9-10; ECF No. 104 at 6-7.) Belle City cites cases from Tennessee, Virginia, and the District of Columbia that, in those jurisdictions, expert testimony may be necessary in a negligence action that concerns a specialized matter such as "electricity." (ECF No. 101-1 at 9; ECF No. 104 at 7 n.5.)

Both parties agree that New Jersey law governs AOA and Delta Fair's crossclaims. See supra, at 6. In New Jersey, "except for malpractice cases, there is no general rule or policy

<u>requiring</u> expert testimony as to the standard of care" in a negligence action. <u>Butler v. Acme Mkts., Inc.</u>, 445 A.2d 1141, 1147 (N.J. 1982) (emphasis in original). Nor is "expert testimony . . . required to establish causation in every tort action." <u>Weshifesky v. State Farm Fire and Cas. Co.</u>, 2006 WL 1194440, at *4 (N.J. Super. Ct. App. Div. May 4, 2006). AOA and Delta Fair may be able to show Belle City's negligence at trial using only lay witnesses. At this stage and on the authority provided, Belle City has not established that they could not.

### 3. AOA and Delta Fair's Negligence

Belle City argues that AOA and Delta Fair are not entitled to indemnity or defense for their losses because the losses arise from AOA and Delta Fair's own negligence. (ECF No. 101-1 at 10-12.) In response, AOA and Delta Fair argue that the Court should read the IAC's indemnity provision broadly to cover losses caused by the "negligence of others," including the negligence of AOA or Delta Fair, or the indemnity provision "would be improperly rendered surplusage." (ECF No. 103 at 18-19.)

In New Jersey, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." <u>Ramos</u>, 510 A.2d at 1159. To indemnify an indemnitee for its own negligence, an indemnity provision "must specifically reference the negligence or fault of the indemnitee." <u>Azurak v.</u>

Corp. Prop. Inv'rs, 814 A.2d 600, 601 (N.J. 2003); see also Mantilla v. NC Mall Assocs., 770 A.2d 1144, 1151 (N.J. 2001) (indemnity provision did not cover losses arising from indemnitee's own negligence where it did not "expressly state" that it would); Kieffer, 14 A.3d at 743 ("[S]hifting liability to an indemnitor must be accomplished only through express and unequivocal language.").

The IAC's indemnity provision says nothing about indemnifying AOA and Delta Fair for losses arising from their own negligence. The indemnity provision states only that it covers "any and all injuries, claims, losses or liabilities which . . . arise in connection with [Belle City's] engagement hereunder." (ECF No. 42-2 ¶ 17.) That language is not sufficiently unequivocal to reach losses that AOA and Delta Fair caused. Only a specific reference to AOA and Delta Fair's negligence in the indemnity provision would suffice. Azurak, 814 A.2d at 601.

AOA and Delta Fair rely on the canon against surplusage, which counsels that "all parts of [a] writing and every word of it will[,] if possible, be given effect." Maselli v. Valley Nat'l Bancorp., No. A-0440-16T1, 2018 WL 828053, at *2 (N.J. Super. Ct. App. Div. Feb. 13, 2018) (quoting Wash. Const. Co. v. Spinella, 8 N.J. 212, 217 (1951)); see also In re Att'y Gen.'s "Directive on Exit Polling: Media and Non-Partisan Public

Interest Groups," Issued July 18, 2007, 981 A.2d 64, 72 (N.J. 2009) ("We must presume that every word in a statute has meaning and is not mere surplusage, and therefore we must give those words effect and not render them a nullity.").

AOA and Delta Fair neither identify any superfluous language in the IAC's indemnity provision nor explain why a background canon of statutory interpretation should override the New Jersey Supreme Court's specific rules for the interpretation of indemnity provisions. Because it says nothing about AOA and Delta Fair's negligence, the IAC does not entitle AOA or Delta Fair to indemnity or defense for losses they caused.

However, Belle City has not met its burden at summary judgment to show that AOA and Delta Fair's losses in fact arose from their own negligence. "The fundamental elements of a negligence claim are a duty of care"; a "breach of that duty"; "injury" that is "proximately caused by the breach"; and "damages." G.A.H. v. K.G.G., 210 A.3d 907, 914 (N.J. 2019) (internal quotation marks and citation omitted). Belle City has not attempted to prove those elements of AOA and Delta Fair's alleged negligence with competent evidence. See Fed. R. Civ. P. 56(c)(1) (summary judgment movant must support its assertions by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute"). Belle City describes AOA

and Delta Fair's roles at the Fair and notes that a Tennessee state agency fined AOA for violating a Tennessee safety statute. (ECF No. 101-1 at 11.)  That is insufficient to establish the elements of negligence at the summary judgment stage.

Whether AOA and Delta Fair's losses were caused by their own negligence, Belle City's negligence, or some other confluence of events is an unsettled question of fact.  See <u>Cupitt v. Penske Truck Leasing Co., L.P.</u>, 2007 WL 2118972, at *3 (N.J. Super. Ct. App. Div. July 25, 2007) (finding "issues of material fact that preclude summary judgment" about whether indemnitee's losses arose from its own negligence where "few facts have been presented at this stage" and "we have been offered no basis . . . to determine" whether losses were caused by indemnitor, indemnitee, or third party).  Belle City's Motion for Summary Judgment is DENIED.

## V.  Conclusion

For the foregoing reasons, Belle City's Motion for Summary Judgment is DENIED, AOA and Delta Fair's Motion to Dismiss is DENIED, and AOA and Delta Fair's Motion to Substitute is GRANTED IN PART and DENIED IN PART.

So ordered this 6th day of January, 2020.

/s/  *Samuel H. Mays, Jr.*
Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE