## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

LIBERTY CORPORATE CAPITAL LTD.,

     Plaintiff,

vs.                                     Case No. 2:17-CV-02117-SHM-egb

BELLE CITY AMUSEMENTS, INC.,

     Defendant.

## RESPONSE IN OPPOSITION TO RENEWED MOTION FOR LEAVE TO AMEND

Defendant Belle City Amusements, Inc. ("BCA"), by and through undersigned counsel, files this Response in opposition to Liberty Corporate Capital Ltd. ("Liberty")'s Renewed Motion for Leave to Amend its Complaint, ECF No. 135.  There has been no change in circumstances to warrant revisiting this Court's analysis on Liberty's previous attempt to amend; under the applicable standard of review for motions to reconsider the Court's interlocutory orders, Liberty's Renewed Motion fails.  The Court's Order on Liberty's previous motion to amend, ECF No. 120, remains sound.  The renewed request to amend claims against BCA should be denied once again.

### A.  Liberty's "renewed" motion does not meet the requirements for this Court to revisit its prior Order on Liberty's request to amend.

Liberty titles its Motion as a "renewed" motion for leave to amend when it is actually an attempt by Liberty to encourage the Court to revise its interlocutory Order, ECF No. 120.  In the Sixth Circuit, reconsideration of interlocutory orders is only appropriate when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).  Local Rule 7.3 further provides that a motion to reconsider must

1

specifically show one of the grounds set forth in subsection (b) of the Rule, or it is not otherwise permitted.  Subsection (b) provides that the Motion <u>must</u> show:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

Local Rule 7.3(b).  As this Court has noted before, "motions to reconsider … are used sparingly and in rare circumstances." *McDonald v. City of Memphis*, No. 12–2511, 2013 WL 3753628, at *1 (W.D. Tenn. July 15, 2013) (quoting *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2011 WL 3878332 (E.D. Tenn. Aug. 25, 2011).  Undoubtedly this Court can grant motions to revise its prior rulings when justified, but it "should not do so in the vast majority of instances, especially where such motions merely restyle or reshash [sic] the initial issues." *Id.*

Liberty's Motion does not satisfy either the requirements of the Sixth Circuit or the requirements of this District's Local Rules, so reconsideration of this Court's January 6, 2020 Order on Liberty's request to amend is unwarranted.  Liberty does not allege in its renewed Motion that there has been any intervening change of controlling law, that new evidence has become available, or that there is the need to correct a clear error or prevent manifest injustice resulting from the Court's Order.  Nor does Liberty mention any of the permissible grounds for reconsideration under Local Rule 7.3(b) in its renewed Motion, let alone "specifically show" any of them.  Thus, Liberty's renewed Motion should be denied.

To the extent Liberty will now claim that its renewed Motion contains the "changed" circumstance of the "concerns for potential prejudice against Belle City" being gone now that the Court has re-opened discovery, this excuse is nonetheless unavailing to warrant the extraordinary remedy of this Court revisiting its previous Order.  As an initial matter, Liberty's characterization

2

of the events during the recent Status Conference is incomplete.  BCA requested limited discovery on the specific issue of the reasonableness of the settlement, since it was now made a component of Liberty's claim for indemnification under New Jersey law.  *See, e.g.*, *Central Motor Parts Corp. v. E.I. duPont deNemours and Co., Inc.*, 596 A.2d 773, 776 (N.J. Sup. Ct. 1989).   Some facts relevant to this aspect of Liberty's claim against BCA were unknown to BCA, since Liberty did not <u>allow</u> BCA to participate in settlement conversations at the mediation in October of 2018.  So, in the spirit of cooperation, BCA did not then object to Liberty's corresponding request to expand the scope of discovery to allow Liberty to take the deposition of BCA or BCA employees or to disclose experts, as Liberty's insureds, AoA and Delta Fair, had failed to do so before the original close of discovery.

Accordingly, the Court entered revised deadlines in an amended Scheduling Order to include an August 17, 2020 deadline to conduct fact discovery.  This procedural development does not, however, materially change the basis of this Court's original denial of Liberty's request to add new claims against BCA.  Irrespective of the discovery period, it would continue to "substantially prejudice" BCA to allow Liberty to "significantly reshape the case" at this stage by asserting new claims on new theories of liability.  ECF No. 120, p. 20.  BCA has already deposed Christopher "Rob" Vivona and Ronald E. Douberly, Jr., the AoA employees named by AoA as fact witnesses knowledgeable about the 2016 Delta Fair and AoA's contractual relations.  In fact, Rob Vivona is the signatory on the Independent Attraction Contract, the contract at issue, between AoA and BCA. Additionally, the parties deposed corporate representatives of AoA, pursuant to Federal Rule of Civil Procedure 30(b)(6); one delineated topic was "A of A's contract and any other arrangements or agreements it had with Belle City Amusements, Inc. regarding the 2016 DF&MF."  ECF No. 91, p. 2.  In accordance with the Notice, AoA produced witnesses Dominic Vivona and William

Costagliola to testify on all of the topics listed.  Thus, significant fact discovery has been conducted and concluded regarding the contract at issue in this case.  And the basis of the Court's ruling remains true: "[T]he court may deem it prejudicial if the Plaintiff, in the latter stages of litigation, presents an alternative theory of recovery that substantially changes the theory on which the case has been proceeding." *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 834 (W.D. Tenn. 2010); ECF No. 120, p. 15.  "Additionally, a court may deny amendments when the opposing party could claim surprise because he could not have recognized that the new matter included in the amendment would be at issue."  *Id.*  Indeed, had BCA known that Liberty would assert new theories, it would have conducted discovery differently.  Instead, just as was the case in *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001), depositions already taken would have to be supplemented and additional discovery would have to be undertaken as well, resulting in significant prejudice to BCA.  Thus, significant prejudice remains, irrespective of a new discovery deadline.  For this reason, Liberty's attempt to have this Court revisit its January 6, 2020 Order should be denied.

### B.  Liberty's Motion continues to fail under the standards of both Rule 16(b) and Rule 15(a)(2).

#### 1.  *Liberty's Motion still shows no good cause under Rule 16(b)*.

As with the plaintiff in *Wade*, Liberty, in both its original request to amend or its "renewed" Motion, offers no explanation or justification for waiting as long as it did to amend.  The delay is an additional and supplemental reason for denying amendment.  259 F.3d at 459.  And nothing has changed about the fact that the deadline to amend pleadings had long passed in this litigation.  This is one deadline that the Court did not reset.  When that deadline has passed, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether the amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888,

909 (6th Cir. 2003). "The Sixth Circuit has concluded that a party fails to show good cause under

Rule 16(b) where the 'factual basis for the new claims existed at the beginning of the lawsuit.'"

*JNJ Logistics, L.L.C. v. Scottsdale Ins. Co.*, No. 2:10-cv-02741-JPM-cgc, 2013 WL 12284454, at

*1 (W.D. Tenn. June 4, 2013), quoting *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F.

App'x 369, 376 (6th Cir. 2009). Like this Court found in *JNJ Logistics, L.L.C.*, the movant's

diligence is a significant factor, and Liberty continues to fail to show it could not have amended

earlier than it did. *See also Falana v. Kent Displays, Inc*., No. 5:08 CV 720, 2009 WL 1362603,

at *3 (N.D. Ohio May 13, 2009), citing *Leary*, 349 F.3d at 908 ("[M]otions to amend cannot be

considered without regard to Rule 16(b), or scheduling orders would be rendered meaningless and

Rule 16's "good cause" requirement would effectively be eliminated.") For this failure to show

good cause alone, the attempt to amend at this point in time should be denied.

2. *Factors continue to weigh in favor of denying any attempt to amend under Rule 15(a)(2).*

Even if the Court were to consider this renewed attempt to amend under Rule 15(a)(2), the

Motion should nonetheless fail. "Although Federal Rule of Civil Procedure 15(a)(2) provides that

a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to

amend is not absolute or automatic." *Islamic Center of Nashville v. Tennessee*, 872 F.3d 377, 386

(6th Cir. 2017), quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008).

"[T]he broad permissive language appearing in Rule 15 does not mean that there are no standards

by which the trial court is to be guided." *EEOC v. Taco Bell Corp.*, 575 F. Supp. 2d 884, 888

(W.D. Tenn. 2008). Courts should consider several factors when deciding whether to grant a

motion to amend, including "undue delay in filing, lack of notice to the opposing party, bad faith

by the moving party, repeated failure to cure deficiencies by previous amendments, undue

prejudice to the opposing party, and futility of amendment." *Wade*, 259 F.3d at 458. Here, having

already established the continued significant prejudice, BCA details the additional factors weighing in favor of denial.

a. There is still undue delay in amending to assert new claims.

"When an amendment is sought at a late stage in litigation, there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459, citing *Duggins v. Steak N'Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). The Sixth Circuit "has made plain that the measure of any delay in seeking leave to amend a complaint runs from the time when the movant knew or should have known of the defect in his complaint." *Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir. 2002). While delay ordinarily does not justify denial of leave to amend, at some point, delay becomes undue, "placing an unwarranted burden on the court." *Id.* at 795; *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 347 (6th Cir. 2007) (citing *Morse*, 290 F.3d at 800; *see Wade*, 259 F.3d at 459 (finding that the district court did no abuse its discretion in denying the plaintiff's motion to amend because the dispositive motion deadline had passed and because significant discovery had been completed). With respect to the "undue delay" prong of the motion to amend inquiry, the Sixth Circuit in *Duggins* held:

> The plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint. Plaintiff delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none.

*Duggins,* 195 F.3d at 834. Thus, *Duggins* held that the clock begins to run on an "undue delay" inquiry when the plaintiff is aware of "the basis of the claim." *Id.* The court recognized that a delay of "many months" with "no justification for the delay" is a valid basis for denying a motion to amend. *See id.*

When a plaintiff waits years to amend a pleading that drastically shifts the direction of the case, a district court judge is justified in exercising his discretion not to grant a motion for leave to amend. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973) ("Here the prejudice to Schwinn is obvious.  The case has been pending for more than two and one-half years. . . . The District Court would have been justified in concluding that to put Schwinn through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.").  Here, this Court would continue to be more than justified in denying any request to assert a claim against BCA that is based on facts that were well-known to AoA and DF years before any attempt to amend.  BCA provided a certificate of liability insurance dated August 24, 2016 to AoA before the 2016 Delta Fair, a document which AoA itself placed into the record twice in the summer of 2017.  *See* ECF No. 31-1; ECF No. 42-2.  The undue delay alone also warrants denial of any request to amend now.

b.  <u>The proposed amendments continue to be futile.</u>

A proposed amended pleading may also be rejected if it appears that the pleader would not be entitled to relief under it.  *Cooper v. Am. Emp. Ins. Co.*, 296 F.2d 303, 307 (6th Cir. 1961) (citations omitted).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Inst., LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010), quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citations omitted).  Liberty purports to assert two additional claims, both of which would fail on its face, as a matter of law.

i.  Failure to procure insurance

As detailed before, any allegations that BCA breached the insurance provision of the IAC are meritless, as demonstrated by the certificate of liability insurance dated August 24, 2016.  *See*

7

ECF No. 31-1; ECF No. 42-2.  In the "Limits" section of the certificate of liability insurance, the general aggregate limit for BCA's liability policy, Policy No. G20495364, is $5,000,000, which more than fulfills BCA's agreement to "carr[y] public liability insurance with liability limits of not less than $2,000,000.00 primary coverage."  Any claim regarding breach of the insurance provision of the IAC would fail on its face.  *See, e.g.*, *Frank Martz Coach Co. v. Hudson Bus Transp. Co.*, 44 A.2d 488, 489 (N.J. 1945).

Moreover, the certificate of liability insurance clearly names and specifies Amusements of America and Delta Fair, Inc. as Additional Insureds in the box labeled "Description of Operations." (*Id.*)  This fulfills any obligation to name AoA or DF as additional named insureds under New Jersey law.  *See  North Plainfield Bd. of Educ. v. Zurich Am. Ins. Co.*, No. 05–4398 (MLC), 2009 WL 2634906, *1 (D.N.J. Aug. 25, 2009); *see also Marshall v. Raritan Valley Disposal*, 940 A.2d 315, 317 (N.J. Sup. Ct. App. Div. 2008) ("The contract under which this service was performed obligated RVD to maintain insurance coverage and list West Amwell as an "additional named insured."  To satisfy this obligation, RVD named West Amwell as an additional insured under its business automobile policy, which had been issued by third-party defendant Illinois National Insurance Company (Illinois National).")  The certificate of liability insurance clearly shows BCA complied with its insurance obligations pursuant to the IAC, and there has been no breach of the insurance provision of the IAC.  An amendment of the pleadings against BCA to assert this claim would be futile.

At the very least, Liberty's insureds, AoA and DF, have waived and/or would be estopped from asserting this new breach of insurance claim.  A party waives its right to sue for breach of contract where it continues performance under the contract, even after a breach has occurred.  *See, e.g.*, *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1322 (N.J. Super. Ct. App.

Div. 1997).  "Waiver is the voluntary relinquishment of a known right."  *Clarke v. Clarke ex rel. Costine*, 821 A.2d 104, 109 (N.J. Super. Ct. App. Div. 2003).  It "must occur by a 'clear[,] unequivocal and decisive act.'"  *Borough of Closter v. Abram Demaree Homestead, Inc.*, 839 A.2d 110, 119 (N.J. Super. Ct. App. Div. 2004), quoting *W. Jersey Title & Guar. Co. v. Indus. Tr. Co.*, 141 A.2d 782, 786 (N.J. 1958). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2003).  But waiver can also be "'found if the conduct of [an entity] after information of ... breach of contract is such as to justify an inference of affirmation rather than rescission of the contract.'" *Iafelice ex rel. Wright v. Arpino*, 726 A.2d 275, 278 (N.J. Super. Ct. App. Div. 1999).  In the same insurance provision of the IAC which BCA is alleged to have breached, Paragraph 16 of the IAC further elucidates that:

> [BCA] agrees to provide AMUSEMENTS OF AMERICA, before starting his engagement, a Certificate of Insurance showing at a minimum the above policy limits, showing AMUSEMENTS OF AMERICA, VIVONA FAMILY ENTERTAINMENT and any such other entities as AMUSEMENTS OF AMERICA may request as named insured(s), and **showing that the insurance is otherwise acceptable in all respects** to AMUSEMENTS OF AMERICA.

(ECF No. 31-1, PageID 136) (emphasis added).  AoA can hardly challenge BCA's insurance procurement at this late juncture because it was issued a certificate of liability insurance that specified both the policy limits and the named insureds as early as August 24, 2016, even before the start of the 2016 Delta Fair.  If AoA had any objections to BCA's insurance policy as non-compliant with insurance provisions in a contract that AoA drafted, AoA should have raised those issues as soon as it was provided the certificate of liability insurance.  At the very latest, AoA certainly could have raised these when it originally filed its Crossclaim, since AoA attached the certificate as an exhibit to said claim.  AoA did not take any of these actions, so Liberty cannot now claim that BCA's liability policy, as outlined in sufficient detail by the certificate of liability

insurance, was anything other than "acceptable in all respects" to AoA. Accordingly, even if considered, these newly raised allegations lack merit.

ii.    Negligent misrepresentation

Additionally, Liberty's novel cause of action for negligent misrepresentation based on an alleged violation of BCA's obligations under Federal Rule of Civil Procedure 26(a) has no basis in the law.[1] "[T]he Supreme Court has consistently held that the Federal Rules of Civil Procedure were created for the purpose of regulating procedural matters and not to create new substantive rights." *Rogers v. Furlow*, 729 F. Supp. 657, 660 (D. Minn. 1989). The Supreme Court has "closely scrutinized any attempts to 'abridge, enlarge, or modify substantive rights in the guise of regulating procedure.'" *Id.* (quoting *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 14 (1941)). After reviewing the Rules Enabling Act, 28 U.S.C. § 2072, the District of Minnesota concluded that "a violation of the Federal Rules of Civil Procedure does not give rise to an independent federal cause of action." *Rogers*, 729 F. Supp. at 660. This is a holding shared by a multitude of courts. *See, e.g.*, *Good v. Khosrowshahi*, 296 F. App'x 676, 680 (10th Cir. 2008) *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 372 (9th Cir. 2005) (finding "the Federal Rules of Civil Procedure do not create duties on which an opposing party may base a negligence claim"); *Hanson v. Loparex, Inc.*, 809 F. Supp. 2d 972, 991-92 (D. Minn. 2011); *Jones v. People's Choice Home Loan*, NO. 1:08-CV-1857-RLV/AJB, 2009 WL 10712049, at *10 (N.D. Ga. July 13, 2009); *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009) (holding "the federal rules of civil procedure do not create a private cause of action"); *Jones v. General Motors Corp.*, 24 F. Supp.

---

[1]  The assertion also has no basis in fact. BCA states again that its initial disclosures regarding insurance policies were made on August 29, 2017, based on information then reasonably available to it from its carrier, in accordance with Fed. R. Civ. P. 26(a)(1)(E), and there is no basis whatsoever to find any wrongdoing on the part of BCA related to these disclosures.

2d 1335, 1338 (M.D. Fla. 1998) ("discovery violations in other lawsuits cannot form the basis for an independent cause of action"); *In re Gjestvang*, 405 B.R. 316, 321 (Bankr. E.D. Ark. 2009); *Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999) ("a breach of duty owed to the court does not give rise to a cause of action in tort by the adverse party").

Indeed, Tennessee law would not support a cause of action for negligent misrepresentation based on the initial disclosures provided in this case.  Under Tennessee law, in order to establish a negligent misrepresentation claim, the plaintiff must prove:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in the obtaining or communicating of the information.

*John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991).  Liability is limited to loss suffered by: "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Id.*  In other words, a plaintiff must show:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

> (2) the defendant supplies faulty information meant to guide others in their business transaction; and

> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

> (4) the plaintiff justifiably relies upon the information.

*Id.* BCA has found no courts in Tennessee allowing a negligent misrepresentation claim based on initial disclosures. What is clear, under Tennessee law, is that negligent misrepresentation claims must involve information supplied to others in guidance of their "<u>business transactions</u>" or "<u>commercial transactions</u>." *Robinson v. Omer*, 952 S.W.2d 423, 427-28 (Tenn. 1997).  In looking at the question of what is a "business transaction," the Tennessee Court of Appeals cited approvingly to the Colorado Supreme Court in *Allen v. Steele*, 252 P.3d 476 (Colo. 2011), which explained that "[a] "business transaction" is defined as an "action that affects the actor's financial or economic interest." *Batten v. Community Trust and Banking Co.*, No. E2017-00279-COA-R3-CV, 2019 WL 4013719, at *25 (Tenn. Ct. App. Aug. 26, 2019).  The Colorado Supreme Court then concluded that, "[a]lthough a negligence lawsuit against another party has the potential to affect indirectly [an individual]'s financial or economic interests, a civil lawsuit does not involve a business or commercial relationship or transaction." *Allen*, 252 P.3d at 484; *see also Nelson v. Csajaghy*, No. 14–cv–02617–CMA–KLM, 2015 WL 4035876, at *14 (D. Colo. May 28, 2015)(holding that "a civil lawsuit" is not a business transaction for the purpose of bringing a negligent misrepresentation claim).

Thus, Liberty's claim for negligent misrepresentation would fail on its face because BCA was not acting in the course of its business, profession, or employment, or in a transaction in which it has a pecuniary interest when it complied with its obligations under Rule 26(a); it did not supply faulty information meant to guide anyone in their business transaction; it did not fail to exercise reasonable care; and no one justifiably relied upon this information.  Thus, any attempt to assert a negligent misrepresentation claim is futile.

These factors, whether considered separately or in totality, weigh heavily in favor of denying any attempt by Liberty, on behalf of its insureds, to assert any new claims against BCA.

12

## CONCLUSION

Because the significant prejudice to BCA is still present and other additional factors continue to weigh in favor of denying any amendment, BCA would ask that the Court deny Liberty's request to revisit its January 6, 2020 Order and deny its renewed Motion.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL, AND BERKOWITZ, PC


 /s Mary Wu Tullis
Bruce A. McMullen (Tenn. Bar No.18126)
Mary Wu Tullis (Tenn. Bar No. 31339)
165 Madison Ave., Suite. 2000
Memphis, TN  38103
(901) 526-2000
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com

*Attorneys for Belle City Amusements, Inc.*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 19, 2020, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:


Gregory L. Mast
Paul Fields
FIELDS HOWELL LLP
1180 W. Peachtree Street, Ste. 1600
Atlanta, GA 30309


s/ Mary Wu Tullis

13